## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| AMERICAN PLASTICS LLC<br>87 Grasso Plaza, #278<br>Afton, MO 63123 | CASE NO. |
| Plaintiff, | |
| vs. | JUDGE |
| ERIC HUMMEL<br>14714 Township Road 218<br>Van Buren, OH 45889 | |
| FINDLAY MACHINE & TOOL INC.<br>2000 Industrial Drive<br>Findlay, OH 45840 | CIVIL ACTION<br>**COMPLAINT** |
| KREATE EXTRUSION, LLC<br>510 South Main Street<br>Findlay, OH 45840 | |
| JOHN/JANE DOES NOS.  1-10<br>(Individuals being fictitious and presently<br>unknown) | |
| ABC CORPORATIONS NOS. 1-10<br>(Entities being fictitious and presently unknown) | |
| Defendants. | |

## **COMPLAINT**

Plaintiff American Plastics, LLC ("Plaintiff" or "AP") for its Complaint against Eric Hummel

("Defendant Hummel"), Findlay Machine & Tool, Inc. ("FMT"), Kreate Extrusion, LLC

("Kreate Extrusion"), John Does Nos. (1-10) (individuals being fictitious and presently

unknown), and ABC Corporations Nos. 1-10 (entities being fictitious and presently unknown),

alleges the following:

## **NATURE OF THE ACTION**

1.     AP brings this action to remedy substantial and ongoing harm caused by Defendant Hummel's breach of contract, breach of fiduciary duty, misappropriation of trade secrets, and tortious interference with AP's contractual and business relationships.  AP also brings this action to remedy ongoing damages caused by a continuing scheme by Defendants FMT and Kreate Extrusion to raid AP of certain key employees, such as Defendant Hummel, to gain access to AP's proprietary and confidential business information and trade secrets, and to obtain an unlawful competitive advantage over AP and its subsidiaries.

2.     AP is a leading designer and manufacturer of innovative plastic-injection molded products for household and garage storage solutions.  AP and its subsidiaries distribute their products across the United States and employ approximately 1,000 individuals.

3.     The plastic-injection molded products business is a highly competitive industry, and AP's design and manufacturing processes require specially formulated tooling, machinery, equipment, and molds.  Information regarding AP's tooling, molds, and design and manufacturing processes constitute highly confidential and valuable trade secret information that is not disclosed publicly and not shared with AP's competitors.  Indeed, AP's confidential information regarding its tooling, molds, and design and manufacturing processes is not even known to all of AP's employees and is protected against unauthorized disclosure by, *inter alia*, employee confidentiality agreements.

4.     Defendant Hummel, formerly AP's Director of Tooling, had extensive knowledge of and access to AP's trade secrets and confidential information, and he agreed to be bound by a written Employee Invention and Confidential Information Agreement ("Confidentiality

Agreement") as part of his employment with AP and its subsidiary, Creative Plastic Concepts, LLC ("CPC").  Pursuant to the Confidentiality Agreement, Defendant Hummel agreed that (i) during his employment he will receive, develop, or otherwise acquire various kinds of trade secrets and other information which is of a secret or confidential nature (collectively referred to as "confidential information"); (ii) not to disclose or use, directly or indirectly, any confidential information of American Plastics or one of its subsidiaries, divisions, branches, or affiliates without authorization from American Plastics; and (iii) this includes, but is not limited to, inventions, products, product specifications, processes, procedures, machinery, apparatus, prices, discounts, manufacturing costs, sales and other records, customer lists, future plans, ideas, technical data, research records, development records, and practices in connection therewith. A true and correct copy of the Confidentiality Agreement is attached hereto as **Exhibit A**.

5.      In December of 2023, Defendant Hummel tendered his resignation to AP to work for FMT and/or Kreate Extrusion.  Upon information and belief, FMT and/or Kreate Extrusion, with the tortious assistance from Defendant Hummel, misappropriated AP's highly sensitive trade secrets and confidential information and have interfered and continue to interfere with AP's business and contractual relationships.

6.      As set forth in further detail below, at all relevant times FMT and Kreate Extrusion had knowledge of (i) the identities of key AP employees with access to AP's confidential trade secret and business information, as well as (ii) the identities of AP's major customers and business contracts.  Upon information and belief, FMT and Kreate Extrusion embarked on a campaign to raid AP of certain key employees to unlawfully gain access to AP's confidential business information and trade secrets, and to unlawfully interfere with AP and its subsidiaries' customer relationships.

