# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **AMERICAN PLASTICS, LLC,** | CASE NO. 3:24 CV 660 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **ERIC HUMMEL, et al.,** | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

Plaintiff American Plastics, LLC, ("AP") a plastic products manufacturer, sued Defendants Eric Hummel, Findlay Machine & Tool Inc. ("FMT"), and Kreate Extrusion, LLC ("Kreate"), alleging multiple violations of state and federal law from a scheme to steal trade secrets and proprietary information. *See* Doc. 1. Pending before this Court is Defendants' Motion to Dismiss or Stay based on the *Colorado River* abstention doctrine and this Court's inherent authority. (Doc. 16). Plaintiff opposes (Doc. 20), and Defendants reply (Doc. 23). For the reasons discussed below, Defendants' Motion is denied.

## BACKGROUND

Plaintiff filed this lawsuit on April 12, 2024. (Doc. 1). In short, the ten-count Complaint alleges: (1) misappropriation of trade secrets under 18 U.S.C. § 1836 against all Defendants; (2) misappropriation of trade secrets under Ohio Rev. Code § 1333.61 against all Defendants; (3) breach of contract against Hummel; (4) breach of the implied covenant of good faith and fair dealing against Hummel; (5) breach of fiduciary duty against Hummel; (6) civil conspiracy against all Defendants; (7) tortious interference with contract against FMT and Kreate; (8) tortious

interference with business relations against all Defendants; (9) computer fraud and abuse against all Defendants; and (10) unjust enrichment against all Defendants. *See* Doc. 1.

Hummel, formerly employed as Plaintiff's Director of Tooling, signed an Employee Invention and Confidential Information Agreement ("Confidentiality Agreement") with Plaintiff on October 21, 2021. *See* Doc. 1, at 1–2; Doc. 1-1 (Confidentiality Agreement). Plaintiff alleges Hummel violated the Confidentiality Agreement by working with Plaintiff's competitors, Defendants FMT, and Kreate, to hatch "an illicit scheme to steal [Plaintiff's] proprietary information and trade secrets" to advance the competitors' business. *Id.* ¶ 51. The Complaint cites alleged misconduct by Hummel, from May 2023 and December 2023, including accessing and downloading files from AP's server, requesting product design specifications from AP's vendors, and sending that information to both his personal email and a Kreate email. *Id.* ¶¶ 51–64. The Complaint further alleges FMT and Kreate, Plaintiff's direct business competitors, intentionally raided Plaintiff's "key employees" to access trade secrets, business information, and identities of their customers and business contracts. *Id.* at 3.

## DISCUSSION

Defendants' Motion is two-fold. First, they assert this Court should abstain from this case based on an ongoing case in the Delaware Court of Chancery under *Colorado River*. Second, they ask this Court to use its inherent power to stay. For the reasons discussed below, this Court finds both arguments unpersuasive and denies the motion.

<u>Delaware Cases</u>

In April 2024, eight days before this case was filed, Plaintiff's subsidiary, Jansan Acquisitions ("Jansan"), filed a complaint in the Delaware Court of Chancery ("Delaware Chancery" action) against Nickolas Reinhart; Reinhart is the current owner of FMT and Kreate,

and a former partial owner of Plaintiff. (Doc. 16-1) (Delaware Chancery Complaint). The Delaware Chancery action seeks to enforce a contract between Jansan and Reinhart: an April 18, 2018, Membership Interest Purchase Agreement ("2018 Purchase Agreement") in which Reinhart acquired partial ownership of AP. *Id.*

The seven-count Delaware Chancery complaint alleges Reinhart, "[t]hrough the stolen employees and otherwise, . . . possesses and is using confidential proprietary information and know-how of Jansan and its subsidiaries to compete directly against the AP Group companies." *Id.* at 10. Those seven counts include: (1) breach of contract—non-solicitation of employees; (2) breach of contract—non-competition and non-solicitation of customers clauses; (3) breach of covenant of good faith and fair dealing for soliciting employees; (4) breach of covenant of good faith and fair dealing for engaging in business with and soliciting customers; (5) tortious interference with existing and prospective economic advantage; (6) tortious interference with an agreement; and (7) misappropriation of trade secrets as a result of Reinhart's prior ownership of business and employment with CPC, as well as employees stolen by Reinhart and their access to confidential information. *See id.*

