# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **AMERICAN PLASTICS, LLC,** | ) | **Case No. 3:24-cv-00660** |
| | ) | |
| **Plaintiff,** | ) | **(Hon. James R. Knepp, II)** |
| | ) | |
| **vs.** | ) | **FINDLAY MACHINE & TOOL INC.'S** |
| | ) | **ANSWER AND AFFIRMATIVE** |
| **ERIC HUMMEL,** *et al.*, | ) | **DEFENSES TO PLAINTIFF'S** |
| | ) | **COMPLAINT AND COUNTERCLAIM** |
| **Defendants.** | ) | |

Findlay Machine & Tool, LLC f/k/a Findlay Machine & Tool, Inc. ("FMT") makes the following Answer and Affirmative Defenses to Plaintiff American Plastics LLC's ("Plaintiff") Complaint.

## RESPONSE TO "NATURE OF THE ACTION"

1. AP brings this action to remedy substantial and ongoing harm caused by Defendant Hummel's breach of contract, breach of fiduciary duty, misappropriation of trade secrets, and tortious interference with AP's contractual and business relationships. AP also brings this action to remedy ongoing damages caused by a continuing scheme by Defendants FMT and Kreate Extrusion to raid AP of certain key employees, such as Defendant Hummel, to gain access to AP's proprietary and confidential business information and trade secrets, and to obtain an unlawful competitive advantage over AP and its subsidiaries.

**ANSWER:** **FMT denies the allegations and inferences contained in Paragraph 1.**

2. AP is a leading designer and manufacturer of innovative plastic-injection molded products for household and garage storage solutions. AP and its subsidiaries distribute their products across the United States and employ approximately 1,000 individuals.

**ANSWER:** **FMT denies the allegations and inferences contained in Paragraph 2.**

3.     The plastic-injection molded products business is a highly competitive industry, and AP's design and manufacturing processes require specially formulated tooling, machinery, equipment, and molds. Information regarding AP's tooling, molds, and design and manufacturing processes constitute highly confidential and valuable trade secret information that is not disclosed publicly and not shared with AP's competitors. Indeed, AP's confidential information regarding its tooling, molds, and design and manufacturing processes is not even known to all of AP's employees and is protected against unauthorized disclosure by, *inter alia*, employee confidentiality agreements.

**ANSWER:     FMT denies the allegations and inferences contained in Paragraph 3.**

4.     Defendant Hummel, formerly AP's Director of Tooling, had extensive knowledge of and access to AP's trade secrets and confidential information, and he agreed to be bound by a written Employee Invention and Confidential Information Agreement ("Confidentiality Agreement") as part of his employment with AP and its subsidiary, Creative Plastic Concepts, LLC ("CPC"). Pursuant to the Confidentiality Agreement, Defendant Hummel agreed that (i) during his employment he will receive, develop, or otherwise acquire various kinds of trade secrets and other information which is of a secret or confidential nature (collectively referred to as "confidential information"); (ii) not to disclose or use, directly or indirectly, any confidential information of American Plastics or one of its subsidiaries, divisions, branches, or affiliates without authorization from American Plastics; and (iii) this includes, but is not limited to, inventions, products, product specifications, processes, procedures, machinery, apparatus, prices, discounts, manufacturing costs, sales and other records, customer lists, future plans, ideas, technical data, research records, development records, and practices in connection therewith. A true and correct copy of the Confidentiality Agreement is attached hereto as **Exhibit A**.

2

**ANSWER:** The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.

5. In December of 2023, Defendant Hummel tendered his resignation to AP to work for FMT and/or Kreate Extrusion. Upon information and belief, FMT and/or Kreate Extrusion, with the tortious assistance from Defendant Hummel, misappropriated AP's highly sensitive trade secrets and confidential information and have interfered and continue to interfere with AP's business and contractual relationships.

**ANSWER:** FMT admits Hummel resigned from Plaintiff effective December 29, 2023 and subsequently began employment with FMT. FMT denies all remaining allegations and inferences contained in Paragraph 5.

6. As set forth in further detail below, at all relevant times FMT and Kreate Extrusion had knowledge of (i) the identities of key AP employees with access to AP's confidential trade secret and business information, as well as (ii) the identities of AP's major customers and business contracts. Upon information and belief, FMT and Kreate Extrusion embarked on a campaign to raid AP of certain key employees to unlawfully gain access to AP's confidential business information and trade secrets, and to unlawfully interfere with AP and its subsidiaries' customer relationships.

**ANSWER:** FMT denies the allegations and inferences contained in Paragraph 6.

7. After Defendant Hummel's resignation, AP discovered that Defendant Hummel, in the six-month period prior to his departure from AP, was surreptitiously working for FMT and/or Kreate Extrusion in violation of his contractual obligations and common law duties of loyalty owed to AP. Upon information and belief, in the months before he resigned from AP, Defendant Hummel used AP's computer systems to, *inter alia*, misappropriate AP's confidential information and trade

3

secrets, conduct corporate espionage, and to engage in business on the apparent behalf of AP's competitors, to the detriment of AP.

**ANSWER: FMT denies the allegations and inferences contained in Paragraph 7.**

8. Upon information and belief, before his departure from AP, Defendant Hummel also misappropriated AP's trade secrets and confidential business information to specifically assist FMT and/or Kreate Extrusion LLC in their tortious interference with AP's ongoing business relations with one of its largest customers, The Home Depot.

**ANSWER: FMT denies the allegations and inferences contained in Paragraph 8.**

9. Defendants' conduct has caused Plaintiff ongoing harm that likely will be compounded immensely if the malicious and wrongful actions of the Defendants continue unabated.

**ANSWER: FMT denies the premise and substance of the allegations contained in Paragraph 9.**

10. For these reasons and those alleged in greater detail below, Plaintiff seeks an order enforcing the Confidentiality Agreement between Plaintiff and its former employee, Defendant Hummel, and, money damages, attorney's fees, costs of suit, and such other and further relief as the Court may deem just and proper.

**ANSWER: FMT denies the premise and substance of the allegations contained in Paragraph 10.**

## <u>RESPONSE TO "JURISDICTION"</u>

11. This Court has federal diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between citizens of Ohio and citizens of Delaware, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**ANSWER: Paragraph 11 contains legal conclusions for which no answer is required. To the extent FMT must answer Paragraph 11, FMT admits the allegations in Paragraph 11.**

4

12. This Court also has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the Defend Trade Secrets Act, 18 U.S.C. § 1836.

**ANSWER: Paragraph 12 contains legal conclusions for which no answer is required. To the extent FMT must answer Paragraph 12, FMT admits the allegations in Paragraph 12, but denies any wrongdoing as alleged by Plaintiff.**

13. This Court also has federal subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the Computer Fraud and Abuse Act, under 18 U.S.C. § 1030.

**ANSWER: Paragraph 13 contains legal conclusions for which no answer is required. To the extent FMT must answer Paragraph 13, FMT admits the allegations in Paragraph 13, but denies any wrongdoing as alleged by Plaintiff.**

## RESPONSE TO "VENUE"

14. Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendant Eric Hummel resides in this district in Ohio.

**ANSWER: Paragraph 14 contains legal conclusions for which no answer is required. To the extent FMT must answer Paragraph 14, FMT admits the allegations in Paragraph 14, but denies any wrongdoing as alleged by Plaintiff.**

15. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

**ANSWER: Paragraph 15 contains legal conclusions for which no answer is required. To the extent FMT must answer Paragraph 15, FMT admits the allegations in Paragraph 15, but denies any wrongdoing as alleged by Plaintiff.**

## RESPONSE TO "PARTIES"

16. Plaintiff, **American Plastics, LLC**, is a limited liability company formed under the laws of Delaware and based in Afton, Missouri. Plaintiff has one (1) member: Jansan Acquisition, LLC ("Jansan"), which is a limited liability company formed under the laws of Delaware and based in Ohio. Jansan has one (1) member: Plaintiff XR10 Capital, LLC ("XR10"), which is a limited

liability company formed under the laws of Delaware and based in Beverly Hills, California. XR10 has one (1) member, the Green Living Trust, which is organized under the laws of California and has two trustees who are residents of California.

