## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**AMERICAN PLASTICS LLC,**

      Plaintiff,

      v.

**ERIC HUMMEL, et al.,**

      Defendants.

CASE NO. 3:24 CV 660


JUDGE JAMES R. KNEPP II


**MEMORANDUM OPINION AND ORDER**

### INTRODUCTION

Plaintiff American Plastics, LLC, ("AP") a plastic products manufacturer, sued Defendants Eric Hummel, Findlay Machine & Tool, LLC ("FMT"), and Kreate Extrusion, LLC ("Kreate") alleging violations of state and federal law stemming from a scheme to steal trade secrets and proprietary information. *See* Doc. 1. This Court previously denied Defendants' Motion to Dismiss or Stay based on *Colorado River* abstention. (Doc. 26). Thereafter, with its Answer, Defendant FMT filed a Counterclaim requesting a declaratory judgment that AP has a duty to defend, indemnify, and hold harmless FMT under a prior agreement. (Doc. 28, at 36–43).

Now pending before the Court is AP's Motion to Dismiss FMT's Counterclaim. (Doc. 32). The matter is fully briefed and decisional. (Docs. 35, 36). For the reasons discussed below, the Court grants AP's Motion and dismisses FMT's Counterclaim.

### BACKGROUND

The facts presented in the Counterclaim are accepted as true for the purposes of a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Those facts are as follows.

The events leading to this case begin with Jansan, the parent company to AP and another company, Creative Plastic Concepts, LLC ("CPC"). (Doc. 28, at 38). Jansan acquired CPC in April 2018, when Nickolas Reinhart, a longstanding officer, agent, and/or employee of CPC, sold his membership interest therein to Jansan. *Id.* As a part of that transaction, Reinhart acquired a minority interest in Jansan. *Id.* He remained an officer, agent, and/or employee of CPC. *Id.*

Due to insufficient manufacturing capacity, Jansan and Reinhart discussed Reinhart forming a separate business to help with manufacturing needs at a nearby facility he owned. *Id.* Reinhart formed a separate business, and beginning in February 2019, he began manufacturing plastic storage and related products for both CPC and AP. *Id.* at 39. He did this initially through Nickolas Plastics, LLC, and then through FMT, which he acquired in February 2019. *Id.* FMT also manufactured products for other customers, and FMT and AP had multiple overlapping customers.[1]

On March 2, 2021, AP and FMT entered a Toll Manufacturing Agreement ("Manufacturing Agreement") under which FMT agreed to act as an independent contractor to manufacture and supply various products for AP. *Id.* The Manufacturing Agreement allowed AP to terminate in the event of a change in control of either party, contained confidentiality obligations, and had no explicit exclusivity or non-compete provisions. *Id.* at 40.[2] The Manufacturing Agreement further contained an indemnity provision, which provides in Section 12(b):

> To the fullest extent permitted by applicable law, [AP] shall defend, indemnify and hold harmless [FMT], its officers, directors, employees, or agents from all claims,

---

1. It is unclear whether the overlapping customers were present before Reinhart's acquisition of FMT.
2. FMT maintains CPC was a subsidiary of Jansan and an affiliate of AP, and both Jansan and AP were aware FMT was manufacturing products for AP, CPC and other customers, including some of AP's own customers.

damages, losses and expenses, including attorney's fees, arising out of, related to, or resulting from the acts or omissions of [AP], its agents, servants or employees or subcontractors, whether such claim, damage, loss or expense is attributable to: (i) bodily injury, sickness, disease or death; or (ii) injury to or destruction of tangible property, including loss of use thereof; or (iii) and violation or alleged violation of any statute, ordinance, regulation, rule, order, permit, license, approval or registration, or (iv) any other activities contemplated by this Agreement, or arising out of any breach of covenant, representation, or warranty made by [AP], its agents, servants or employees or subcontractors, under or in connection with this Agreement[.]