7.     After Defendant Hummel's resignation, AP discovered that Defendant Hummel, in the six-month period prior to his departure from AP, was surreptitiously working for FMT and/or Kreate Extrusion in violation of his contractual obligations and common law duties of loyalty owed to AP. Upon information and belief, in the months before he resigned from AP, Defendant Hummel used AP's computer systems to, *inter alia*, misappropriate AP's confidential information and trade secrets, conduct corporate espionage, and to engage in business on the apparent behalf of AP's competitors, to the detriment of AP.

8.     Upon information and belief, before his departure from AP, Defendant Hummel also misappropriated AP's trade secrets and confidential business information to specifically assist FMT and/or Kreate Extrusion LLC in their tortious interference with AP's ongoing business relations with one of its largest customers, The Home Depot.

9.     Defendants' conduct has caused Plaintiff ongoing harm that likely will be compounded immensely if the malicious and wrongful actions of the Defendants continue unabated.

10.    For these reasons and those alleged in greater detail below, Plaintiff seeks an order enforcing the Confidentiality Agreement between Plaintiff and its former employee, Defendant Hummel, and, money damages, attorney's fees, costs of suit, and such other and further relief as the Court may deem just and proper.

## JURISDICTION

11.    This Court has federal diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between citizens of Ohio and citizens of Delaware, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. This Court also has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the Defend Trade Secrets Act, 18 U.S.C. § 1836.

13. This Court also has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the Computer Fraud and Abuse Act, under 18 U.S.C. § 1030.

## VENUE

14. Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendant Eric Hummel resides in this district in Ohio.

15. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

16. Plaintiff, **American Plastics, LLC**, is a limited liability company formed under the laws of Delaware and based in Afton, Missouri. Plaintiff has one (1) member: Jansan Acquisition, LLC ("Jansan"), which is a limited liability company formed under the laws of Delaware and based in Ohio. Jansan has one (1) member: Plaintiff XR10 Capital, LLC ("XR10"), which is a limited liability company formed under the laws of Delaware and based in Beverly Hills, California. XR10 has one (1) member, the Green Living Trust, which is organized under the laws of California and has two trustees who are residents of California.

17. AP is an operating company, and is the parent to, among others, CPC, and CPC's three subsidiaries: Shelves West, LLC, Centrex LLC and Two-Six Industries, LLC (for ease of

5

reference, AP and its subsidiaries are sometimes referred to as the "AP Group" or the "AP Group companies").

18.     Upon information and belief, Defendant, Eric Hummel, is an individual who resides in Van Buren, Ohio.

19.     Upon information and belief, Findlay Machine & Tool, Inc.  is a corporation that is incorporated in Ohio and has its principal place of business in Findlay, Ohio.  Upon information and belief, Nickolas Reinhart founded and controls a family owned and operated asset management firm called, "Nickolas," whose portfolio companies include FMT, (a plastic injection molding business), Kreate Extrusion, as well as various companies using the "Kreate" name (together or singularly, "Kreate").  *See, generally,* https://nickolas.com/ (last visited on March 26, 2024).  Upon information and belief, Mr. Reinhart controls FMT and Kreate and other affiliated companies (together the "Reinhart Companies").  The Reinhart Companies compete with the AP Group companies in the plastics industry.  Upon information and belief, the Reinhart Companies conduct business across the United States and globally.

20.     Defendants, John/Jane Does Nos. 1-10, are fictitious individuals whose true identities are currently unknown to Plaintiff, and who at all times relevant hereto are individuals who are current and/or former employees of the AP Group companies who have breached and/or conspired with Defendants to breach their respective duties and obligations to the detriment of the AP Group companies.

21.     Plaintiff reserves the right to substitute named persons in place of John/Jane Does Nos. 1-10.

22.     Defendants, ABC Corporations Nos. 1-10, are fictitious corporations, partnerships, businesses, LLCs, LLPs, sole proprietorships, and/or other entities, whose true identities are currently unknown to Plaintiff, and which at all times relevant hereto are and/or were direct competitors of the AP Group companies that have tortiously interfered with the AP Group Companies' contracts and business relationships.

23.     Plaintiff reserves the right to substitute corporations, companies, partnerships, businesses, and/or other entities in place of ABC Corporations Nos. 1-10.

## FACTUAL BACKGROUND

### A.   AP's Protected Trade Secret, Confidential, and Proprietary Information.

24.     AP Group Companies are engaged in the business of manufacturing and selling high-quality plastic-injection molded home and garage solutions, and its customers include some of the world's largest big box retailers.

25.     AP Group companies are operationally integrated, and their employees work collaboratively across organizational lines in the service of major customers.

26.     The market for plastic-injection molded home and garage storage solutions is nationwide and is highly and uniquely competitive.  AP's design and manufacturing processes require specially formulated tooling and molds.  AP's product designs and specifications, are not shared with AP's competitors and create a competitive advantage in the market for AP.