In March 2024, another subsidiary of Plaintiff, XR10 Capital, LLC, filed a complaint against Nickolas Reinhart in the United States District Court for the District of Delaware ("Delaware Federal" action). (Doc. 16-2) (Delaware Federal Compaint). The Delaware Federal case was brought to "remedy Reinhart's serial breaches of reasonable and enforceable restrictive covenants contained in a February 15, 2022[,] Unit Purchase Agreement" ("2022 Purchase Agreement"). *Id.* at 1. The 2022 Purchase Agreement, between XR10 and Reinhart, is the transaction in which Reinhart sold his interest in all AP Group companies back to the group. *Id.*

3

The Delaware Federal complaint also contains seven counts: (1) breach of contract—non-solicitation of employees; (2) breach of contract—non-competition and non-solicitation of customers clauses; (3) breach of the covenant of good faith and fair dealing; (4) breach of covenant of good faith and fair dealing for engaging in business with and soliciting customers; (5) tortious interference with existing and prospective economic advantage; (6) tortious interference with an agreement; and (7) misappropriation of trade secrets as a result of Reinhart's prior ownership of business and employment with CPC, as well as employees stolen by Reinhart and their access to confidential information. *See* Doc. 16-2.

There are some notable differences between the Delaware cases and this one. Reinhart, the sole defendant in both Delaware cases, is not a defendant here. Additionally, both contracts at the heart of the Delaware actions are alleged to have forum selection clauses, requiring filing in those courts. *See* Doc. 16-1, at 8; *see also* Doc. 16-2, at 6.

<u>*Colorado River* Abstention</u>

Federal courts possess a "virtually unflagging obligation" to exercise the jurisdiction given to them. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("*Colorado River*"). But, in exceptional circumstances, *Colorado River* directs courts to abstain from exercising jurisdiction in favor of ongoing proceedings elsewhere to conserve judicial resources. *AEP Indus. v. UTECO N. Am., Inc.*, 2015 U.S. Dist. LEXIS 35732, at *4 (W.D. Ky. ). As explained by the Supreme Court, "the principles underlying this doctrine 'rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998) (quoting *Colo. River*, 424 U.S. at 817) (cleaned up).

Courts conduct a two-step inquiry to ascertain whether abstention is appropriate. First, this Court must determine whether the two proceedings are parallel. *Romine*, 160 F.3d at 339. Second, if parallel, this Court considers factors outlined by the Supreme Court in *Colorado River* and subsequent cases. *Id*. If the cases are parallel and abstention is appropriate under the *Colorado River* factors, a district court should grant a motion to dismiss or stay the action. *See id.* at 340–41.

But this doctrine does not task a district court with finding "some substantial reason for the *exercise* of federal jurisdiction . . . rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25–26 (1983) (emphasis in original). Abstention is only appropriate "where it would allow for a 'quick and prompt resolution between the parties,' such that the federal court 'will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses.'" *Walker v. Cedar Fair, L.P.*, 520 F. Supp. 3d 925, 929–30 (N.D. Ohio 2021) (quoting *Necak v. Select Portfolios Servicing, Inc.*, 2017 WL 6270238, at *1 (N.D. Ohio)).

*Parallel*

In deciding whether cases are parallel for abstention purposes, "the critical question is whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Necak*, 2017 WL 6270238, at *1. To be considered "parallel," two actions need not be identical, only "substantially similar." *Romine*, 160 F.3d at 340 (citing *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989)). Actions may be parallel even if they involve differing parties, claims, or theories of recovery. *See Healthcare Co. v. Upward Mobility, Inc.*, 784 F. App'x 390, 394–95 (6th Cir. 2019).

5

To begin, Defendants' assertions of what Plaintiff might intend to do with its case in the future has no place in this analysis. This Court considers the analysis based on the Complaint as it is, not how Defendants think it might be altered in the unknown future. *See id.* at 395 ("[T]he district court must compare the issues in the federal action to the issues actually raised in the state court action, not those that might have been raised.").

Citing multiple cases, Defendants contend the cases are parallel because "it is not required the parties be identical" and the Delaware Chancery action "involves the same material facts" as this one. *See* Doc. 16, at 6–8; Doc. 23, at 6–7; *Healthcare Co.*, 784 F. App'x at 394 (holding actions may be "parallel" if they involve the "same allegations as to the same material facts" or "require determination of [common dispositive] issues"); *see also Romine* 160 F.3d 337; *Glover v. Portland*, 675 F. Supp. 398 (M.D. Tenn. 1987) (holding concurrent cases parallel where a plaintiff was "in effect splitting a single section 1983 lawsuit between two courts.").