**ANSWER: FMT admits Plaintiff is a limited liability company formed under the laws of Delaware and based in Afton, Missouri. FMT lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in Paragraph 16 and, therefore, denies them.**

17. AP is an operating company, and is the parent to, among others, CPC, and CPC's three subsidiaries: Shelves West, LLC, Centrex LLC and Two-Six Industries, LLC (for ease of reference, AP and its subsidiaries are sometimes referred to as the "AP Group" or the "AP Group companies").

**ANSWER: FMT lacks knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 17 and, therefore, denies them.**

18. Upon information and belief, Defendant, Eric Hummel, is an individual who resides in Van Buren, Ohio.

**ANSWER: The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

19. Upon information and belief, Findlay Machine & Tool, Inc. is a corporation that is incorporated in Ohio and has its principal place of business in Findlay, Ohio. Upon information and belief, Nickolas Reinhart founded and controls a family owned and operated asset management firm called, "Nickolas," whose portfolio companies include FMT, (a plastic injection molding business), Kreate Extrusion, as well as various companies using the "Kreate" name (together or singularly, "Kreate"). *See, generally,* https://nickolas.com/ (last visited on March 26, 2024). Upon information and belief, Mr. Reinhart controls FMT and Kreate and other affiliated companies (together the "Reinhart Companies"). The Reinhart Companies compete with the AP

Group companies in the plastics industry. Upon information and belief, the Reinhart Companies conduct business across the United States and globally.

**ANSWER:    FMT admits it is a limited liability company[1] that is incorporated in Ohio with its principal place of business in Findlay, Ohio. FMT further admits it is a full-service, plastic injection molding contract manufacturer dedicated to supplying high-quality injection molded products. FMT denies any remaining allegations and inferences contained in Paragraph 19.**

20.    Defendants, John/Jane Does Nos. 1-10, are fictitious individuals whose true identities are currently unknown to Plaintiff, and who at all times relevant hereto are individuals who are current and/or former employees of the AP Group companies who have breached and/or conspired with Defendants to breach their respective duties and obligations to the detriment of the AP Group companies.

**ANSWER:    FMT denies the premise and substance of the allegations contained in Paragraph 20.**

21.    Plaintiff reserves the right to substitute named persons in place of John/Jane Does Nos. 1-10.

**ANSWER:    FMT denies the premise and substance of the allegations contained in Paragraph 21.**

22.    Defendants, ABC Corporations Nos. 1-10, are fictitious corporations, partnerships, businesses, LLCs, LLPs, sole proprietorships, and/or other entities, whose true identities are currently unknown to Plaintiff, and which at all times relevant hereto are and/or were direct competitors of the AP Group companies that have tortiously interfered with the AP Group Companies' contracts and business relationships.

**ANSWER:    FMT denies the premise and substance of the allegations contained in Paragraph 22.**

---

[1] Effective June 30, 2021, FMT converted from a domestic for-profit corporation to a domestic for-profit limited liability company.

23.     Plaintiff reserves the right to substitute corporations, companies, partnerships, businesses, and/or other entities in place of ABC Corporations Nos. 1-10.

**ANSWER:**     **FMT denies the premise and substance of the allegations contained in Paragraph 23.**

## RESPONSE TO "FACTUAL BACKGROUND"

A.     AP's Protected Trade Secret, Confidential, and Proprietary Information.

24.     AP Group Companies are engaged in the business of manufacturing and selling high-quality plastic-injection molded home and garage solutions, and its customers include some of the world's largest big box retailers.

**ANSWER:**     **FMT denies the allegations contained in Paragraph 24.**

25.     AP Group companies are operationally integrated, and their employees work collaboratively across organizational lines in the service of major customers.

**ANSWER:**     **FMT denies the allegations contained in Paragraph 25.**

26.     The market for plastic-injection molded home and garage storage solutions is nationwide and is highly and uniquely competitive. AP's design and manufacturing processes require specially formulated tooling and molds. AP's product designs and specifications, are not shared with AP's competitors and create a competitive advantage in the market for AP.

**ANSWER:**     **FMT denies the allegations contained in Paragraph 26.**

27.     Individuals employed by AP who are involved in the tooling and manufacturing of AP's custom molded products have access to AP's confidential business information, know-how, and trade secrets, including, but not limited to, (1) the types of unique tools developed, customized, and used by AP in its manufacturing processes; (2) the capital and time required for manufacturing specific products; (3) the cycle times for AP's machines and associated labor costs; and (4) the manufacturing processes used by and unique to AP.

8

**ANSWER:    FMT denies the allegations contained in Paragraph 27.**

28.    Individuals employed by AP in senior positions have access to AP's confidential business operations, including, but not limited to (1) customer pricing information; (2) employee pay and benefits; (3) vendor and shipping costs; (4) finance and product costs; (5) capacity studies; (6) knowledge of AP's six manufacturing plants; (7) existing business relationships; and (8) new business opportunities.

**ANSWER:    FMT denies the allegations contained in Paragraph 28.**

29.    This confidential information is (1) not generally known outside of AP's business; (2) is not even known to all of AP's employees; (3) has value to AP in the competitive plastics industry; (4) was developed and protected by AP at great effort and expense; and (5) would require significant time and expense for a competitor to develop and duplicate.

**ANSWER:    FMT denies the allegations contained in Paragraph 29.**

30.    To protect its confidential information, AP, among other things, requires its employees to review and execute the Confidentiality Agreement through which they warrant they will not, directly or indirectly, without authorization from AP:

> Disclose any confidential information of [AP] that [the employee] obtains during the course of employment, including, but not limited to, inventions, products, product specifications, processes, procedures, machinery, apparatus, prices, discounts, manufacturing costs, sales and other records, customer lists, future plans, ideas, technical data, research records, development records, and practices in connection therewith.

A true and correct copy of the Confidentiality Agreement is attached hereto as **Exhibit A**.

**ANSWER:    The Confidentiality Agreement is a document that speaks for itself, and FMT denies any mischaracterization of the same. FMT denies all remaining allegations and inferences contained in Paragraph 30.**

7836738.1

31.     AP takes reasonable precautions to protect its trade secrets and confidential information because, *inter alia*, competitors with unauthorized access such information could use it to their unfair competitive benefit and advantage, causing immediate and irreparable harm to AP.

**ANSWER:     FMT denies the allegations contained in Paragraph 31.**

B.     The Reinhart Companies are Direct Competitors of AP, and Deliberately Recruited Key AP Employees with Access to AP's Protected Trade Secret Information.

32.     The Reinhart Companies are founded and owned by Nickolas Reinhart who was a partial owner of Jansan and CPC and sold his interest to the AP Group companies. As part of these sale transactions, Reinhart expressly agreed not to compete with AP Group Companies, and further agreed not to solicit customers and employees of AP Group companies. Reinhart's agreement to these restrictive covenants was a key component to the sale transactions, as Reinhart had extensive involvement in and knowledge of the business operations of Jansan's subsidiaries, AP and CPC.

**ANSWER:     Paragraph 32 contains allegations directed toward a nonparty (Mr. Reinhart) concerning disputed allegations forming the basis of multiple lawsuits filed by Plaintiff's corporate parents, US Merchants Financial Group, LLC n/k/a XR10 Capital, LLC ("US Merchants") and Jansan Acquisition, LLC ("Jansan"). Accordingly, FMT lacks sufficient information to form a belief as to the truth of the allegations contained in Paragraph 32, and FMT denies them.**

33.     The Reinhart Companies are in the same business as AP and are involved in the tooling and manufacturing of custom molded products. Accordingly, the Reinhart Companies directly compete with AP for the same customers and business.

**ANSWER:     FMT denies the allegations contained in Paragraph 33.**

34.     Upon information and belief, subsequent to the aforementioned transactions, Mr. Reinhart and/or individuals working on behalf of the Reinhart Companies contacted certain key employees of AP Group companies to recruit, solicit, encourage, and induce them to join the Reinhart Companies. Upon information and belief, the Reinhart Companies embarked on a

10

campaign to raid AP's employees to gain access to AP's confidential trade secret and business information and interfere with AP's business relations.