(Doc. 28-1, at 7). In November 2022, a company named US Merchants purchased 100% of the membership interest in Jansan and its subsidiaries, including AP and CPC. (Doc. 28, at 41). The Manufacturing Agreement was amended to reflect this change in ownership and extended the term of the Manufacturing Agreement to the earlier of either June 30, 2025, or the completion of 46,875 production hours. *Id.*

In February 2023, Reinhart was terminated from CPC. *Id.* In May 2023, AP's CEO and President asked FMT to sign another amendment to the Manufacturing Agreement, this time containing exclusivity and non-compete covenants that would restrict Reinhart and FMT from manufacturing and selling competing products; Reinhart declined. *Id.* at 41. By August 2023, FMT had completed the earlier term of 46,875 production hours under the amended Manufacturing Agreement, but AP continued to purchase products and FMT continued supplying them. *Id.* On August 29, 2023, AP sent Reinhart another proposed amendment with exclusivity and non-compete provisions, which he again refused to sign. *Id.* at 41–42.

Until as late as December 2023, FMT continued manufacturing and supplying storage products to AP. *Id.* at 42. On April 12, 2024, AP filed this action, alleging FMT used AP's confidential information to interfere with AP and CPC's customer relationships. *Id.*

**STANDARD OF REVIEW**

On a motion to dismiss under Federal Civil Rule 12(b)(6), the Court tests a claim's legal sufficiency. The Court construes the complaint (or counterclaim) in the light most favorable to the nonmovant, accepts all factual allegations as true, and determines whether it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a counterclaim need not contain "detailed factual allegations," it requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Id.* at 555. Thus, a claim survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

**DISCUSSION**

In its single-count Counterclaim, FMT seeks a declaratory judgment that AP has a duty to defend, indemnify, and hold harmless FMT against this lawsuit under Section 12(b) of the March 2, 2021, Manufacturing Agreement. Doc. 28, at 41–43; Doc. 28-1, at 7. FMT contends the "activities contemplated" by the Manufacturing Agreement's indemnity provision includes its access to AP's confidential information. Thus, because AP's claims allege FMT unlawfully accessed and used confidential information, FMT argues this lawsuit falls within the contract's scope. (Doc. 28, at 9, 42–43). AP argues FMT's Counterclaim should be dismissed for two reasons. *See* Doc. 32-1. First, AP claims the Complaint does not discuss or otherwise implicate the Manufacturing Agreement. *Id.* at 7–8. Second, AP claims that, regardless of whether the claims

4

relate to the Manufacturing Agreement, FMT's Counterclaim does not allege facts to make this case fall within the scope of the indemnity provision. *Id.* at 8.

When ruling on a 12(b)(6) motion, courts generally only look to the four corners of the complaint. That said, courts "may consider written instruments that are exhibits to a pleading, as those are considered part of the pleading for all purposes." *See Cooper v. Fay Servicing, LLC*, 115 F. Supp. 3d 900, 904 (S.D. Ohio 2015). FMT has attached copies of the Manufacturing Agreement (Doc. 28-1) and the Amended Manufacturing Agreement (Doc. 28-2) to its Answer and Counterclaim. As a result, the Court considers these documents for purposes of this Motion.

The Manufacturing Agreement states it is governed by Delaware law, which the parties do not dispute. (Doc. 28-1, at 9). As such, this Court applies Delaware substantive law to the interpretation and analysis of the Manufacturing Agreement. *See Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (noting, when interpreting contracts in a diversity action, courts generally enforce the parties' contractual choice of governing law). "Delaware adheres to the 'objective' theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party." *Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010). When interpreting a contract, "Delaware courts read the agreement as a whole and enforce the plain meaning of clear and unambiguous language." *Manti Holdings, LLC v. Authentix Acquisition Co.*, 261 A.3d 1199, 1208 (Del. 2021). Clear and unambiguous language is "reasonably susceptible of only one interpretation" and the language need not be perfectly clear for an interpretation to be the only reasonable one. *Id.* (emphasis omitted) (quoting *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992)). The parties' disagreement over the interpretation will not render the contract ambiguous. *Id.*