27.     Individuals employed by AP who are involved in the tooling and manufacturing of AP's custom molded products have access to AP's confidential business information, know-

how, and trade secrets, including, but not limited to, (1) the types of unique tools developed, customized, and used by AP in its manufacturing processes; (2) the capital and time required for manufacturing specific products; (3) the cycle times for AP's machines and associated labor costs; and (4) the manufacturing processes used by and unique to AP.

28.    Individuals employed by AP in senior positions have access to AP's confidential business operations, including, but not limited to (1) customer pricing information; (2) employee pay and benefits; (3) vendor and shipping costs; (4) finance and product costs; (5) capacity studies; (6) knowledge of AP's six manufacturing plants; (7) existing business relationships; and (8) new business opportunities.

29.    This confidential information is (1) not generally known outside of AP's business; (2) is not even known to all of AP's employees; (3) has value to AP in the competitive plastics industry; (4) was developed and protected by AP at great effort and expense; and (5) would require significant time and expense for a competitor to develop and duplicate.

30.    To protect its confidential information, AP, among other things, requires its employees to review and execute the Confidentiality Agreement through which they warrant they will not, directly or indirectly, without authorization from AP:

> Disclose any confidential information of [AP] that [the employee] obtains during the course of employment, including, but not limited to, inventions, products, product specifications, processes, procedures, machinery, apparatus, prices, discounts, manufacturing costs, sales and other records, customer lists, future plans, ideas, technical data, research records, development records, and practices in connection therewith.

A true and correct copy of the Confidentiality Agreement is attached hereto as **Exhibit A**.

31.     AP takes reasonable precautions to protect its trade secrets and confidential information because, *inter alia*, competitors with unauthorized access such information could use it to their unfair competitive benefit and advantage, causing immediate and irreparable harm to AP.

**B.  The Reinhart Companies are Direct Competitors of AP, and Deliberately Recruited Key AP Employees with Access to AP's Protected Trade Secret Information.**

32.     The Reinhart Companies are founded and owned by Nickolas Reinhart who was a partial owner of Jansan and CPC and sold his interest to the AP Group companies. As part of these sale transactions, Reinhart expressly agreed not to compete with AP Group Companies, and further agreed not to solicit customers and employees of AP Group companies.  Reinhart's agreement to these restrictive covenants was a key component to the sale transactions, as Reinhart had extensive involvement in and knowledge of the business operations of Jansan's subsidiaries, AP and CPC.

33.     The Reinhart Companies are in the same business as AP and are involved in the tooling and manufacturing of custom molded products.  Accordingly, the Reinhart Companies directly compete with AP for the same customers and business.

34.     Upon information and belief, subsequent to the aforementioned transactions, Mr. Reinhart and/or individuals working on behalf of the Reinhart Companies contacted certain key employees of AP Group companies to recruit, solicit, encourage, and induce them to join the Reinhart Companies.  Upon information and belief, the Reinhart Companies embarked on a campaign to raid AP's employees to gain access to AP's confidential trade secret and business information and interfere with AP's business relations.

9

35.     Upon information and belief, to date, seventeen (17) AP employees have resigned from AP to join the Reinhart Companies in several, successive waves, including Defendant Hummel.  Additionally, as set forth in further detail below, AP's largest customer, The Home Depot, abruptly reduced its orders from AP following the aforementioned defection of AP's employees to the Reinhart Companies.

**C. Defendant Hummel's Breach of the Confidentiality Agreement, Implied Covenant of Good Faith and Fair Dealing, and Fiduciary Duty of Loyalty to AP.**

36.     Defendant Hummel started working for AP on or around April 17, 2018.

37.     Defendant Hummel reviewed and executed the Employment Offer Letter on April 17, 2018.  As a condition of his continued employment with AP, Defendant Hummel executed the Confidentiality Agreement on October 21, 2021.

38.     The Employment Offer Letter and Confidentiality Agreement entered between AP and Defendant Hummel are valid, binding, and enforceable contracts.

39.     The Confidentiality Agreement was and is intended to protect trade secrets and confidential and proprietary information belonging to AP that employees like Defendant Hummel may have access to during the course of their employment with AP.

40.     Defendant Hummel was the Director of Tooling at AP.  In this senior role, he oversaw all machines and molds used by AP, and was one of the top 25 highest paid employees at AP Group Companies out of approximately 1,000 employees.

41.     Because of the senior position Defendant Hummel held at AP, he had access to and possessed significant knowledge and information concerning AP's confidential business operations and trade secrets.