Indeed, the parties and claims need not be strictly identical for cases to be found parallel. In *Healthcare*, the Sixth Circuit held cases parallel where the federal case named a defendant who was not party to the state proceeding. 784 F. App'x at 393. This was because even though abstention would leave the plaintiff without recovery against that federal defendant, the sole issue in the federal case was "part-and-parcel" of the claims before the state court; adjudication of the state case would leave nothing for the federal court to decide. *Id.* Similarly, in *Romine*, the Sixth Circuit held concurrent state and federal class actions parallel despite having different named plaintiffs, an additional defendant in the federal action, and additional claims in the state action. 160 F.3d 337. This was due to finding (1) the cases both had "coextensive" plaintiff classes, (2) the state case included all claims asserted in the federal case, (3) defendants "for the most part,

6

[were] the same in both cases[,]" and (4) both complaints included "word-for-word identical passages." *Id.* at 339–40.

But concurrent cases must be substantially similar to be found parallel. The Sixth Circuit has held abstention improper where actions arose "out of the same basic facts" because they contested different aspects of the issue and sought different relief. *Baskin v. Bath Tp. Bd. of Zoning Appeals*, 15 F.3d 569, 572 (6th Cir. 1994). Consider *Baskin*, where a township and zoning board granted a man a variance to build radio towers. *Id.* at 570. Homeowners sued the township and board in state court under state law, claiming the variance went too far. *Id.* The man, Baskin, intervened in the state action, and then sued the township and board in federal court under state and federal law, claiming the variance did not go far enough and infringed on his constitutional rights. *Id.* Though Baskin, the defendants, the underlying facts, and the issue of whether the variance was permissible were the same in both cases, the Sixth Circuit held no parallel proceeding existed under *Colorado River*. *See id.*; *see also Walker*, 520 F. Supp. 3d at 930–31 (holding concurrent cases to not be parallel where, while concerning the same underlying factual allegations, resolution of the state action's breach of contract claim would not address the federal case's consumer-protection claims).

This case aligns more with *Baskin* than Defendants' cited cases. The Delaware Chancery action names only one defendant who, regardless of his potentially aligning interests with Defendants in this case, is not a party here. And these are not class actions with coextensive plaintiff classes. While there may be some overlapping, even identical, factual allegations in both cases, the claims are distinct; adjudication of either case will not determine the outcome of the other. The Delaware Chancery action seeks determination of a specific individual's acts under a

7

specific contract.¹ This case asks this Court to determine the acts of different parties, under a different agreement, and implicates additional federal law. Even with the same underlying facts, as it currently stands, the claims are distinctly different and the proceedings are not parallel. *See Baskin*, 15 F.3d at 572 ("While it may be true . . . [the state court proceeding] *could* be modified so as to make it identical to the current federal claim, that is not the issue here. The issue is whether [the state court proceeding], as it *currently* exists, *is* a parallel, state-court proceeding.") (quoting *Crawley v. Hamilton Cnty. Comm'rs*, 744 F.2d 28, 944 (6th Cir. 1984)) (emphasis and alterations in original).

Whether the Delaware Chancery court finds Reinhart liable to AP for breaching a sales agreement will not determine Defendants' fates in the employment Confidentiality Agreement or federal law disputes here, nor would it provide Plaintiff redress for such. A tenuous connection to another matter pending in Delaware that involves entirely different claims, parties, breaches, and contracts is not a parallel proceeding under any reasonable application of law.

*Colorado River Factors*

Even if the actions were parallel, which they are not, the *Colorado River* factors do not favor abstention here. As enumerated by the Supreme Court in *Colorado River* and subsequent cases, this Court considers: (1) whether the state court has assumed jurisdiction over any *res* or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing

---

1. Defendants argue the "Delaware Chancery action is more comprehensive" than this one. This Court finds such a contention unfounded. The Delaware Chancery action includes none of the specific causes of action outlined in this case. For example, not one federal cause of action is alleged in the Delaware Chancery action, nor is the breach of Hummel's Confidentiality Agreement. An attempt to connect underlying factual allegations does not lead to an overlap of legal claims asserted.

law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction. *Romine*, 160 F.3d at 340–41. This analysis is not a mechanical checklist, but rests "on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *S2 Yachts v. ERH Marine Corp.*, 855 F. App'x 273, 279 (6th Cir. 2021) (quoting *Moses*, 460 U.S. at 16).

The first factor weighs against abstention because there is no property at issue. *Romine*, 160 F.3d at 341. Likewise, the second factor weighs against abstention, as Delaware surely is not more convenient for this case's group of all Ohio Defendants.