**ANSWER: FMT denies the allegations contained in Paragraph 34; any employees who have sought out employment with FMT have done so out of their own volition and in the absence of any solicitation by Mr. Reinhart. This Lawsuit, as well as the other lawsuits filed by US Merchants and Jansan, are part of an unlawful coordinated litigation campaign by US Merchants, Jansan, and Plaintiff to prevent employee mobility and stifle fair competition.**

35. Upon information and belief, to date, seventeen (17) AP employees have resigned from AP to join the Reinhart Companies in several, successive waves, including Defendant Hummel. Additionally, as set forth in further detail below, AP's largest customer, The Home Depot, abruptly reduced its orders from AP following the aforementioned defection of AP's employees to the Reinhart Companies.

**ANSWER: FMT admits it offered employment to employees who sought out employment opportunities with FMT. FMT denies all remaining allegations and inferences contained in Paragraph 35; as Plaintiff is well aware, The Home Depot cancelled its contract with Plaintiff and its affiliates because Plaintiff and its affiliates breached their agreement with The Home Depot, so Plaintiff is responsible for any harm suffered as a result of the end of its business relationship with The Home Depot.**

C. Defendant Hummel's Breach of the Confidentiality Agreement, Implied Covenant of Good Faith and Fair Dealing, and Fiduciary Duty of Loyalty to AP.

36. Defendant Hummel started working for AP on or around April 17, 2018.

**ANSWER: The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

37. Defendant Hummel reviewed and executed the Employment Offer Letter on April 17, 2018. As a condition of his continued employment with AP, Defendant Hummel executed the Confidentiality Agreement on October 21, 2021.

**ANSWER: The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response**

11

is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

38.     The Employment Offer Letter and Confidentiality Agreement entered between AP and Defendant Hummel are valid, binding, and enforceable contracts.

**ANSWER:    The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

39.     The Confidentiality Agreement was and is intended to protect trade secrets and confidential and proprietary information belonging to AP that employees like Defendant Hummel may have access to during the course of their employment with AP.

**ANSWER:    The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

40.     Defendant Hummel was the Director of Tooling at AP. In this senior role, he oversaw all machines and molds used by AP, and was one of the top 25 highest paid employees at AP Group Companies out of approximately 1,000 employees.

**ANSWER:    The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

41.     Because of the senior position Defendant Hummel held at AP, he had access to and possessed significant knowledge and information concerning AP's confidential business operations and trade secrets.

**ANSWER:    The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

7836738.1

42.     Upon information and belief, this knowledge and information includes, but is not limited to, customer pricing and contact information; employee pay and benefits; the manufacturing processes used by and unique to AP; vendor and shipping costs; finance and product cost; capacity studies; which of AP's six plants manufacture which products; the types of tools developed, customized and used by AP in its manufacturing processes; the capital and time required for manufacturing specific products; the cycle times for AP's machines and associated labor costs; AP's existing client and vendor relationships; and AP's new business opportunities.

**ANSWER:   The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

43.     Upon information and belief, Defendant Hummel breached his implied covenant of good faith and fair dealing and his fiduciary duty of loyalty to AP by surreptitiously and contemporaneously working for and/or on behalf of AP's competitor, the Reinhart Companies, while still employed as AP's Director of Tooling.

**ANSWER:    FMT denies the allegations contained in Paragraph 43.**

44.     Upon information and belief, Defendant Hummel breached his Confidentiality Agreement with AP by purposefully disclosing trade secrets and confidential information to the Reinhart Companies without AP's authorization and to AP's detriment while he was still employed as AP's Director of Tooling.

**ANSWER:    FMT denies the allegations contained in Paragraph 44.**

45.     Defendant Hummel's effective date of resignation from AP was December 29, 2023. However, Defendant Hummel had a Kreate email address – eric@kreate.com – and, upon information and belief, was doing work on behalf of the Reinhart Companies at least six months before he resigned from AP.

**ANSWER:   FMT denies the allegations contained in Paragraph 45.**

D.   Defendants Conspired to and Did Misappropriate AP's Trade Secrets and Tortiously Interfered with AP's Contracts and Business Relations.

46.   Upon information and belief, Defendant Hummel was solicited by Nickolas Reinhart, Kreate and/or FMT, or individuals acting on their behalf, to work for AP's competitor, the Reinhart Companies.

**ANSWER:   FMT denies the allegations contained in Paragraph 46.**

47.   Upon information and belief, at all relevant times the Reinhart Companies had knowledge that Defendant Hummel continued to be employed by AP, and further had knowledge that, by virtue of his employment with AP, Defendant Hummel had access to AP's valuable confidential information and trade secrets, the unauthorized disclosure of which would cause substantial economic and other harm to AP.

**ANSWER:   FMT denies the allegations contained in Paragraph 47.**

48.   Upon information and belief, Defendant Hummel and the Reinhart Companies, and other unnamed defendants or individuals whose identities are currently unknown, conspired to tortiously interfere with AP's contracts and business relationships, and to misappropriate AP's trade secrets and confidential business operations.

**ANSWER:   FMT denies the premise and substance of the allegations contained in Paragraph 48.**

49.   As noted above, while still working as AP's Director of Tooling, Defendant Hummel surreptitiously worked on behalf of AP's direct competitor, Kreate and/or the Reinhart Companies, and was even given an "@kreate.com" email address at least six months before resigning from AP.

**ANSWER:   FMT denies the allegations contained in Paragraph 49.**

7836738.1

50.     In May 2023, Defendant Hummel, through his "eric@kreate.com" email address, emailed UBE Machinery, one of the largest injection molding press manufacturers and a multi-million dollar equipment and maintenance supplier to AP. UBE Machinery replied to Defendant Hummel by emailing his AP email address, EHummel@amplastics.com. Defendant Hummel then forwarded this email chain to his personal email address, "hummel6817@gmail.com," removing any doubt of the connection between Defendant Hummel and the "eric@kreate.com" email address belonging to AP's direct competitor.

**ANSWER:     The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

51.     In May 2023, Defendant Hummel on AP's computer servers, using his email, EHummel@amplastics.com, emailed John Forgash, an employee at Premier Equipment Sales, receiving a quotation for a Conair PM Loader on behalf of Kreate Extrusion company. Premier Equipment Sales is also a substantial tooling and maintenance supplier to AP. Defendant Hummel, using his email, EHummel@amplastics.com, then forwarded the quotation to an employee at the competitor, the Reinhart Companies, at his email at dave@nickolas.com.

**ANSWER:     FMT denies the allegations contained in Paragraph 51.**

52.     Upon information and belief, also around this time in May 2023, Nickolas Reinhart "gifted" a 1.2-million-dollar home in Ohio to Defendant Hummel, while Defendant Hummel was employed as Director of Tooling at AP. Upon information and belief, the home was bought for Defendant Hummel's use, and is located less than nine (9) miles from Kreate's address at 411 S Main St Findlay, OH 45840.

**ANSWER:     The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response**

**is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

53. On June 12, 2023, Defendant Hummel received an email at his EHummel@amplastics.com email, from Frank Kern at Delco LLC, a contract manufacturing, mold building and manufacturing, and sanitary valve company. Delco LLC is also a substantial tooling and mold manufacturing supplier to AP. The email was titled "data review," and Delco LLC sent Defendant Hummel product designs and technical data, which Defendant Hummel then forwarded to his eric@kreate.com email.

**ANSWER:   The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

54. The data in this email included confidential AP designs and technical information. AP took reasonable measures to keep this information confidential by, among other things, specifically requiring AP employees like Defendant Hummel to sign the Confidentiality Agreement. By entering into the Confidentiality Agreement, Hummel explicitly agreed that he would "not disclose or use, directly or indirectly, confidential information of [AP] [he] will obtain during the course of [his] employment, including ... products, product specifications, processes, procedures, machinery, apparatus, prices discounts, manufacturing costs, ... technical data,, ... and practices in connection therewith." AP's confidential information derives independent economic value, as it is not publicly available or generally known in the trade, as evidenced by Defendant Hummel forwarding this email from his AP company email address to his eric@kreate.com email address.