The Manufacturing Agreement's basic purpose is governing product manufacturing and related services. Section 2(a) of the Manufacturing Agreement provides: "This Agreement shall govern the performance of the Services and the manufacture of products by [FMT] for [AP]." (Doc. 28-1, at 1). Section 12(b) of the Manufacturing Agreement reads, in full:

> To the fullest extent permitted by applicable law, [AP] shall defend, indemnify and hold harmless [FMT], its officers, directors, employees or agents from all claims, damages, losses and expenses, including attorney's fees, arising out of, related to, or resulting from the acts or omissions of [AP], its agents, servants or employees or subcontractors, whether such claim, damage, loss or expense is attributable to: (i) bodily injury, sickness, disease or death; or (ii) injury to or destruction of tangible property, including loss of use thereof; or (iii) any violation or alleged violation of any statute, ordinance, regulation, rule, order, permit, license, approval or registration, or (iv) any other activities contemplated by this Agreement or arising out of any breach of any covenant, representation, or warranty made by [AP], its agents, servants, or employees or subcontractors, under or in connection with this Agreement; provided, that [AP]'s liability and duty of indemnification under clauses (i)-(iii) of this Section 12(b) shall only be to the extent such damages, losses or expenses arise as the result of the negligence, gross negligence or willful misconduct of [AP], its agents, servants or employees or subcontractors. Notwithstanding anything to the contrary in this Agreement, in no event shall [AP] have any liability under this Agreement (whether for breach of this Agreement or otherwise), or in connection with the transactions set forth in this Agreement, in excess of (and [FMT]'s rights and remedies against [AP] shall in all cases be limited to) any unpaid Product Fees and unpaid reimbursable costs or expenses earned in connection with the manufacture of Products by [FMT] under this Agreement.

(Doc. 28-1, at 7).

Implication of the Manufacturing Agreement

AP first argues the Counterclaim should be dismissed because the Complaint does not implicate or mention the Manufacturing Agreement. (Doc. 32-1. At 10). It further claims no reasonable interpretation of the indemnity provision brings the Complaint's allegations within the indemnity provision's scope. *Id.* FMT responds that the Counterclaim's ability to state a claim for relief is not dependent on disputed facts or the framing of AP's allegations. (Doc. 35, at 6).

While the precise wording or truth of the Complaint's allegations do not govern whether the Counterclaim states a claim for relief, the nature of FMT's Counterclaim requires the consideration of the allegations in the Complaint. The Counterclaim states one claim: a request for a declaratory judgment that AP is required to defend, indemnify, and hold harmless FMT against the Complaint because it falls under the scope of the Manufacturing Agreement's indemnity clause. This necessarily requires the Court to consider the allegations in both the Counterclaim and Complaint to determine whether there are factual assertions to create a reasonably conceivable circumstance in which FMT could be entitled to indemnification in this case.

AP contends the Manufacturing Agreement is not implicated in this case because: (1) the Complaint does not mention it, (2) the "activities" AP alleges do not relate to the purpose of the Manufacturing Agreement (services and manufacturing of products), and (3) no reasonable interpretation of the Manufacturing Agreement requires AP to indemnify FMT for FMT's own breach. (Doc. 32-1, at 10-11). FMT disputes AP's interpretation of the indemnification clause and argues under Section 12(b), AP's claims need not arise from or be based on the Manufacturing Agreement itself; rather, FMT must allege "claims, damages, losses, and expenses" resulting from an act of AP. (Doc. 35, at 8). FMT contends AP's filing of this action constitutes an act for which it may seek indemnification because it is based on a claim that falls under "activities contemplated by th[e] Agreement," i.e., the access and use of confidential information. *Id.*