42.      Upon information and belief, this knowledge and information includes, but is not limited to, customer pricing and contact information; employee pay and benefits; the manufacturing processes used by and unique to AP; vendor and shipping costs; finance and product cost; capacity studies; which of AP's six plants manufacture which products; the types of tools developed, customized and used by AP in its manufacturing processes; the capital and time required for manufacturing specific products; the cycle times for AP's machines and associated labor costs; AP's existing client and vendor relationships; and AP's new business opportunities.

43.     Upon information and belief, Defendant Hummel breached his implied covenant of good faith and fair dealing and his fiduciary duty of loyalty to AP by surreptitiously and contemporaneously working for and/or on behalf of AP's competitor, the Reinhart Companies, while still employed as AP's Director of Tooling.

44.     Upon information and belief, Defendant Hummel breached his Confidentiality Agreement with AP by purposefully disclosing trade secrets and confidential information to the Reinhart Companies without AP's authorization and to AP's detriment while he was still employed as AP's Director of Tooling.

45.     Defendant Hummel's effective date of resignation from AP was December 29, 2023.  However, Defendant Hummel had a Kreate email address – eric@kreate.com – and, upon information and belief, was doing work on behalf of the Reinhart Companies at least six months before he resigned from AP.

11

**D. Defendants Conspired to and Did Misappropriate AP's Trade Secrets and Tortiously Interfered with AP's Contracts and Business Relations.**

46.     Upon information and belief, Defendant Hummel was solicited by Nickolas Reinhart, Kreate and/or FMT, or individuals acting on their behalf, to work for AP's competitor, the Reinhart Companies.

47.     Upon information and belief, at all relevant times the Reinhart Companies had knowledge that Defendant Hummel continued to be employed by AP, and further had knowledge that, by virtue of his employment with AP, Defendant Hummel had access to AP's valuable confidential information and trade secrets, the unauthorized disclosure of which would cause substantial economic and other harm to AP.

48.     Upon information and belief, Defendant Hummel and the Reinhart Companies, and other unnamed defendants or individuals whose identities are currently unknown, conspired to tortiously interfere with AP's contracts and business relationships, and to misappropriate AP's trade secrets and confidential business operations.

49.     As noted above, while still working as AP's Director of Tooling, Defendant Hummel surreptitiously worked on behalf of AP's direct competitor, Kreate and/or the Reinhart Companies, and was even given an "@kreate.com" email address at least six months before resigning from AP.

50.     In May 2023, Defendant Hummel, through his "eric@kreate.com" email address, emailed UBE Machinery, one of the largest injection molding press manufacturers and a multi-million dollar equipment and maintenance supplier to AP. UBE Machinery replied to Defendant Hummel by emailing his AP email address, EHummel@amplastics.com.  Defendant Hummel

then forwarded this email chain to his personal email address, "hummel6817@gmail.com," removing any doubt of the connection between Defendant Hummel and the "eric@kreate.com" email address belonging to AP's direct competitor.

51.     In May 2023, Defendant Hummel on AP's computer servers, using his email, EHummel@amplastics.com, emailed John Forgash, an employee at Premier Equipment Sales, receiving a quotation for a Conair PM Loader on behalf of Kreate Extrusion company.  Premier Equipment Sales is also a substantial tooling and maintenance supplier to AP. Defendant Hummel, using his email, EHummel@amplastics.com, then forwarded the quotation to an employee at the competitor, the Reinhart Companies, at his email at dave@nickolas.com.

52.     Upon information and belief, also around this time in May 2023, Nickolas Reinhart "gifted" a 1.2-million-dollar home in Ohio to Defendant Hummel, while Defendant Hummel was employed as Director of Tooling at AP.  Upon information and belief, the home was bought for Defendant Hummel's use, and is located less than nine (9) miles from Kreate's address at 411 S Main St Findlay, OH 45840.

53.     On June 12, 2023, Defendant Hummel received an email at his EHummel@amplastics.com email, from Frank Kern at Delco LLC, a contract manufacturing, mold building and manufacturing, and sanitary valve company.  Delco LLC is also a substantial tooling and mold manufacturing supplier to AP.  The email was titled "data review," and Delco LLC sent Defendant Hummel product designs and technical data, which Defendant Hummel then forwarded to his eric@kreate.com email.

54.     The data in this email included confidential AP designs and technical information. AP took reasonable measures to keep this information confidential by, among other things,

specifically requiring AP employees like Defendant Hummel to sign the Confidentiality Agreement.  By entering into the Confidentiality Agreement, Hummel explicitly agreed that he would "not disclose or use, directly or indirectly, confidential information of [AP] [he] will obtain during the course of [his] employment, including … products, product specifications, processes, procedures, machinery, apparatus, prices discounts, manufacturing costs, … technical data,, … and practices in connection therewith."  AP's confidential information derives independent economic value, as it is not publicly available or generally known in the trade, as evidenced by Defendant Hummel forwarding this email from his AP company email address to his eric@kreate.com email address.