The third consideration, the danger of piecemeal litigation, is salient to the analysis and heavily discussed in Defendants' Motion. *See* Doc. 16, at 9–10. "Piecemeal litigation occurs when different courts adjudicate [an] identical issue, thereby duplicating judicial effort and potentially rendering conflicting results." *Romine*, 160 F.3d at 341. In *Romine*, the Sixth Circuit determined the threat of piecemeal litigation was especially high, both in the class action context and specifically in that case, where the outcome of the federal class action depended on the resolution of the exact issue in a concurrent state class action. *Id.*

Defendants argue the cases require "adjudicating the same issue: whether Eric Hummel and other former employees of the AP Group . . . brought with them certain confidential information and trade secrets, thereby violating the restrictive covenants contained in the sale agreement and other agreements entered between the parties." (Doc. 16, at10). But, again, the claims are distinct between this case and the Delaware Chancery action. While the information employees did or did not bring with them might be an important issue, the heart of these cases is what the respective defendants did with such information. This Court cannot say the potential

9

duplication of judicial efforts in considering underlying facts tips the balance. In fact, even where duplication is an explicit risk, the Sixth Circuit has held it, alone, does not require abstention. *See S2 Yachts, Inc.*, 855 F. App'x at 279 ("Duplication is indeed possible here, but this alone does not require us to abstain from exercising jurisdiction. And, if necessary, the courts can decide res judicata questions."). This factor does not highly favor abstention.

The fourth and seventh factors favor abstention. The Delaware Chancery action was filed before this case, and Defendants assert "the parties are already actively engaged in discovery" and have participated in a conference with the Delaware Chancery court. (Doc. 16, at 11). But while the Sixth Circuit has stressed these factors, this Court has been provided no information indicating the Delaware Chancery action has progressed drastically further than this case, and it was filed just eight days prior. Thus, while this factor supports abstention, it does not do so heavily.

The fifth and eighth factors are neutral here. Under the fifth factor, the presence of "federal-law issues must always be a major consideration weighing against surrender." *See Moses*, 460 U.S. at 26. Further, "[w]hen the state law issues are routine, such as breach of contract, fraud, or conversion, the state issues do not constitute a 'rare' or exceptional circumstance where a district court should decline jurisdiction." *United Am. Healthcare Corp. v. Backs*, 997 F. Supp. 2d 741, 753 (E.D. Mich. 2014). However, considering the eighth factor, the fifth factor is less significant when concurrent jurisdiction exists. *See Moses*, 460 U.S. at 25 ("[T]he source-of-law factor has less significance . . . [when] the federal courts' jurisdiction . . . is concurrent with that of the state courts."). This action involves two federal law claims, the Defend Trade Secrets Act, 18 U.S.C. § 1836 and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, as well as "routine" state law claims. But state courts have concurrent jurisdiction over all claims in this case. As such, these factors do not favor abstention.

10

The sixth factor favors retaining jurisdiction. Plaintiff indicates the Delaware Chancery court would likely not have jurisdiction over Hummel and, as such, Plaintiff would be left without remedy for the claims against him if relying solely on the Delaware Chancery action.

Finally, Defendants discuss gamesmanship, which courts have considered in the *Colorado River* analysis. *See Romine*, 160 F.3d at 341 ("The legitimacy of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits that are the product of game[s]manship or that result in conflicting adjudications.") (quoting *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691 (7th Cir. 1985)). While true Plaintiff's counsel has filed two other actions, regarding similar underlying facts, around the same time this action was filed, the Court finds no merit to the assertion that it was a showing of gamesmanship. Both Delaware cases concern contracts with required venue clauses; filing suits in jurisdictions required by those contracts is not anything akin to gamesmanship.

Weighing the above, abstention would be inappropriate here. And this Court has substantial doubt as to whether the Delaware Chancery action "will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses*, 460 U.S. at 28. It would be "a serious abuse of discretion to grant the stay or dismissal" given such doubt. *Id.* As a result, this Court denies Defendants' Motion under this theory.

Motion to Stay Under Court's Inherent Authority

Alternatively, Defendants contend this Court should stay the case pursuant to its inherent authority. "[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) (citations omitted). A stay should only be granted where it would allow for a "quick and prompt resolution between the parties,' such that the federal court 'will have nothing further to do

11

in resolving any substantive part of the case, whether it stays or dismisses." *See Necak*, 2017 WL 6270238, at *1 (quoting *Moses*, 460 U.S. at 23–26).

As detailed above, this matter is not substantially intertwined with another case, and a stay would not promote efficiency. This Court denies Defendants' motion on this ground as well.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion to Dismiss or in the Alternative to Stay (Doc. 16) be, and the same hereby is, DENIED.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: February 28, 2025