**ANSWER:   The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

7836738.1

55. On June 29, 2023, Defendant Hummel received an email at his EHummel@amplastics.com email, from Gage Wright a Project Manager of Sales at Delco LLC, concerning "Kreate Spider Inserts" and Wright confirmed with Defendant Hummel that the inserts are for Kreate. Defendant Hummel in the same hour forwarded this email to his eric@kreate.com email.

**ANSWER: The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

56. On July 10, 2023, Defendant Hummel received an email at his EHummel@amplastics.com email, from Steve Rutkowski, an Engineering Supervisor at Delco LLC, concerning quotes for various "pieces." The email also included product designs and technical data. Immediately, Defendant Hummel forwarded that email to his eric@kreate.com email.

**ANSWER: The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

57. This email included quotes that are financial and business information of AP, as well as technical and design data that is also confidential to AP. Like the other information described herein, AP took reasonable measures to keep this information confidential. Also, like the other confidential information and trade secrets that are the subject of this action, this confidential information derives independent economic value, and is not publicly available or generally known in the trade, as evidenced by Defendant Hummel forwarding this email from his EHummel@amplastics.com email to his eric@kreate.com email.

**ANSWER: The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response**

**is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

58.     On September 18, 2023, Defendant Hummel using his eric@kreate.com emailed Renato Valente, who works for the Technical Commercial Department of Moldo Plastico, and Ben Sayalith, another former employee that had previously resigned from AP to work for the Reinhart Companies, titled, "HDX program." Defendant Hummel asked Mr. Valente if he could "confirm he received the emails from Ben with updated part data along with our notes on the tool drawings. Also, for future drawings please mark or note what changes were made when sending revised data." He signed off with his "Kreate Extrusion, LLC" signature block – despite his still working for AP and its subsidiary, CPC.

**ANSWER:   The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

59.     This email references the HDX program and emails concerning notes on the tool drawings. HDX is The Home Depot's trademark, and includes an entire product line of plastic storage, organization, shelving, container, cabinet, and other products that are sold in The Home Depot stores and online across the country and internationally. The Home Depot is one of AP's largest customers, and the majority of work performed by AP for The Home Depot relates to the HDX product line.

**ANSWER:   The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

60.     AP's client relationships and the types of tools developed, customized and used by AP in its manufacturing processes are confidential to AP. AP has taken reasonable measures to keep information such as this confidential by, among other things, requiring AP employees like

Defendant Hummel to enter into the Confidentiality Agreement. This information derives independent economic value as it is not publicly available or generally known in the trade, and is related to confidential tool drawings for one of AP's largest customers.

**ANSWER:     FMT denies the allegations contained in Paragraph 60.**

61.     On September 25, 2023, Cavalier Tools, one of AP's most substantial and key suppliers of molds used in AP and its subsidiaries' manufacturing processes, sent an email to Defendant Hummel and Ben Sayalith, about certain confidential product specifications and designs for a product manufactured by AP for The Home Depot. Notably, the vendor sent this email to Defendant Hummel and Sayalith at their "@kreate.com" email addresses. In these emails with AP's vendor, Defendant Hummel, using his "eric@kreate.com" email address, also emailed Steve Hinderer and Shawn Guzaek, employees at Plastic Engineering & Technical Services, Inc., a major tool vendor to AP, asking when they "could meet to review the HDX clear program." Upon information and belief, "the HDX clear program" refers to a line of clear plastic storage container products branded under The Home Depot's HDX product line that AP was manufacturing for The Home Depot.

**ANSWER:     The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

62.     As above-mentioned, AP's client relationships and the types of tools developed, customized and used by AP in its manufacturing processes are confidential to AP, and AP has taken reasonable measures to keep information such as this confidential. This information derives independent economic value as it is not publicly available or generally known in the trade, and involves specifications for products unique to one of AP's largest customers, The Home Depot.

**ANSWER:     FMT denies the allegations contained in Paragraph 62.**

19

63.     As previously noted, Defendant Hummel's effective date of resignation from AP was December 29, 2023, well after Defendant Hummel began take actions on behalf of the Reinhart Companies.

**ANSWER:     FMT denies the allegations contained in Paragraph 63.**

64.     The day before his resignation on December 28, 2023, Defendant Hummel using his EHummel@amplastics.com email, emailed Dan Cerimele, the Senior Sales Manager of UBE Machinery, asking for the "inside door dimensions" for a safety door modification, and Defendant Hummel forwarded the PDF's that Mr. Cerimele sent him to his hummel6817@gmail.com email.

**ANSWER:     The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

65.     Like the other confidential information and trade secrets described herein, the information in this email included product design specifications that are confidential to AP, and that AP has taken reasonable measures to protect. This data derives independent economic value as it is not publicly available or generally known in the trade, as evidenced by Defendant Hummel forwarding this email from his EHummel@amplastics.com email to his personal email (hummel6817@gmail.com) the day before he resigned.

**ANSWER:     FMT denies the allegations contained in Paragraph 65.**

66.     Notably, in a few of his emails with the various above-mentioned vendors, Defendant Hummel used his "eric@kreate.com" email address and a "Kreate Extrusion, LLC" signature block, demonstrating that Defendant Hummel was (i) working with key AP vendors; (ii) while employed by AP; (iii) but on behalf of the Reinhart Companies, **not** AP.

**ANSWER:     FMT denies the allegations contained in Paragraph 66.**

67.     Before his resignation, Defendant Hummel never represented to AP that he was working for and/or on behalf of AP's direct competitor, and AP had no knowledge that Defendant Hummel was apparently employed by the Reinhart Companies or any other entity.

**ANSWER:     FMT denies the allegations contained in Paragraph 67.**

68.     As Director of Tooling at AP, Defendant Hummel had access to AP's trade secrets, including AP's customer lists, products, product specifications, processes, technical data, types of tools developed, customized and used by AP in its manufacturing processes, and financial and business information belonging to AP.

**ANSWER:     The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

69.     Among other things, Defendant Hummel administered the purchase and design of specialized tools needed to mold AP's products, including products manufactured by AP for The Home Depot that are sold throughout United States and internationally.

**ANSWER:     The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

70.     Upon information and belief, Defendant Hummel abused his senior role as Director of Tooling at AP to provide the Reinhart Companies, a direct competitor of AP, with unauthorized access to and use of AP's trade secrets and confidential information by improper means.

**ANSWER:     FMT denies the allegations contained in Paragraph 70.**

71.     Upon information and belief, Defendant Hummel misappropriated AP's trade secrets and confidential information to gain new business for the Reinhart Companies.

**ANSWER:     FMT denies the allegations contained in Paragraph 71.**

7836738.1

72.     To meet the substantial needs of a major customer like The Home Depot, an injection molded plastic products manufacturer like the Reinhart Companies requires the expertise of capable and well-trained employees, as well as product specifications, tooling and molding requirements, and other support, several months in advance of it being expected to fulfill an order for products.

**ANSWER:     FMT denies the allegations contained in Paragraph 72.**

73.     By March of 2024, the Home Depot reduced the amount of business it regularly conducts with AP. Upon information and belief, the orders for products that The Home Depot had previously contracted with AP to fulfill are now being fulfilled by the Reinhart Companies, using AP's misappropriated trade secrets, confidential information, and former employees.

**ANSWER:     FMT denies the allegations contained in Paragraph 73; as Plaintiff is well aware, The Home Depot cancelled its contract with Plaintiff and its affiliates because Plaintiff and its affiliates breached their agreement with The Home Depot, so Plaintiff is responsible for any harm suffered as a result of the end of its business relationship with The Home Depot.**

74.     The Home Depot, one of AP's largest customers, would not have reduced the amount of business conducted with AP, if not for the Defendants' malicious and improper conduct and misappropriation of AP's trade secrets and confidential business information.