Reading the Manufacturing Agreement as a whole, the only reasonable interpretation of Section 12(b) requires AP to defend, indemnify, and hold harmless FMT only for claims, damages, losses, and expenses that stem from a wrongful act of AP done in the course of performing under the contract. See Doc. 28-1. Reading the terms as FMT requests, which would in effect make AP liable for FMT's breaches, would be an unreasonable interpretation. *See Osborn*, 991 A.2d at 1160

7

("An unreasonable interpretation produces an absurd result or one that no reasonable person would have accepted when entering the contract.") (citation omitted).

The Counterclaim's additional factual allegations could, as FMT claims, suggest this action is within the purview of the Manufacturing Agreement. However, those facts only do so in the context of AP alleging FMT breached the confidentiality provisions of the Manufacturing Agreement. While FMT is correct that the Manufacturing Agreement contemplated its access to AP's confidential information, it expressly prohibited such conduct. Section 10(b) of Manufacturing Agreement (the confidentiality provision) states: "[FMT] shall not use Confidential Information for its own benefit or for the benefit of any third party without [AP]'s written consent." (Doc. 28-1, at 5); *see Brozozowski v. Ingersoll-Rand Co.*, 1985 WL 25724, at *4 (Del. Super. Ct.) (holding the scope of coverage of an indemnity clause is determined by focusing on the relevant language of the operative contract).

AP's underlying claims do not dispute that FMT had permission to access certain confidential information for purposes of manufacturing products under the Manufacturing Agreement. Rather, the Complaint challenges what FMT did with certain confidential information: using it in a manner that exceeded the scope of the Agreement and violated its explicit terms. *See* Doc. 1. FMT's argument that Section 12(b) covers AP's claims simply because "confidential information" was mentioned in the Agreement ignores this distinction. Access to AP's confidential information for purposes of carrying out the Manufacturing Agreement was a contemplated activity. But the alleged theft and misuse of confidential information accessed under the Manufacturing Agreement gives rise to a potential breach of contract claim, which is not covered by Section 12(b).

8

While FMT may have some use for the Manufacturing Agreement to defend against the Complaint in some respects, there are no allegations in the Counterclaim which allege any instance under which AP would be required to indemnify FMT.

<u>Wrongful Conduct</u>

AP's second argument is that the Counterclaim should be dismissed because the indemnity clause applies only when AP's own conduct triggers liability. (Doc. 32-1, at 11). FMT contends it is entitled to defense, indemnification, and to be held harmless for any claims, losses, and expenses attributable to any activities contemplated by the Manufacturing Agreement, regardless of the allegations or even any other language in the Manufacturing Agreement or indemnification clause; FMT relies on a small portion within a sentence of the indemnification provision. (Doc. 35, at 8).

As discussed above, the only reasonable interpretation of the Manufacturing Agreement, and specifically Section 12(b), does not require indemnification for FMT's own breach of the contract. The Counterclaim does not allege any wrongful or improper act of AP done in performing or furthering the Manufacturing Agreement. Instead, it seems FMT only claims that AP must indemnify FMT because AP's claim could be based on alleging FMT breached the confidentiality provisions of the Manufacturing Agreement. This does not fall within the scope of Section 12(b) so as to require indemnification by AP.

Even making all inferences in FMT's favor, the Counterclaim does not allege facts leading to any reasonably conceivable circumstance in which the indemnification clause of the Manufacturing Agreement would apply to the Complaint. As a result, the Counterclaim fails to state a claim upon which relief could be granted and AP's Motion to Dismiss is granted.

CONCLUSION

For the foregoing reasons, good cause appearing, it is

9

ORDERED that Plaintiff's Motion to Dismiss Defendant FMT's Counterclaim (Doc. 32) be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that Defendant FMT's Counterclaim (Doc. 28), be and the same hereby is, DISMISSED.


 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: November 10, 2025