55.    On June 29, 2023, Defendant Hummel received an email at his EHummel@amplastics.com email, from Gage Wright a Project Manager of Sales at Delco LLC, concerning "Kreate Spider Inserts" and Wright confirmed with Defendant Hummel that the inserts are for Kreate.  Defendant Hummel in the same hour forwarded this email to his eric@kreate.com email.

56.    On July 10, 2023, Defendant Hummel received an email at his EHummel@amplastics.com email, from Steve Rutkowski, an Engineering Supervisor at Delco LLC, concerning quotes for various "pieces."  The email also included product designs and technical data.   Immediately, Defendant Hummel forwarded that email to his eric@kreate.com email.

57.    This email included quotes that are financial and business information of AP, as well as technical and design data that is also confidential to AP.  Like the other information described herein, AP took reasonable measures to keep this information confidential.  Also, like

14

the other confidential information and trade secrets that are the subject of this action, this confidential information derives independent economic value, and is not publicly available or generally known in the trade, as evidenced by Defendant Hummel forwarding this email from his EHummel@amplastics.com email to his eric@kreate.com email.

58.     On September 18, 2023, Defendant Hummel using his eric@kreate.com emailed Renato Valente, who works for the Technical Commercial Department of Moldo Plastico, and Ben Sayalith, another former employee that had previously resigned from AP to work for the Reinhart Companies, titled, "HDX program."  Defendant Hummel asked Mr. Valente if he could "confirm he received the emails from Ben with updated part data along with our notes on the tool drawings.  Also, for future drawings please mark or note what changes were made when sending revised data."  He signed off with his "Kreate Extrusion, LLC" signature block – despite his still working for AP and its subsidiary, CPC.

59.     This email references the HDX program and emails concerning notes on the tool drawings.  HDX is The Home Depot's trademark, and includes an entire product line of plastic storage, organization, shelving, container, cabinet, and other products that are sold in The Home Depot stores and online across the country and internationally.  The Home Depot is one of AP's largest customers, and the majority of work performed by AP for The Home Depot relates to the HDX product line.

60.     AP's client relationships and the types of tools developed, customized and used by AP in its manufacturing processes are confidential to AP.  AP has taken reasonable measures to keep information such as this confidential by, among other things, requiring AP employees like Defendant Hummel to enter into the Confidentiality Agreement.  This information derives

independent economic value as it is not publicly available or generally known in the trade, and is related to confidential tool drawings for one of AP's largest customers.

61.     On September 25, 2023, Cavalier Tools, one of AP's most substantial and key suppliers of molds used in AP and its subsidiaries' manufacturing processes, sent an email to Defendant Hummel and Ben Sayalith, about certain confidential product specifications and designs for a product manufactured by AP for The Home Depot.  Notably, the vendor sent this email to Defendant Hummel and Sayalith at their "@kreate.com" email addresses. In these emails with AP's vendor, Defendant Hummel, using his "eric@kreate.com" email address, also emailed Steve Hinderer and Shawn Guzaek, employees at Plastic Engineering & Technical Services, Inc., a major tool vendor to AP, asking when they "could meet to review the HDX clear program."  Upon information and belief, "the HDX clear program" refers to a line of clear plastic storage container products branded under The Home Depot's HDX product line that AP was manufacturing for The Home Depot.

62.     As above-mentioned, AP's client relationships and the types of tools developed, customized and used by AP in its manufacturing processes are confidential to AP, and AP has taken reasonable measures to keep information such as this confidential.  This information derives independent economic value as it is not publicly available or generally known in the trade, and involves specifications for products unique to one of AP's largest customers, The Home Depot.

63.     As previously noted, Defendant Hummel's effective date of resignation from AP was December 29, 2023, well after Defendant Hummel began take actions on behalf of the Reinhart Companies.

64.    The day before his resignation on December 28, 2023, Defendant Hummel using his EHummel@amplastics.com email, emailed Dan Cerimele, the Senior Sales Manager of UBE Machinery, asking for the "inside door dimensions" for a safety door modification, and Defendant Hummel forwarded the PDF's that Mr. Cerimele sent him to his hummel6817@gmail.com email.

65.    Like the other confidential information and trade secrets described herein, the information in this email included product design specifications that are confidential to AP, and that AP has taken reasonable measures to protect.  This data derives independent economic value as it is not publicly available or generally known in the trade, as evidenced by Defendant Hummel forwarding this email from his EHummel@amplastics.com email to his personal email (hummel6817@gmail.com) the day before he resigned.