**ANSWER:     FMT denies the allegations contained in Paragraph 74; as Plaintiff is well aware, The Home Depot cancelled its contract with Plaintiff and its affiliates because Plaintiff and its affiliates breached their agreement with The Home Depot, so Plaintiff is responsible for any harm suffered as a result of the end of its business relationship with The Home Depot.**

75.     The Defendants' malicious and improper conduct has hampered AP's production capacity and irreparably damaged the good will of its customers and employees.

**ANSWER:     FMT denies the premise and substance of the allegations contained in Paragraph 75.**

7836738.1

## RESPONSE TO "COUNT ONE - Misappropriation of
## Trade Secrets under 18 U.S.C. § 1836 (Against all Defendants)"

76.     AP realleges and incorporates each and every allegation contained in the preceding paragraphs, as if fully rewritten herein.

**ANSWER:     FMT incorporates its answers to the above Paragraphs as though fully set forth herein.**

77.     AP owned, possessed, and developed nonpublic, confidential, proprietary information that constitutes a "trade secret or secrets" related to products and services used in interstate commerce.

**ANSWER:     Paragraph 77 contains legal conclusions for which no response is required. To the extent FMT must answer Paragraph 77, FMT denies the allegations contained therein.**

78.     Upon information and belief, Defendants have used AP's trade secrets, acquired through Defendant Hummel's confidential relationship with AP, without AP's authorization.

**ANSWER:     FMT denies the allegations contained in Paragraph 78.**

79.     Defendants have failed to return and are believed to still be in possession of AP's confidential, proprietary and trade secret information.

**ANSWER:     FMT denies the allegations contained in Paragraph 79**

80.     Defendants will continue to misappropriate, disclose, and use AP's trade secret information for Defendants collective benefit, as well as the benefit of additional unknown third parties, all in violation of the Confidentiality Agreement, as well as in violation of the Defend Trade Secrets Act under 18 U.S.C. § 1836.

**ANSWER:     FMT denies the premise and substance of the allegations contained in Paragraph 80.**

81.     As a direct and proximate result of Defendants' misappropriations, AP has suffered, and will continue to suffer, substantial, material and continuing harm and damages, in an amount to be proved at trial.

**ANSWER:     FMT denies the allegations contained in Paragraph 81.**

### RESPONSE "TO COUNT TWO - Misappropriation of Trade Secrets under Ohio Rev. Code. § 1333.61(D) (Against all Defendants)"

82.     AP realleges and incorporates each and every allegation contained in the preceding paragraphs, as if fully rewritten herein.

**ANSWER:     FMT incorporates its answers to the above Paragraphs as though fully set forth herein.**

83.     AP owned, possessed, and developed nonpublic, confidential, proprietary information that constitutes a "trade secret or secrets" related to products and services used in interstate commerce.

**ANSWER:     Paragraph 83 contains legal conclusions for which no response is required. To the extent FMT must answer Paragraph 83, FMT denies the allegations contained therein.**

84.     Upon information and belief, Defendants have used AP's trade secrets, acquired through Defendant Hummel's confidential relationship with AP, without AP's authorization.

**ANSWER:     FMT denies the allegations contained in Paragraph 84.**

85.     Defendants have failed to return and are believed to still be in possession of AP's confidential, proprietary and trade secret information.

**ANSWER:     FMT denies the allegations contained in Paragraph 85.**

86.     Defendants will continue to misappropriate, disclose, and use AP's trade secret information for Defendants collective benefit, as well as the benefit of additional unknown third parties, all in violation of the Confidentiality Agreement, as well as in violation of the Uniform Trade Secrets Act under Ohio Rev. Code. § 1333.61(D).

24

**ANSWER: FMT denies the premise and substance of the allegations contained in Paragraph 86.**

87.     As a direct and proximate result of Defendants' misappropriations, AP has suffered, and will continue to suffer, substantial, material and continuing harm and damages, in an amount to be proved at trial.

**ANSWER: FMT denies the allegations contained in Paragraph 87.**

**RESPONSE TO "COUNT THREE - Breach of Contract (Against Defendant Hummel)"**

88.     AP realleges and incorporates each and every allegation contained in the preceding paragraphs, as if fully rewritten herein.

**ANSWER: FMT incorporates its answers to the above Paragraphs as though fully set forth herein.**

89.     The executed Employment Offer Letter, and Employee Invention and Confidential Information Agreement entered between Defendant Hummel and American Plastics are valid, binding, and enforceable contracts.

**ANSWER: The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

90.     Defendant Hummel received good and valuable consideration from AP in exchange for Defendant Hummel's agreement to the terms and conditions of the Confidentiality Agreement including, Defendant Hummel's continued employment, compensation, bonuses, and benefits.

**ANSWER: The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

91.     At all relevant times, AP performed all obligations required of it under the Employment Offer Letter and Confidentiality Agreement, and at no time was Defendant Hummel's performance excused.

25

**ANSWER: The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

92. Defendant Hummel's above-described conduct constitutes, and will continue to constitute, material breaches of the contracts entered between Defendant Hummel and AP.

**ANSWER: The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

93. As a direct and proximate result of Defendant Hummel's material breaches of contract, AP has suffered, and will continue to suffer, substantial, material, and continuing harm and damages, in an amount to be proven at trial.

**ANSWER: The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

### RESPONSE TO "COUNT FOUR - Breach of the Implied Covenant of Good Faith and Fair Dealing (Against Defendant Hummel)"

94. AP realleges and incorporates each and every allegation contained in the preceding paragraphs, as if fully rewritten herein.

**ANSWER: FMT incorporates its answers to the above Paragraphs as though fully set forth herein.**

95. Defendant Hummel has materially breached the implied covenant of good faith and fair dealing which is implied by law in the Confidentiality Agreement by, among other things, denying AP its reasonable expectations in said contracts.

**ANSWER: The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

96.     As a direct and proximate result of Defendant Hummel's material beaches of the implied covenant of good faith and fair dealing, AP has suffered, and will continue to suffer, substantial, material and continuing harm and damages, in an amount to be proved at trial.

**ANSWER:    The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

### RESPONSE TO "COUNT FIVE - Breach of Fiduciary Duty (Against Defendant Hummel)"

97.     AP realleges and incorporates each and every allegation contained in the preceding paragraphs, as if fully rewritten herein.

**ANSWER:    FMT incorporates its answers to the above Paragraphs as though fully set forth herein.**

98.     By virtue of Defendant Hummel's status and position at AP, Defendant Hummel, a critical "high-powered" employee, was entrusted with access to confidential and proprietary information of American Plastics, and accordingly owed a duty of loyalty to AP.

**ANSWER:    The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

99.     Defendant Hummel, upon information and belief, intentionally breached his duty of loyalty to AP by, among other things, engaging in conduct and acts detrimental to AP to compete unfairly with AP, as herein above set forth.

**ANSWER:    The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

100.     Defendant Hummel is in a position to divulge, and/or utilize, for his own pecuniary benefit, as well as for the benefit of his new employer the Reinhart Companies, and other

competitor(s), confidential and proprietary business and trade secret information belonging to AP, known by Defendant Hummel because of Defendant Hummel's employment with AP.

**ANSWER:   The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

101.    As a direct and proximate result of Defendant Hummel's breach of fiduciary duty as aforesaid, AP has suffered, and will continue to suffer, substantial, material, and continuing harm and damages, in an amount to be proven at trial.

**ANSWER:   The allegations of this Paragraph are not directed to FMT, so no response is required, and on that basis, FMT denies them. To the extent a further response is required to this Paragraph, FMT refers Plaintiff to Hummel's response to this Paragraph in his Answer.**

### <u>RESPONSE TO "COUNT SIX - Civil Conspiracy (Against all Defendants)"</u>

102.    AP realleges and incorporates each and every allegation contained in the preceding paragraphs, as if fully rewritten herein.

**ANSWER:   FMT incorporates its answers to the above Paragraphs as though fully set forth herein.**

103.    FMT and/or Kreate Extrusion, with actual knowledge of Defendant Hummel's duties to and relationship with AP, including, but not limited to, his Confidentiality Agreement, actively, knowingly and maliciously conspired with Defendant Hummel to misappropriate AP's trade secrets and obtain unauthorized access to AP's confidential information for the purpose of tortiously interfering with AP's contractual and business relationships and acquire a competitive economic advantage over AP.