66.    Notably, in a few of his emails with the various above-mentioned vendors, Defendant Hummel used his "eric@kreate.com" email address and a "Kreate Extrusion, LLC" signature block, demonstrating that Defendant Hummel was (i) working with key AP vendors; (ii) while employed by AP; (iii) but on behalf of the Reinhart Companies, **not** AP.

67.    Before his resignation, Defendant Hummel never represented to AP that he was working for and/or on behalf of AP's direct competitor, and AP had no knowledge that Defendant Hummel was apparently employed by the Reinhart Companies or any other entity.

68.    As Director of Tooling at AP, Defendant Hummel had access to AP's trade secrets, including AP's customer lists, products, product specifications, processes, technical data, types of tools developed, customized and used by AP in its manufacturing processes, and financial and business information belonging to AP.

69.     Among other things, Defendant Hummel administered the purchase and design of specialized tools needed to mold AP's products, including products manufactured by AP for The Home Depot that are sold throughout United States and internationally.

70.     Upon information and belief, Defendant Hummel abused his senior role as Director of Tooling at AP to provide the Reinhart Companies, a direct competitor of AP, with unauthorized access to and use of AP's trade secrets and confidential information by improper means.

71.     Upon information and belief, Defendant Hummel misappropriated AP's trade secrets and confidential information to gain new business for the Reinhart Companies.

72.     To meet the substantial needs of a major customer like The Home Depot, an injection molded plastic products manufacturer like the Reinhart Companies requires the expertise of capable and well-trained employees, as well as product specifications, tooling and molding requirements, and other support, several months in advance of it being expected to fulfill an order for products.

73.     By March of 2024, the Home Depot reduced the amount of business it regularly conducts with AP.  Upon information and belief, the orders for products that The Home Depot had previously contracted with AP to fulfill are now being fulfilled by the Reinhart Companies, using AP's misappropriated trade secrets, confidential information, and former employees.

74.     The Home Depot, one of AP's largest customers, would not have reduced the amount of business conducted with AP, if not for the Defendants' malicious and improper conduct and misappropriation of AP's trade secrets and confidential business information.

75.    The Defendants' malicious and improper conduct has hampered AP's production capacity and irreparably damaged the good will of its customers and employees.

## COUNT ONE
### Misappropriation of Trade Secrets under 18 U.S.C. § 1836
### (Against all Defendants)

76.    AP realleges and incorporates each and every allegation contained in the preceding paragraphs, as if fully rewritten herein.

77.    AP owned, possessed, and developed nonpublic, confidential, proprietary information that constitutes a "trade secret or secrets" related to products and services used in interstate commerce.

78.    Upon information and belief, Defendants have used AP's trade secrets, acquired through Defendant Hummel's confidential relationship with AP, without AP's authorization.

79.    Defendants have failed to return and are believed to still be in possession of AP's confidential, proprietary and trade secret information.

80.    Defendants will continue to misappropriate, disclose, and use AP's trade secret information for Defendants collective benefit, as well as the benefit of additional unknown third parties, all in violation of the Confidentiality Agreement, as well as in violation of the Defend Trade Secrets Act under 18 U.S.C. § 1836.

81.    As a direct and proximate result of Defendants' misappropriations, AP has suffered, and will continue to suffer, substantial, material and continuing harm and damages, in an amount to be proved at trial.

19

## COUNT TWO
### Misappropriation of Trade Secrets under Ohio Rev. Code. § 1333.61(D)
### (Against all Defendants)

82.     AP realleges and incorporates each and every allegation contained in the preceding paragraphs, as if fully rewritten herein.

83.     AP owned, possessed, and developed nonpublic, confidential, proprietary information that constitutes a "trade secret or secrets" related to products and services used in interstate commerce.

84.     Upon information and belief, Defendants have used AP's trade secrets, acquired through Defendant Hummel's confidential relationship with AP, without AP's authorization.

85.     Defendants have failed to return and are believed to still be in possession of AP's confidential, proprietary and trade secret information.

86.     Defendants will continue to misappropriate, disclose, and use AP's trade secret information for Defendants collective benefit, as well as the benefit of additional unknown third parties, all in violation of the Confidentiality Agreement, as well as in violation of the Uniform Trade Secrets Act under Ohio Rev. Code. § 1333.61(D).

87.     As a direct and proximate result of Defendants' misappropriations, AP has suffered, and will continue to suffer, substantial, material and continuing harm and damages, in an amount to be proved at trial.