**ANSWER:   FMT denies the allegations contained in Paragraph 103.**

7836738.1

104.     As a direct and proximate result of Defendants' conduct conspiring with Defendant Hummel to breach his duties as aforesaid, AP has suffered, and will continue to suffer, substantial, material and continuing harm and damages, in an amount to be proven at trial.

**ANSWER:     FMT denies the allegations contained in Paragraph 104.**

### RESPONSE TO "COUNT SEVEN - Tortious Interference with Contract (Against FMT and Kreate Extrusion)"

105.     AP realleges and incorporates each and every allegation contained in the preceding paragraphs, as if fully rewritten herein.

**ANSWER:     FMT incorporates its answers to the above Paragraphs as though fully set forth herein.**

106.     Defendants' conduct as aforesaid constitutes and will continue to constitute, knowing, willful and malicious interference with AP's Confidentiality Agreement with Defendant Hummel.

**ANSWER:     FMT denies the allegations contained in Paragraph 106.**

107.     Defendants' conduct as aforesaid was and is undertaken through improper means and without justification.

**ANSWER:     FMT denies the allegations contained in Paragraph 107.**

108.     As a direct and proximate result of Defendants' tortious interference as aforesaid, AP has suffered, and will continue to suffer, substantial, material and continuing harm and damages, in an amount to be proven at trial.

**ANSWER:     FMT denies the allegations contained in Paragraph 108.**

### RESPONSE TO "COUNT EIGHT – Tortious Interference with Business Relations (Against all Defendants)"

109.     AP realleges and incorporates each and every allegation contained in the preceding paragraphs, as if fully rewritten herein.

**ANSWER:     FMT incorporates its answers to the above Paragraphs as though fully set forth herein.**

110.    Upon information and belief, Defendants were aware and are still currently aware of a business relationship between AP and Home Depot.

**ANSWER:     FMT denies the allegations contained in Paragraph 110.**

111.    Defendants' conduct as aforesaid constitutes and will continue to constitute, knowing, willful and malicious interference with AP's business relationship with Home Depot, one of AP's largest customers.

**ANSWER:     FMT denies the allegations contained in Paragraph 111.**

112.    Defendants' conduct as aforesaid was and is undertaken through improper means and without justification.

**ANSWER:     FMT denies the allegations contained in Paragraph 112.**

113.    As a direct and proximate result of Defendants' tortious interference as aforesaid, AP has suffered, and will continue to suffer, substantial, material and continuing harm and damages, in an amount to be proven at trial.

**ANSWER:     FMT denies the allegations contained in Paragraph 113.**

### RESPONSE TO "COUNT NINE - Computer Fraud and <u>Abuse under 18 U.S.C. § 1030 (Against all Defendants)"</u>

114.    American Plastics realleges and incorporates each and every allegation contained in the preceding paragraphs, as if fully rewritten herein.

**ANSWER:     FMT incorporates its answers to the above Paragraphs as though fully set forth herein.**

115.    Upon information and belief, Defendant Hummel purposefully and knowingly accessed AP's computers, computer systems, and computer networks, and downloaded,

30

transmitted and/or deleted AP's files and confidential and proprietary information without authorization, and/or in a manner that exceeded his authorization.

**ANSWER:** **FMT denies the allegations contained in Paragraph 115.**

116. Defendant's conduct constitutes a violation of the Computer Fraud and Abuse Act under 18 U.S.C. § 1030.

**ANSWER:** **FMT denies the allegations contained in Paragraph 116.**

117. Upon information and belief, Defendant Hummel took these actions on behalf and at the direction of the Reinhart Companies, who conspired with Defendant Hummel for the purpose of causing AP harm and to obtain a competitive advantage over AP.

**ANSWER:** **FMT denies the allegations contained in Paragraph 117.**

118. As a result of Defendants' violations of the Computer Fraud and Abuse Act, AP has suffered and will continue to suffer damages.

**ANSWER:** **FMT denies the allegations contained in Paragraph 118.**

**RESPONSE TO "COUNT TEN - Unjust Enrichment (Against all Defendants)"**

119. AP realleges and incorporates each and every allegation contained in the preceding paragraphs, as if fully rewritten herein.

**ANSWER:** **FMT incorporates its answers to the above Paragraphs as though fully set forth herein.**

120. Defendants have received a financial benefit because of their misappropriation and misuse of AP's trade secrets and confidential and proprietary business information.

**ANSWER:** **FMT denies the allegations contained in Paragraph 120.**

121. Permitting Defendants to retain any financial gain generated because of the misappropriation and misuse of AP's trade secrets and confidential and proprietary business information would be unjust.

31

**ANSWER:** **FMT denies the allegations contained in Paragraph 121**

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A.          On Count One, awarding damages in favor of Plaintiff, in an amount to be determined at trial, for (i) the actual loss caused by the misappropriation of the trade secret; and (ii) damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss.

B.          On Count Two, awarding damages in favor of Plaintiff, in an amount to be determined at trial, for (i) the actual loss caused by the misappropriation of the trade secret; and (ii) damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss.

C.          On Count Three, awarding damages in favor Plaintiff, in an amount to be determined at trial.

D.          On Count Four, awarding damages in favor Plaintiff, in an amount to be determined at trial.

E.          On Count Five, awarding damages in favor Plaintiff, in an amount to be determined at trial, including a partial disgorgement of Defendant Hummel's compensation.

F.          On Count Six, awarding damages in favor Plaintiff, in an amount to be determined at trial.

G.          On Count Seven, awarding damages in favor Plaintiff, in an amount to be determined at trial.

H.          On Count Eight, awarding damages in favor Plaintiff, in an amount to be determined at trial.

7836738.1

I.      On Count Nine, awarding damages in favor Plaintiff, in an amount to be determined at trial.

J.      On Count Ten, awarding damages in favor Plaintiff, in an amount to be determined at trial.

K.      Enter a judgment in favor of Plaintiff, and against Defendants for (i) an award of actual damages; (ii) an award of exemplary damages; (iii) court costs and attorneys' fees; and (iv) pre-judgment and post-judgment interest.

L.      Order equitable and injunctive relief, and such other and further relief, as this Court deems just and proper.

**ANSWER: FMT denies Plaintiff's Request for Relief, including all subparts therein, and denies Plaintiff is entitled to any relief sought herein. FMT further requests this Court enter a judgment in its favor and against Plaintiff, award it costs and fees incurred herein, and order such other and further relief as this Court deems just and proper under the circumstances.**

## JURY TRIAL DEMAND

FMT request a trial by jury on all issues triable herein.

## AFFIRMATIVE AND ADDITIONAL DEFENSES[2]

1.      Plaintiff's Complaint, and each claim for relief asserted therein, fails to state a claim upon which relief can be granted.

2.      Plaintiff's claims are barred, in whole or in part, on the grounds that the purported trade secret information was generally known or readily ascertainable by proper means at the time of the alleged misappropriation.

---

[2] By pleading these additional defenses to Plaintiff's claims, FMT does not accept the burden of providing any such defenses except for those defenses for which it bears that burden under applicable law and rules of civil procedure. *See* Fed. R. Civ. P. 8(c).

3. Plaintiff's claims are barred, in whole or in part, on the grounds that Plaintiff failed to take reasonable measures to protect its alleged trade secrets, including failing to define and classify the trade secrets, failing to uniformly implement restrictive covenants amongst all individuals and entities with access to such information, failing to mark hard copy and electronic documents and files with stamps, watermarks, and footers indicating they contain trade secrets, and failing to take other minimum safeguards to protect such information as a "secret," and are therefore unable to establish the existence of any information which qualifies as a trade secret.

4. Plaintiff has unclean hands, including but not limited to because it is attempting to illegally restrict ordinary and fair competition. Plaintiff's attempt to illegally restrict ordinary and fair competition is a violation of state and federal law, and thus, Plaintiff should not be entitled to seek recovery.