## COUNT THREE
### Breach of Contract
### (Against Defendant Hummel)

88.     AP realleges and incorporates each and every allegation contained in the preceding paragraphs, as if fully rewritten herein.

89.     The executed Employment Offer Letter, and Employee Invention and Confidential Information Agreement entered between Defendant Hummel and American Plastics are valid, binding, and enforceable contracts.

90.     Defendant Hummel received good and valuable consideration from AP in exchange for Defendant Hummel's agreement to the terms and conditions of the Confidentiality Agreement including, Defendant Hummel's continued employment, compensation, bonuses, and benefits.

91.     At all relevant times, AP performed all obligations required of it under the Employment Offer Letter and Confidentiality Agreement, and at no time was Defendant Hummel's performance excused.

92.     Defendant Hummel's above-described conduct constitutes, and will continue to constitute, material breaches of the contracts entered between Defendant Hummel and AP.

93.     As a direct and proximate result of Defendant Hummel's material breaches of contract, AP has suffered, and will continue to suffer, substantial, material, and continuing harm and damages, in an amount to be proven at trial.

**COUNT FOUR**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(Against Defendant Hummel)**

94.     AP realleges and incorporates each and every allegation contained in the preceding paragraphs, as if fully rewritten herein.

95.     Defendant Hummel has materially breached the implied covenant of good faith and fair dealing which is implied by law in the Confidentiality Agreement by, among other things, denying AP its reasonable expectations in said contracts.

96.     As a direct and proximate result of Defendant Hummel's material beaches of the implied covenant of good faith and fair dealing, AP has suffered, and will continue to suffer, substantial, material and continuing harm and damages, in an amount to be proved at trial.

**COUNT FIVE**
**Breach of Fiduciary Duty**
**(Against Defendant Hummel)**

97.     AP realleges and incorporates each and every allegation contained in the preceding paragraphs, as if fully rewritten herein.

98.     By virtue of Defendant Hummel's status and position at AP, Defendant Hummel, a critical "high-powered" employee, was entrusted with access to confidential and proprietary information of American Plastics, and accordingly owed a duty of loyalty to AP.

99.     Defendant Hummel, upon information and belief, intentionally breached his duty of loyalty to AP by, among other things, engaging in conduct and acts detrimental to AP to compete unfairly with AP, as herein above set forth.

100.    Defendant Hummel is in a position to divulge, and/or utilize, for his own pecuniary benefit, as well as for the benefit of his new employer the Reinhart Companies, and other competitor(s), confidential and proprietary business and trade secret information belonging to AP, known by Defendant Hummel because of Defendant Hummel's employment with AP.

101.    As a direct and proximate result of Defendant Hummel's breach of fiduciary duty as aforesaid, AP has suffered, and will continue to suffer, substantial, material, and continuing harm and damages, in an amount to be proven at trial.

### COUNT SIX
### Civil Conspiracy
### (Against all Defendants)

102.    AP realleges and incorporates each and every allegation contained in the preceding paragraphs, as if fully rewritten herein.

103.    FMT and/or Kreate Extrusion, with actual knowledge of Defendant Hummel's duties to and relationship with AP, including, but not limited to, his Confidentiality Agreement, actively, knowingly and maliciously conspired with Defendant Hummel to misappropriate AP's trade secrets and obtain unauthorized access to AP's confidential information for the purpose of tortiously interfering with AP's contractual and business relationships and acquire a competitive economic advantage over AP.

104.    As a direct and proximate result of Defendants' conduct conspiring with Defendant Hummel to breach his duties as aforesaid, AP has suffered, and will continue to suffer, substantial, material and continuing harm and damages, in an amount to be proven at trial.

**COUNT SEVEN**
**Tortious Interference with Contract**
**(Against FMT and Kreate Extrusion)**

105.     AP realleges and incorporates each and every allegation contained in the preceding paragraphs, as if fully rewritten herein.

106.     Defendants' conduct as aforesaid constitutes and will continue to constitute, knowing, willful and malicious interference with AP's Confidentiality Agreement with Defendant Hummel.

107.     Defendants' conduct as aforesaid was and is undertaken through improper means and without justification.

108.     As a direct and proximate result of Defendants' tortious interference as aforesaid, AP has suffered, and will continue to suffer, substantial, material and continuing harm and damages, in an amount to be proven at trial.

**COUNT EIGHT**
**Tortious Interference with Business Relations**
**(Against all Defendants)**

109.     AP realleges and incorporates each and every allegation contained in the preceding paragraphs, as if fully rewritten herein.

110.     Upon information and belief, Defendants were aware and are still currently aware of a business relationship between AP and Home Depot.