5. Plaintiff's claims for relief are barred in whole or in part by the doctrines of consent, release, waiver, license, acquiescence, laches, ratification, estoppel, and/or unclean hands.

6. Plaintiff's claims for relief are barred in whole or in part because at all relevant times FMT acted in good faith and with due care.

7. Plaintiff's claims for relief are barred because Plaintiff has suffered no actual damages or harm.

8. Plaintiff's claims for relief are barred because its alleged damages, if any, were not actually or proximately caused by FMT.

9. Plaintiff's claims for relief are barred by its failure to mitigate alleged damages.

10. Plaintiff is barred from any recovery because its acts are in violation of public policy.

7836738.1

11.     Plaintiff's request for injunctive relief is barred because there is no reasonable probability of any injury caused by FMT, and Plaintiff has an adequate action at law if its allegations are proven—which FMT denies.

12.     Plaintiff's request for injunctive relief is barred because there is no substantial likelihood that it will prevail on the merits of its claims.

13.     Plaintiff's request for injunctive relief is barred because Plaintiff will not suffer irreparable injury in the absence of injunctive relief.

14.     Plaintiff's request for injunctive relief is barred because any threatened injury Plaintiff alleges it will suffer is outweighed by whatever damages injunctive relief may cause FMT, specifically including prohibiting FMT from ongoing business, which would require closing or divesting from facilities, firing employees, and canceling customer and vendor relationships.

15.     Plaintiff's claims for tortious interference are barred and/or limited because any alleged interference, which FMT expressly denies, was privileged and/or justified.

16.     Plaintiff's claim under the Computer Fraud and Abuse Act is barred because Hummel did not access Plaintiff's files and confidential and proprietary information on Plaintiff's computers, computer systems, and computer networks without authorization, and/or in a manner that exceeded his authorization.

17.     Plaintiff's claim under the Computer Fraud and Abuse Act is barred because, at all times, Hummel believed he had authorized access to Plaintiff's computers, computer systems, and computer networks and/or acted in a manner within the scope of his authorization to Plaintiff's computers, computer systems, and computer networks.

18.     Plaintiff's claim under the Computer Fraud and Abuse Act is barred because Plaintiff suffered no damage or loss within the meaning of the Computer Fraud and Abuse Act.

19. Plaintiff's claim under the Computer Fraud and Abuse Act is barred because FMT did not access Plaintiff's files and confidential and proprietary information on Plaintiff's computers, computer systems, and computer networks.

20. Any loss of revenue resulting from Plaintiff's loss of business resulted from fair and open competition, including through proposals submitted in response to RFQs, and, therefore, was not caused by any wrongful conduct of FMT.

21. If Plaintiff has received any compensation from a source in accordance with applicable laws, FMT is entitled to a settlement credit or set-off. At the time of its Answer, FMT does not have information that Plaintiff has reached any settlement that relates to the claims set out in the Complaint, but FMT requests that Plaintiff provide notice of the fact and amount of any payment under applicable laws so that FMT may supplement this defense.

22. Plaintiff's claims against FMT are barred by paragraph 12(b) of the March 2, 2021, Toll Manufacturing Agreement between AP and FMT.

23. FMT reserves the right to assert additional affirmative defenses in the future as additional facts are discovered.

## COUNTERCLAIMS

Counterclaim Plaintiff Findlay Machine & Tool, LLC ("FMT") hereby files this Counterclaim against American Plastics, LLC ("AP"), as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Counterclaim Plaintiff Findlay Machine & Tool, LLC is an Ohio limited liability company with its principal place of business located at 2000 Industrial Drive, Findlay, OH 45840.

2. Counterclaim Defendant American Plastics, LLC is a Delaware limited liability company and has its Innovation Center at 814 West Lima Street, Findlay, Ohio.

36

3.      This Court has personal jurisdiction over AP because AP initiated this lawsuit in this Court.

4.      This Court has jurisdiction over FMT's claims herein pursuant to 28 U.S.C. § 1367 because they are so related to AP's claims, over which this Court has original jurisdiction, that they form part of the same case or controversy.

5.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) because AP is subject to this Court's personal jurisdiction.

## NATURE OF ACTION

7.      Prior to AP initiating its lawsuit against FMT in the United States District Court for the Northern District of Ohio, AP and FMT had a longstanding business relationship that proved mutually beneficial to both parties.

8.      Indeed, because AP did not have the capacity to handle customer demand, it engaged FMT as a toll manufacturer to manufacture numerous products for AP's customers. To do this, AP granted FMT access to certain information AP contends is confidential.

9.      During their years-long business relationship, AP was aware its customers did business with both AP and FMT.

10.     Yet, AP never compelled FMT to enter into any sort of exclusivity agreement wherein FMT agreed to refrain from soliciting AP's customers. Nor did AP ever accuse FMT of improperly using AP's confidential information to compete.

11.     Now, because AP's own malfeasance resulted in the loss of business from The Home Depot and an exodus of employees, AP and its corporate parents, Jansan Acquisition, LLC

37

("Jansan") and US Merchants Holdings, LLC n/k/a XR10 Capital, LLC ("US Merchants"), are on a vendetta against FMT and its owner, Nickolas Reinhart ("Reinhart") to stifle fair competition, curtail an open and free marketplace, and restrict individuals from choosing where they would like to work.

## FACTUAL BACKGROUND

### AP Engages FMT to Manufacture Products

12.    From on or about August 2013, until his employment was terminated in February 2023, Reinhart was a manager, member, officer, employee, and/or agent of Creative Plastic Concepts, LLC ("CPC").

13.    By Membership Interest Purchase Agreement dated April 18, 2018, he sold his membership interest in CPC to Jansan. However, Reinhart remained as an officer, employee, and/or agent of CPC.

14.    Many of the long-time employees of CPC remained with CPC after Jansan's acquisition.

15.    As part of this transaction, CPC became a subsidiary of Jansan, and Reinhart acquired a small minority interest in Jansan.

16.    Reinhart retained this minority interest in Jansan until May 2022.

17.    AP is another subsidiary of Jansan.

18.    By late-2018, Jansan determined that it did not have sufficient manufacturing capacity to meet customer demand.

19.    As a result, while Reinhart was a member of Jansan and also employed by CPC, Jansan and Reinhart discussed having Reinhart form and own a separate business to manufacture storage products at another facility that Reinhart owned near AP and CPC's facilities.

38

20.     Reinhart did, in fact, begin manufacturing plastic storage and related products for CPC in February 2019 and then to both CPC and AP, first through Nickolas Plastics, LLC, and then later through FMT, which Reinhart acquired in February 2019.

21.     FMT also manufactured products for other customers.

22.     FMT and AP had many customers that overlapped, including Lowe's.

23.     FMT, AP, and CPC all have manufacturing facilities in Findlay, Ohio and surrounding communities.

### AP and FMT Enter Into Toll Manufacturing Agreement

24.     Reinhart initially manufactured product for sale to CPC and AP without a formal manufacturing agreement.

25.     As production requirements increased, Reinhart had to make significant investments in the business.  He therefore requested that AP enter into a formal manufacturing agreement.

26.     In October 2020, AP proposed that FMT enter into a Toll Manufacturing Agreement that contained a provision that AP would have a right to buy FMT under certain circumstances. Reinhart did not agree to this condition.

27.     Eventually, on March 2, 2021, AP and FMT entered into a Toll Manufacturing Agreement ("Manufacturing Agreement") pursuant to which FMT would manufacture and supply various plastic storage and related products to AP.  *See* 3/2/21 Manufacturing Agreement (attached hereto as **Exhibit A).**

28.     By executing the Toll Manufacturing Agreement, the parties agreed FMT would become an independent contractor of AP. *See* Ex. A, § 8(a).