111.    Defendants' conduct as aforesaid constitutes and will continue to constitute, knowing, willful and malicious interference with AP's business relationship with Home Depot, one of AP's largest customers.

112.    Defendants' conduct as aforesaid was and is undertaken through improper means and without justification.

113.    As a direct and proximate result of Defendants' tortious interference as aforesaid, AP has suffered, and will continue to suffer, substantial, material and continuing harm and damages, in an amount to be proven at trial.

## COUNT NINE
### Computer Fraud and Abuse under 18 U.S.C. § 1030
### (Against all Defendants)

114.    American Plastics realleges and incorporates each and every allegation contained in the preceding paragraphs, as if fully rewritten herein.

115.    Upon information and belief, Defendant Hummel purposefully and knowingly accessed AP's computers, computer systems, and computer networks, and downloaded, transmitted and/or deleted AP's files and confidential and proprietary information without authorization, and/or in a manner that exceeded his authorization.

116.    Defendant's conduct constitutes a violation of the Computer Fraud and Abuse Act under 18 U.S.C. § 1030.

117.     Upon information and belief, Defendant Hummel took these actions on behalf and at the direction of the Reinhart Companies, who conspired with Defendant Hummel for the purpose of causing AP harm and to obtain a competitive advantage over AP.

118.     As a result of Defendants' violations of the Computer Fraud and Abuse Act, AP has suffered and will continue to suffer damages.

**COUNT TEN**
**Unjust Enrichment**
**(Against all Defendants)**

119.     AP realleges and incorporates each and every allegation contained in the preceding paragraphs, as if fully rewritten herein.

120.     Defendants have received a financial benefit because of their misappropriation and misuse of AP's trade secrets and confidential and proprietary business information.

121.     Permitting Defendants to retain any financial gain generated because of the misappropriation and misuse of AP's trade secrets and confidential and proprietary business information would be unjust.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

A.     On Count One, awarding damages in favor of Plaintiff, in an amount to be determined at trial, for (i) the actual loss caused by the misappropriation of the trade secret; and (ii) damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss.

B.      On Count Two, awarding damages in favor of Plaintiff, in an amount to be determined at trial, for (i) the actual loss caused by the misappropriation of the trade secret; and (ii) damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss.

C.      On Count Three, awarding damages in favor Plaintiff, in an amount to be determined at trial.

D.      On Count Four, awarding damages in favor Plaintiff, in an amount to be determined at trial.

E.      On Count Five, awarding damages in favor Plaintiff, in an amount to be determined at trial, including a partial disgorgement of Defendant Hummel's compensation.

F.      On Count Six, awarding damages in favor Plaintiff, in an amount to be determined at trial.

G.      On Count Seven, awarding damages in favor Plaintiff, in an amount to be determined at trial.

H.      On Count Eight, awarding damages in favor Plaintiff, in an amount to be determined at trial.

I.      On Count Nine, awarding damages in favor Plaintiff, in an amount to be determined at trial.

J.     On Count Ten, awarding damages in favor Plaintiff, in an amount to be determined at trial.

K.     Enter a judgment in favor of Plaintiff, and against Defendants for (i) an award of actual damages; (ii) an award of exemplary damages; (iii) court costs and attorneys' fees; and (iv) pre-judgment and post-judgment interest.

L.     Order equitable and injunctive relief, and such other and further relief, as this Court deems just and proper.

**[SIGNATURE BLOCK ON FOLLOWING PAGE]**

Respectfully submitted,

/s/ *Jonathan H. Krol*

Jonathan H. Krol (0088102)
Reminger Co., L.P.A.
200 Public Square, Suite 1200
Cleveland, Ohio 44114
P: (216) 687-1311 | F: (216) 687-1841
jkrol@reminger.com

*Attorneys for Plaintiff*

**PRO HAC VICE APPLICATIONS FORTHCOMING**

Timothy J. Pastore, Esquire
MONTGOMERY McCRACKEN
WALKER & RHOADS LLP
437 Madison Avenue, 24th Floor
New York, NY 10022
Tel: (212) 551-7707
*tpastore@mmwr.com*

Ethan Hougah, Esquire
MONTGOMERY McCRACKEN
WALKER & RHOADS LLP
Liberty View
457 Haddonfield Road, Suite 600
Cherry Hill, NJ 08002
Tel: (856) 488-7745
*ehougah@mmwr.com*

Jacqualyn Gillen, Esquire
MONTGOMERY McCRACKEN
WALKER & RHOADS LLP
1735 Market Street, 21st Floor
Philadelphia, PA 19103
Tel: (215) 772-7502
*jgillen@mmwr.com*

Dated: April 12, 2024