29.     Among other provisions, the agreement provided:

a.　that "[AP] wishes to engage the [FMT] for the performance of the Services in its capacity as a toll manufacturer under the terms and conditions set forth in this Agreement (*see id.* at Recital C);

b.　that FMT must "store and segregate all [materials and products for AP] separate and apart from any other materials being stored by or for third parties at the facility. [FMT] shall maintain all such storage in a manner that permits [AP] or any third party to readily identify the Company Material, Company Tools, work-in-process and Products so stored as belonging to [AP]," *recognizing that FMT would have other customers* (*see id.* at § 4(a)(iv));

c.　that "[AP] may perform any of its duties and obligations herein through any of its affiliates [like CPC] and performance by such affiliate shall be deemed performance by the Company" (*see id.* at § 20(a)), which CPC did, in fact, do; and

d.　AP could terminate it in the event of a Change in Control of AP or FMT (*see id.* at § 16(d)), recognizing Reinhart's importance in the manufacture and supply as an owner and agent of FMT.

30.　The Manufacturing Agreement did not contain any exclusivity provisions or restrictive covenants other than confidentiality provisions.

31.　As CPC was a subsidiary of Jansan and an affiliate of AP at the time, Jansan and AP were intimately aware that FMT was manufacturing storage and related products for AP and CPC at all relevant times.

32.　Jansan and AP were also intimately aware FMT manufactured products for other customers, including AP's customers.

33.     On November 5, 2022, the Manufacturing Agreement between AP and FMT was amended, in part, to recognize the change in control event that occurred in May of 2022, when US Merchants purchased all of the membership interests in Jansan and its subsidiaries, including AP and CPC.  *See* 11/5/22 Amendment No. 1 to Manufacturing Agreement (attached hereto as **Exhibit B**).

34.     Through the amendment, AP also extended the term of the manufacturing agreement to the earlier of June 30, 2025 or the date on which 46,875 hours of production had been completed.  *See id.* § 3.

35.     AP was therefore requesting that FMT manufacture and supply storage and related products to AP with the full knowledge of US Merchants, as well as Jansan.

36.     In February 2023, Reinhart's employment with CPC was terminated.  Robert Guerra, AP's Chief Executive Officer and President, told Reinhart that US Merchants' owner did not see Reinhart's value.

37.     In approximately May 2023, Mr. Guerra first informed Reinhart that AP wanted FMT to enter into an amendment to the Manufacturing Agreement that contained covenants that would restrict Reinhart and FMT from manufacturing and selling competing products, among other terms.

38.     By approximately August of 2023, 46,875 hours of production had been completed at AP's request under the amendment to the Manufacturing Agreement between AP and FMT.  Thus, AP was under no obligation to continue to purchase storage and related products from FMT but continued to do so.

39.     On or about August 29, 2023, AP sent Reinhart a proposed amendment to the Manufacturing Agreement which included an exclusivity and non-competition provision.

41

40. Reinhart refused to sign it.

41. US Merchants' subsidiary AP nevertheless continued purchasing from FMT.

42. As recently as December 2023, Reinhart, through FMT, manufactured and supplied storage and related products to AP, a direct subsidiary of Jansan and an indirect subsidiary of US Merchants.

43. During the pendency of the Toll Manufacturing Agreement, AP never accused FMT of unlawfully using its confidential information to compete, despite being keenly aware of the mutual customers shared by the customers and that FMT was a competitor in the marketplace.

44. On April 12, 2024, AP filed a Complaint against FMT in the United States District Court for the Northern District of Ohio, alleging that FMT has unlawfully gained access to AP's confidential information in order to interfere with AP and CPC's customer relationships. AP asserts these allegations even though it provided FMT with access to the very same confidential information during their longstanding contractual relationship.

**COUNT I**
**DECLARATORY JUDGMENT THAT AP HAS A DUTY TO DEFEND, INDEMNIFY AND HOLD HARMLESS FMT**

45. The preceding allegations are incorporated herein by reference as if fully set forth herein.

46. Section 12(b) of the March 2, 2021, Manufacturing Agreement between AP and FMT provided, in part, "[t]o the fullest extent permitted by applicable law, [AP] shall defend, indemnify and hold harmless Manufacturer, its officers, directors, employees, or agents from all claims, damages, losses and expenses, including attorneys' fees, arising out of, related to, or resulting from the acts or omissions of AP, its agents, servants or employees or subcontractors,

42

whether such claim, damage, loss or expense is attributable to . . . any other activities contemplated by this Agreement . . . ." *See* Ex. A, § 12(b).

47. The "activities contemplated" by the Manufacturing Agreement include FMT's access to certain information AP contends is confidential.

48. AP has brought claims against FMT, complaining that FMT unlawfully gained access to AP's confidential information in order to interfere with AP and CPC's customer relationships, an "activity" contemplated by the Manufacturing Agreement.

49. A real, present, and justiciable controversy exists between FMT and AP concerning whether AP is obligated defend, indemnify, and hold harmless FMT.

50. This controversy exists between adverse parties to this action.

51. The issue of whether AP is obligated defend, indemnify, and hold harmless FMT is ripe for judicial determination.

52. FMT is entitled to a declaration that AP is obligated defend, indemnify, and hold harmless FMT.

## PRAYER FOR RELIEF

WHEREFORE, FMT respectfully requests that the Court enter judgment as follows:

A. Declaring that AP has a duty to defend, indemnify, and hold-harmless FMT;

B. Awarding FMT its attorneys' fees and expenses and costs of this action; and

C. Granting such other and further relief as the Court may deem just and proper.

Respectfully submitted,

EASTMAN & SMITH LTD.

*/s/Jared J. Lefevre*
JARED J. LEFEVRE (0085931)
jjlefevre@eastmansmith.com
NICHOLAS W. BARTLETT (0100990)

43

nwbartlett@eastmansmith.com
One SeaGate, 27th Floor
P.O. Box 10032
Toledo, Ohio 43699-0032
Telephone: (419) 241-6000
Fax: (419) 247-1777

POLSINELLI PC

TODD H. BARTELS (MO #45677)*
EMMA R. SCHUERING (MO #65169)*
ROSS T. WEIMER (MO #69421)*
900 W. 48th Place, Suite 900
Kansas City, MO  64112
816.753.1000
Fax No.:  816.753.1536
tbartels@polsinelli.com
eschuering@polsinelli.com
rweimer@polsinelli.com

ATTORNEYS FOR DEFENDANTS ERIC
HUMMEL, KREATE EXTRUSION, LLC and
DEFENDANT/COUNTERCLAIMANT
FINDLAY MACHINE & TOOL INC.


*Admitted *Pro Hac Vice*


GORDON REES SCULLY MANSUKHANI, LLP

ROLAND J. DEMONTE (0081129)
SARAH KATZ (0096863)
Y. TIMOTHY CHAI (0092202)
600 Superior Avenue East
Fifth Third Building, Suite 1300
Cleveland, OH 44114
Phone: (216) 302-2531
Fax: (216) 539-0026
rdemonte@grsm.com
skatz@grsm.com
tchai@grsm.com

ATTORNEYS FOR DEFENDANTS ERIC
HUMMEL, FINDLAY MACHINE & TOOL INC.
and KREATE EXTRUSION, LLC

## CERTIFICATE OF SERVICE

        The undersigned hereby certifies that a true and correct copy of the above and foregoing pleading was served by (___) United States Mail, postage prepaid; (_x_) ECF Notification System; (_____) E-mail; and/or (_____) Hand Delivery this <u>14th</u> day of <u>March 2025</u> to:

Jonathan H. Krol
REMINGER CO., L.P.A.
200 Public Square, Suite 1200
Cleveland, OH 44114
jkrol@reminger.com

Timothy J. Pastore*
MONTGOMERY McCRACKEN
WALKER & RHOADS LLP
437 Madison Avenue, 24th Floor
New York, NY 10022
tpastore@mmwr.com

Ethan Hougah*
MONTGOMERY McCRACKEN
WALKER & RHOADS LLP
Liberty View
457 Haddonfield Road, Suite 600
Cherry Hill, NJ 08002
ehougah@mmwr.com

Jacqualyn Gillen*
MONTGOMERY McCRACKEN
WALKER & RHOADS LLP
1735 Market Street, 21st Floor
Philadelphia, PA 19103
jgillen@mmwr.com

*Admitted *Pro Hac Vice*

ATTORNEYS FOR PLAINTIFF

*/s/Jared J. Lefevre*_____

7836738.1