IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

American Plastics, LLC,                        :
                                               :   Case No. 3:24-cv-00660
            Plaintiff,                         :
    vs.                                        :   Honorable James R. Knepp, II
                                               :
Eric Hummel, et al.,                           :   **REDACTED VERSION, Per ECF 50**
                                               :
            Defendants.                        :

**MOTION OF DEFENDANTS FINDLAY MACHINE & TOOL, LLC AND ERIC
HUMMEL TO COMPEL PLAINTIFF AMERICAN PLASTICS, LLC TO PRODUCE
RELEVANT DOCUMENTS AND FOR AN AWARD OF FEES AND EXPENSES**

Pursuant to Rules 26, 34 and 37 of the Federal Rules of Civil Procedure, Defendants

Findlay Machine & Tool, LLC ("FMT") and Eric Hummel (collectively, "Defendants")

respectfully move to compel Plaintiff American Plastics, LLC to produce the documents that are

responsive to: (a) FMT's Third Set of Reque   For Production of Documents ("3rd RFPs") Nos. 2-

14 and Fourth Set of Requests for Production of Documents (4th RFPs), and (b) Hummel's Second

Set of Requests for Production Nos. 1 and 2.  Defendants also move for an award of their fees and

expenses.  Pursuant to Fed. R. Civ. P. 37(a)(1), Defendants' counsel certifies that they have

conferred in good faith with Plaintiff's counsel on multiple occasions in an effort to resolve the

issues raised in this motion without Court intervention, but the parties are at an impasse.

On January 14, 2026, via Minute Order, this Court granted Defendants leave to file the

instant motion with a twenty-page limit. The basis for this motion is set forth in the attached

memorandum in support.

Respectfully submitted,

/s/ Stuart G. Parsell
Marion H. Little, Jr.  (0042679)
Stuart G. Parsell  (0063510)

i

ZEIGER, TIGGES, & LITTLE LLP
8000 Walton Parkway, Suite 260
New Albany, Ohio 43054
Phone: (614) 365-9900
little@litohio.com
parsell@litohio.com

Attorneys for Defendants
Findlay Machine & Tool, LLC and
Kreate Extrusion LLC

GORDON REES SCULLY MANSUKHANI, LLP
Roland J. De Monte (0081129)
Sarah E. Katz (0096863)
Y. Timothy Chai (0092202)
127 Public Square, Suite 5130
Cleveland, OH 44114
Phone: (330) 283-5537
rdemonte@grsm.com
skatz@grsm.com
tchai@grsm.com

EASTMAN & SMITH LTD.
Jared J. Lefevre (0085931)
Nicholas W. Bartlett (0100990)
One SeaGate, 27th Floor
Toledo, Ohio 43699-0032
Phone: (419) 241-6000
jjlefevre@eastmansmith.com
nwbartlett@eastmansmith.com

POLSINELLI PC
Todd H. Bartels (MO #45677)*
Emma R. Schuering (MO #65169)*
Ross T. Weimer (MO #69421)*
900 W. 48th Place, Suite 900
Kansas City, MO 64112
Phone: (816) 753-1000
tbartels@polsinelli.com
eschuering@polsinelli.com
rweimer@polsinelli.com

Attorneys for Defendants Eric Hummel,
Findlay Machine & Tool Inc., and
Kreate Extrusion LLC

ii

## TABLE OF CONTENTS

**PAGE**

MEMORANDUM IN SUPPORT................................................................................................1

I.      Summary Of Argument......................................................................................................1

II.     Factual Background. ..........................................................................................................3

        A.      AP Refuses to Produce The Damages-Related Documents
               Requested By FMT. ...........................................................................................3

        B.      AP Refuses To Produce Relevant Documents Requested By
               Hummel.............................................................................................................7

III.    Law And Argument. ..........................................................................................................8

        A.      Defendants' Requested Discovery Is Relevant And Necessary To
               Assess And Test Plaintiff's Claimed Damages. ..........................................8

        B.      Plaintiff's Objections Of Undue Burden And Disproportionality
               Are Unsupported And Lack Any Merit. .................................................16

        C.      Plaintiff's Consolidated Financial Statements And After-The-Fact
               Summaries Prepared For Litigation Are Insufficient To Assess
               And Test Its Claimed Damages. ...........................................................17

        D.      Defendants Should Be Awarded Their Fees And Expenses
               Incurred In Bringing This Motion.........................................................19

IV.    Conclusion ......................................................................................................................19

**TABLE OF AUTHORITIES**

**PAGE(S)**

**Cases**

*Am. Consol. Indus., Inc. v. Blasingim,*
2021 WL 4204936 (N.D. Ohio Feb. 24, 2021) ........................................................ 17

*American Sec. & Audio Video Sys., Inc. v. Prep TMT,LLC,*
2025 WL 3003927 (N.D. Ohio Oct. 27, 2025) ........................................................ 8

*Chicago Title Insurance Corp. v. Magnuson,*
487 F.3d 985 (6th Cir. 2007)...................................................................................... 9

*Chicago Title Insurance Corp. v. Magnuson,*
2009 WL 3321372 (S.D. Ohio Oct. 9, 2009) ........................................................... 9

*Dominium Liquid Techs., LLC v. GT Beverage Co.,*
2013 WL 2181710 (S.D. Ohio May 20, 2013) ........................................................ 19

*Electric Furnace Co. v. Fire Ass'n of Philadelphia,*
10 F.R.D. 152 (N.D. Ohio 1950)................................................................................ 18

*Farnhurst, LLC v. City of Macedonia,*
2015 WL 7185498 (N.D. Ohio Nov. 13, 2015) ....................................................... 19

*Hastings v. J.E. Scott Corp.,*
2004 WL 759658 (Ohio App. Apr. 9, 2004)............................................................. 9

*In re Heparin Prods. Liab. Litig.,*
273 F.R.D. 399 (N.D. Ohio 2011).................................................................... 16, 17

*Kehoe Component Sales, Inc.,*
2010 WL 596501 (S.D. Ohio 2010).......................................................................... 18

*Oppenheimer Fund, Inc. v. Sanders,*
437 U.S. 340 (1978) .................................................................................................... 8

*Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.,*
2021 WL 1062553 (W.D. Ky. Mar. 19, 2021)......................................................... 18

*Reliance Ins. Co. v. Keybank U.S.A.,*
2006 WL 2850454 (N.D. Ohio Sept. 29, 2006) ...................................................... 9

*White v. City of Cleveland,*
417 F.Supp.3d 896 (N.D. Ohio 2019)..................................................................... 16

iv

**Rules**

Fed. R. Civ. P. 26(b)(1)....................................................................................................... 8

Fed. R. Civ. P. 37(a)(5)...................................................................................................... 19

N.D. Ohio Loc. R. 7.1(f)....................................................................................................... 8

## STATEMENT OF ISSUES

(1)    Are the discovery documents that Defendants seek from Plaintiff relevant to Plaintiff's claims and alleged damages of $200 million and proportional to the needs of the case? [Yes.]

(2)    Should Plaintiff be compelled to produce these materially relevant documents?  [Yes.]

(3)    Did Plaintiff have substantial justification for refusing to produce these documents?  [No.]

**<u>MEMORANDUM IN SUPPORT</u>**

## I.      <u>Summary Of Argument</u>

Plaintiff American Plastics, LLC ("AP") seeks a damages recovery of a staggering *$200,000,000* against Defendants stemming from the Home Depot business that AP has lost and for which it now blames Defendants. This motion seeks to compel AP to produce documents that are materially relevant to AP's claimed damages.

The document requests at issue are primarily based on documents that AP's own witnesses identified during their recent depositions as being relevant to AP's alleged damages.  Yet, AP continues to withhold these critical documents.

FMT's 3rd and 4th RFPs seek damages-related information concerning several integral topics: (1) AP's real time, contemporaneous reports and management's communications concerning its sales and production, alleged damages, and its marketing and sales strategies to mitigate the damages, (2) AP's "pre-breach" capacity constraints that limited its ability to increase its sales to non-Home Depot customers even before it lost the Home Depot business, (3) the extent to which AP's "post-breach" sales to *other* customers mitigated AP's alleged damages resulting from its lost Home Depot business, (4) the reasons for AP's price concessions to other customers unrelated to Defendants' alleged conduct, such as falling resin prices and increased fair competition from other competitors, and (5) AP's self-imposed restraints on its own capital expenditures that limited its production capacity.

Defendants' damages expert, William S. Choi, Ph.D., who earned a doctorate in economics from Duke University and has decades of experience evaluating damages in precisely these kinds of lawsuits, has reviewed Defendants' document requests as well as the limited damages-related documents that AP has produced. Dr. Choi underscores the importance of the damages-related documents that Defendant FMT is seeking: "***FMT's Third and Fourth RFPs … seek information***

1

*that is important for a reliable assessment of AP's alleged damages*."  [Choi Decl. ¶ 7 (emphasis added).]

AP nevertheless stands on its prior productions and admits that it has not searched for the documents that are specifically identified in FMT's 3rd and 4th RFPs.  Instead, AP claims that its previously produced consolidated financial statements and spreadsheet summaries are sufficient to assess AP's alleged damages.

But the problem is that AP literally has cherry-picked the documents it has produced to Defendants, instead of producing the documents that FMT has specifically requested.  AP's CFO concedes that most of AP's produced summary spreadsheets and damages-related documents are not contemporaneous business records but, instead, were prepared after the fact for the purpose of this litigation. [Baumgartner Vol. 3 Dep. at 45-48, 76-77, 101-102, and 105-106.]  Dr. Choi has reviewed these AP-produced documents and concludes they are *not* adequate to assess AP's alleged damages, noting "they are largely aggregated, temporally limited or inconsistent, and frequently lack the level of detail required to construct a reliable but-for business trajectory.  As a result, they are *insufficient* to isolate the effects of the alleged misconduct from broader market factors, to establish causation, and to quantify the effects of mitigation efforts."  [Choi Decl. ¶ 8 (emphasis added).]

AP has failed to produce most of its contemporaneous business records and key management-level communications that are integral to test AP's purported damages of $200 million.  In view of the significant deficiencies in AP's production, Dr. Choi sums it up best, opining that FMT's 3rd and 4th RFPs seek information that is "*analytically useful, important, and in several instances, necessary for a complete assessment*" of AP's alleged damages. [Choi Decl. ¶ 8 (emphasis added)]

AP cannot simultaneously claim hundreds of millions of dollars of damage against Defendants while refusing to even search for, much less produce, the very documents that AP has placed squarely at issue and that likely refute its damages.

Similarly, Defendant Eric Hummel's two Document Requests at issue seeking materially relevant materials tied directly to AP's claims of "computer fraud and abuse" against him. Yet, AP has stonewalled Hummel and refuses to produce the pertinent requested documents.

## II.      Factual Background

### A.      AP Refuses To Produce The Damages-Related Documents Requested By FMT.

AP alleges that Defendants engaged in a scheme in 2023 to misappropriate AP's trade secrets and to hire several of AP's employees to advance their competing plastic molding business for the production and sale of plastic products such as storage totes. AP brings claims for misappropriation of trade secrets against all Defendants, breach of Hummel's Confidentiality Agreement with AP, civil conspiracy, and tortious interference with Hummel's agreement and certain of AP's business relationships.

Eighteen months after AP brought this action, AP served its Second Supplemental Rule 26 Initial Disclosures, revealing for the first time that it seeks to recover damages in excess of **$200,000,000** supposedly caused by AP's loss of its business with Home Depot.[1]  [Pierson Decl. Ex. 8-A]  AP had a supply contract with Home Depot that required AP [REDACTED]

---

[1]      The evidence in support of this Motion to Compel is provided in Defendants' separately filed Appendix of Exhibits.

[REDACTED]                                          AP then sued Home Depot for breach

of contract in Georgia state court, which remains pending.

AP now blames Defendants and seeks a double recovery against them for AP's loss of its

Home Depot business.  AP's Supplemental Disclosure states:

> Plaintiff believes at this time that damages exceed $200,000,000, and include, among other losses to be explored through discovery, damages associated with lost business (including lost profits and future profits, reputational harm, unsold inventory manufactured for The Home Depot, and mitigation costs), capital expenditures for servicing The Home Depot, cost concessions to retain other customers targeted by or on behalf of FMT, compensation paid to Hummel while working simultaneously for both Plaintiff and FMT/Kreate, costs of employee retention, replacement and training, investigative costs….

> [Pierson Decl. Ex. 8-A]

In late October 2025, Defendants deposed AP's President and Rule 30(b)(6) representative, Robert Guerra, who identified several relevant contemporaneous reports that AP regularly circulates to its management team in the ordinary course of business, but which AP has failed to produce.  On November 7, 2025, FMT served its 3rd RFPs on AP targeting documents relevant AP's alleged damages, including documents identified during Guerra's deposition. [Pierson Decl. Ex. 8-B]   FMT's 3rd RFPs seek production of the following specific damages-related documents from January 1, 2022 to the present:

> 3rd RFP 2 and 3:  Marketing reports/presentations shown to Guerra on a weekly, monthly and/or other periodic basis from Plaintiff's marketing team, including weekly Business Cadence Call Sheets ("BCC Sheets") described by Guerra in his deposition, and any other weekly BCC Sheets for AP and its Affiliates.

> 3rd RFP 4: Monthly Innovation Index reports for Plaintiff and its Affiliates.

> 3rd RFP 5:  PowerPoint presentations and/or Excel presentations provided to Guerra as part of the bi-weekly calls with the marketing team described by Guerra in his deposition.

> 3rd RFP 6:  Reports provided to Guerra on any weekly, monthly, or other periodic basis from the operating team, including the sales operational planning reports, described by Guerra in his deposition.

3rd RFP 7:  Monthly open employment position reports prepared by Suzanne Reiker for Plaintiff and its Affiliates.

3rd RFP 8:  Weekly and/or monthly sales and operation report prepared by Mark Ward for Plaintiff and its Affiliates.

3rd RFP 9:  Reports provided to Guerra on a weekly, monthly, or other periodic basis that detail all or any of the following:  sales, production, inventory, resin, labor, OEE, and/or utilization.

3rd RFPs 10 & 11: (a) CapEx reports; (b) any form of capital planning/expense report; and (c) monthly profit and loss statements for each manufacturing and/or distribution facility of Plaintiff and its Affiliates and Plaintiff and Its Affiliates themselves, including all components and tabs of such statements (i.e., the financial work book).

3rd RFP 12:  Documents provided by Guerra, including those documents submitted on any weekly, monthly, or other periodic basis, to Jeff Green and/or Cole Anderson regarding the financial and/or operational performance of Plaintiff, its Affiliates, and/or any of its business units, pricing information, facilities, products, customer relationship (including prospects) and/or other employees.

3rd RFP 13:  Monthly and annual Power BI Reports, including without limitation, the sales, PSV, and OEE components, for Plaintiff and its Affiliates.

3rd RFP 14:  Documents relating to Plaintiff's attempts or efforts to mitigate any damages allegedly caused by any act or omission of any Defendants, including any planning documents identifying Plaintiff's strategy, approach, game plan, efforts, or thoughts for mitigating damages.

On December 8, 2025, AP responded to FMT's 3rd RFPs, stating that AP "presently intends to refrain from producing additional documents responsive" to Request Nos. 2 – 14.  AP lodged nearly the same boilerplate objections to each of the 3rd RFPs, asserting they (a) were overbroad as to time frame, (b) sought confidential business information, (c) were not likely to lead to the discovery of relevant evidence, and (d) were unduly burdensome because the requests would yield "an inordinate and disproportionately large number of documents." [Pierson Decl. Ex. 8-E]   In response to 3rd RFPs 12 and 14, AP also claimed that the requests are cumulative because AP has produced information in summary form.

5

On November 14, 2025, FMT served AP with FMT's 4th RFPs, containing six more requests targeting information relevant to AP's claimed damages, [Pierson Decl. Ex. 8-C]:

4th RFPs 2 and 3: Cost justification worksheets provided to Home Depot and the emails or other communication that accompanied the submission of the cost justification worksheets, as well as communications with Home Depot stating or explaining price increases or decreases for products sold to Home Depot.

4th RFP 4: Communications between AP and Lowe's, stating or explaining price increases or decreases for products sold to Lowe's.

4th RFP 5: Documents sufficient to identify the price quotes provided by AP and affiliates to any other existing or prospective customer.

4th RFP 6: Documents sufficient to show the prices paid by AP and affiliates for resin.

AP's Responses to the 4th RFPs are virtually identical to the responses and boilerplate objections that AP served in response to FMT's 3rd RFPs. AP refuses to produce the requested documents. [Pierson Decl. Ex. 8-F]

On December 18, 2025, FMT challenged AP's refusal to produce documents responsive to FMT's 3rd and 4th RFPS and requested a meet and confer to resolve the dispute. [Pierson Decl. Ex. 8-I] During the parties' first meeting on December 23, 2025, AP stated that its primary objection to FMT's 3rd and 4th RFPs was that the requests sought discovery for an "overbroad" time period. AP, however, acknowledged that it had not conducted any searches in response to these RFPs and, thus, had no facts supporting AP's objections of undue burden and disproportionality. [Pierson Decl. ¶ 14] FMT disagreed with AP's position but, in the spirit of trying to resolve the dispute, asked AP if it was proposing an alternative discovery time period. [Pierson Decl. ¶ 15] In response, AP's counsel said he would confer with his client and co-counsel and get back to FMT concerning a proposed alternative time period. [*Id.*]

When the parties reconvened on December 29, 2025, AP changed its tune. In response to FMT's proposal to narrow the discovery time period in its 4th RFPs to January 1, 2020 to the

6

present,[2] AP's counsel said that it did not matter because AP was standing on its prior objections, was not producing any documents responsive to FMT's 3rd or 4th RFPs, and was not proposing any alternative discovery time periods.  [Pierson Decl. ¶ 16]

### B.  AP Refuses To Produce Relevant Documents Requested By Hummel.

Defendant Eric Hummel was AP's tooling manager until he resigned in December 2023 to begin a position at FMT.  AP was aware that Hummel joined FMT. [Hummel Decl. ¶ 4]  After Hummel's resignation, AP *willingly* continued to provide him access to its computer systems to assist AP with certain projects.  [Hummel Decl. ¶¶ 6-7]  At AP's request, Hummel provided these services *for free* for AP for nearly two months. [*Id.* ¶ 6]  During that time, AP communicated with, and sent company files to, Hummel through his *AP email address* until February 22, 2024. [*Id.* ¶¶ 7-9, 11; AP's Answers to Hummel's 2nd Set of Interrogatories, Nos. 1 and 2]  Once AP terminated Hummel's access to its email system, Hummel lost access to these materials. [Hummel Decl. ¶ 11]

But now AP claims that Hummel engaged in "computer fraud and abuse" by improperly accessing AP's computer systems. [Complaint ¶¶ 114-118] Given AP's unfounded claim, Hummel's Second Requests for Production to AP seek production of:

1.  All documents email account ehummel@amplastics.com sent and/or received from December 29, 2023, through April 12, 2024.

2.  All documents AP sent to, and/or received from, Hummel from December 29, 2023, through April 12, 2024.

[Pierson Decl. Ex. 8-D]

AP, however, refuses to produce these requested documents. *See* AP's Objections to Hummel's Second Requests for Production, Pierson Decl. Ex. 8-H.  Hummel and AP met and conferred on January 5, 2026.  On January 8, 2026, AP's counsel informed Hummel that it would

---

[2]  FMT's 4th RFPs originally sought documents from January 1, 2018 to the present.

produce only emails sent from Hummel's AP email account but not emails *received* by it. This excludes the most relevant materials – all emails and materials that AP sent to Hummel.

In view of the parties' impasse on FMT's and Hummel's outstanding discovery, Defendants, on January 12, 2026, asked the Court for a discovery conference, which was held the following day. On January 14, 2026, the Court granted Defendants leave to file the instant motion.[3]

## III. Law And Argument

### A. Defendants' Requested Discovery Is Relevant And Necessary To Assess And Test Plaintiff's Claimed Damages

Fed. R. Civ. P. 26(b)(1) permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." This Court recognizes that "[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *American Sec. & Audio Video Sys., Inc. v. Prep TMT, LLC*, No. 5:22-cv-00558, 2025 WL 3003927, *2 (N.D. Ohio Oct. 27, 2025) (granting motion to compel production of documents to test plaintiff's claimed lost profit damages). Information need not be admissible at trial to be discoverable, so long as it "appears reasonably calculated to lead to the discovery of admissible evidence." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Here, there can be no question that Defendants' requests seek relevant information targeting Plaintiff's claimed damages. Most of FMT's 3rd and 4th RFPs are geared to two materially relevant topics damages topics: (1) AP's "pre-breach" capacity constraints that limited its ability to increase its sales to non-Home Depot customers even before it lost the Home Depot business, and (2) the extent to which AP's "post-breach" sales to *other* customers mitigated AP's alleged damages resulting from its lost Home Depot business. In fact, after Home Depot pulled

---

[3]    Pursuant to the Court's Notation Order, Defendants' page limit for the instant motion was expanded to twenty (20) pages. *See* N.D. Ohio Loc. R. 7.1(f).

its business from AP in 2024, AP was so successful in generating new business to mitigate its alleged damages that AP's Vice President of Human Resources recently testified that AP's [REDACTED]

[Stevens Dep. at 215-217.]  AP's CFO also acknowledges that AP [REDACTED]

[Baumgartner Vol. 1 Dep. at 46-47, Vol. 3 Dep. at 34-35.]

Under controlling law, these two damages-related topics are not only the proper subjects of discovery, it would be reversible error to preclude Defendants from presenting this requested evidence.  In *Chicago Title Insurance Corp. v. Magnuson*, 487 F.3d 985 (6th Cir. 2007), the plaintiff Chicago Title sued a former executive and his new employer-competitor, First American, for tortious interference with the executive's noncompete agreement with Chicago Title.  After the jury awarded damages against the defendants, the Sixth Circuit reversed, concluding that the district court abused its discretion by excluding evidence as to whether Chicago Title had mitigated its damages. *Id.* at 997-98.  The Sixth Circuit held that defendants were entitled to present both "***pre-breach evidence***" to determine whether the plaintiff is a "lost volume seller" (*i.e.*, had the capacity to handle new business if the underlying noncompete agreement had not been breached) as well as "***post-breach evidence***" concerning plaintiff's "obtaining new business" and whether the plaintiff "did or did not mitigate its damages."  *Id.* (emphasis added).

*Accord:  Chicago Title Ins. Corp. v. Magnuson*, No. 2:03-CV-368, 2009 WL 3321372, *6 (S.D. Ohio Oct. 9, 2009) ("Under Ohio law, there is a duty for one injured by a tort to make reasonable efforts to mitigate his damages."), quoting *Hastings v. J.E. Scott Corp.*, No. 2003 CA 32, 2004 WL 759658, *2 (Ohio App. Apr. 9, 2004) (involving claim for tortious interference with contract); *Reliance Ins. Co. v. Keybank U.S.A.,* No. 1:01 CV 62, 2006 WL 2850454, *5 (N.D. Ohio Sept. 29, 2006) (Gaughan, J.) (in view of the duty to mitigate damages, the breaching party "is

9

entitled to offset gains earned as a result of conduct unrelated to the breach" because "the non-breaching party cannot be placed in a better position than it would have been absent the breach").

Here is a detailed explanation of the importance of Defendants' requested discovery:

**FMT's 3rd RFPs 2 and 3**.  **Marketing reports/presentations shown to AP's President, Guerra, on a weekly and/or monthly basis from Plaintiff's marketing team, including weekly Business Cadence Call Sheets ("BCC Sheets") described by Guerra in his deposition, and any other weekly BCC Sheets for AP and its affiliates.**

AP circulated these weekly BCC Sheets since early 2022 to its President, Robert Guerra, and other managers, which provided a snapshot of AP's key business metrics, such as (i) budgeted and actual sales as to each of AP's customers, including Home Depot, (ii) any significant "Customer Issues," (iii) budgeted and actual net sales generated by each of AP's manufacturing facilities, including the two facilities that produced products for Home Depot, and (iv) the absorption and efficiency levels at each AP facility.  [Nichols Decl. ¶ 4(a) – (g).]  Dr. Choi states that these weekly BCC Sheets are critical to his analysis of AP's claimed damages.  [Choi Decl. ¶¶ 9-11]  Even AP's Rule 30(b)(6) representative testified that these weekly BCC Sheets would be helpful information in this case to show the effects of AP's lost Home Depot business.  [Guerra Dep. Vol. III, at 548-550.]   Yet, AP refuses to produce the requested weekly BCC Sheets.[4]

**FMT's 3rd RFP 4.**  **Monthly Innovation Index reports for AP and its affiliates.**

AP circulated these reports on a monthly basis and now calls them Vitality Index Reports. [Nichols Decl. ¶ 6.]   These reports contain AP's new product innovations and information concerning sales of new products to AP's *non*-Home Depot customers, [REDACTED]

at which point AP obtained new business from other customers.

---

[4]     While AP has produced a small sampling of BCC Sheets, AP inexplicably has not produced the vast majority of the BCC Sheets that were requested after January 2022. [Pierson Decl. ¶ 17(a)]

[*Id.*]  Dr. Choi states that these innovation reports are necessary for his causation and damages analysis. [Choi Decl. ¶¶ 12-13]  But AP refuses to produce them.  [Pierson Decl. ¶ 17(b)]

> **FMT's 3rd RFP 5**:  **PowerPoint and Excel presentations provided to Guerra as part of the bi-weekly calls with AP's marketing team described in Guerra's deposition.**

These contemporaneous marketing-related materials include AP's sales plans and marketing strategies both before and after AP lost its Home Depot business, as well as AP's customer promotions such as price concessions and certain cost sharing with customers. [Nichols Decl. ¶¶ 5, 7]  Guerra testified he received these materials for his bi-weekly and monthly calls with AP's marketing team, which included sales opportunities, customer promotional activity, and product release dates. [Guerra Dep. Vol. III at 551-552]  AP's Disclosure now seeks to recoup its promotional customer price concessions as "damages" against Defendants. Even Guerra acknowledges that these documents "would highlight [AP's] efforts to grow [its] business" after losing Home Depot's business. [*Id.* at 552-53]  As such, Choi states these requested materials are "important in evaluating" AP's alleged damages. [Choi Decl. ¶¶ 9-11]  But AP refuses to produce them.  [Pierson Decl. ¶ 17(c)]

> **FMT's 3rd RFP 6**:  **Reports provided to Guerra on any weekly, monthly, or other periodic basis from the operating team, including the sales and operational planning reports ("S&OP Reports"), described by Guerra in his deposition.**
>
> **FMT's 3rd RFP 8**:  **Weekly and/or monthly sales and operation reports prepared by Mark Ward for AP and its affiliates.  [Likely more detailed than the summary S&OP Reports provided to Guerra.]**

Guerra testified that he regularly received these weekly and monthly S&OP Reports prepared by Mark Ward and AP's operations team, which analyze AP's actual production compared to (i) full capacity at each of AP's facilities and (ii) the volume of customer orders. [Guerra Dep. Vol. III at 553-557, 560.] [Nichols Decl. ¶ 8.]  Even before AP lost Home Depot's business, [REDACTED]

11

[REDACTED]          [Nichols Decl. ¶ 8.]  The S&OP Reports are important for evaluating causation and AP's alleged damages, [Choi Decl. ¶¶ 14-16], and will show that AP was not a lost volume seller in view of its capacity limits and that AP was able to generate new business from other customers only because Home Depot stopped ordering storage totes from AP, which freed up production capacity for AP. Guerra conceded this at his deposition, saying that the S&OP Reports and the other daily update reports that he regularly received would show the loss of Home Depot business and "would highlight our growth [of] other accounts." [Guerra Dep. Vol. III at 553-557.]  But, again, AP refuses to produce these documents.  [Pierson Decl. ¶ 17(d)]

**FMT's 3rd RFP 7**:  **Monthly open employment position reports prepared by Suzanne Reiker for Plaintiff and its Affiliates.**

In AP's Supplemental Disclosure, AP claims as damages the "costs of employee retention, replacement and training," presumably resulting from the loss of AP employees who preferred to work for FMT.  The requested open employment position reports were regularly circulated by AP's Suzanne Reiker and show AP's job openings and whether those positions were filled by internal promotions or through an outside recruiter. [Nichols Decl. ¶ 9.]  As Dr. Choi states, these reports are important to evaluate AP's claimed damages, [Choi Decl. ¶ 18-19], particularly because internal promotions to fill job opening are less expensive and require less training than filling positions with new personnel through an outside recruiter for a commission. [Nichols Decl. ¶ 9.] But AP refuses to produce these documents.  [Pierson Decl. ¶ 17(e)]

**FMT's 3rd RFP 9**:  **Reports provided to Guerra on a weekly, monthly, or other periodic basis that detail all or any of the following:  sales, production, inventory, resin, labor, OEE (overall equipment effectiveness), and/or utilization.**

**FMT's 3rd RFP 13**:  **Monthly and annual Power BI Reports, including without limitation, the sales, PSV, and OEE components, for Plaintiff and its Affiliates.**

Request Nos. 9 and 13 seek production of additional relevant reports to the extent not covered by FMT's other document requests, including reports that were regularly provided to AP's

12

President, Guerra, and reports generated from AP's database called Power B.I.[5]  These are relevant to AP's claimed damages for all of the same reasons: sales to Home Depot and other customers, strategies for dealing with the loss of Home Depot business, AP's production capacity and utilization of its manufacturing equipment at each facility, resin prices, and labor issues – particularly with the loss of employees alleged in AP's Complaint. The requested reports also concern AP's inventory, which is relevant to its claimed damages of "unsold inventory manufactured for The Home Depot."[6]  Dr. Choi states that all of these reports are important for his damages analysis, [Choi Decl. ¶¶ 20, 24-25], but AP refuses to produce them.

> **FMT's 3rd RFPs 10, 11: (a) CapEx reports; (b) capital planning/expense reports; and (c) monthly profit and loss statements for each manufacturing and/or distribution facility of Plaintiff and its Affiliates and Plaintiff and Its Affiliates themselves, including all components and tabs of such statements (i.e., the financial work book).**

According to its Supplemental Disclosure, AP claims as damages "capital expenditures for servicing The Home Depot." Accordingly, AP's reports, budgets and proposals for its capital expenditures (collectively, "CapEx Reports"), relating to Home Depot are unquestionably relevant to AP's claimed damages. [Choi Decl. ¶ 21] [Nichols Decl. ¶ 10]   AP's other requested CapEx Reports are also relevant because, as one of its former executives explains, [REDACTED]

[Nichols Decl. ¶ 10.]  But AP refuses to produce them.  [Pierson Decl. ¶ 17(g)]

FMT's 3rd RFP 10 also seeks production of AP's monthly profit and loss statements for *each* AP facility, including the two facilities that produced products for Home Depot.  AP refuses

---

[5]      Defendants reserve the right to seek access to AP's Power B.I. database inasmuch as AP [REDACTED]                                                         [Stevens Dep. at 259-260 and Dep. Ex. 517a.]

[6]      AP's counsel now claims that this damage category in its Supplemental Disclosure is a mistake, [Pierson Decl. Ex. 8-I], but AP refuses to modify its damages disclosure.

to produce these facility-specific monthly statements, and the consolidated financial statements that AP has produced do not show the facility-specific financial information that is necessary to assess AP's claimed damages. [Choi Decl. ¶ 22] [Nichols Decl. ¶ 11]

> **FMT's 3rd RFP 12**:  **Documents provided by Guerra, including those documents submitted on any weekly, monthly, or other periodic basis, to Jeff Green and/or Cole Anderson regarding the financial and/or operational performance of Plaintiff, its Affiliates, and/or any of its business units, pricing information, facilities, products, customer relationship (including prospects) and/or other employees.**

These requested documents are narrowly tailored and extremely important, as Jeff Green is the ultimate person in charge of AP, and Cole Anderson is [REDACTED] [Anderson Dep. at 27-28] [Guerra Dep. Vol. 1 at 42]  But AP won't come clean on whether it has produced all of these requested documents.  AP's initial response to RFP 12 stated that AP "presently intends to refrain from producing additional documents responsive to this Request."  In view of that response, FMT's counsel asked AP's counsel to disclose whether AP had produced all responsive materials. However, AP's supplemental response served January 2, 2026 was just as elusive, stating that AP produced the monthly financial reporting packages and Executive Commentaries that Guerra had made available to Green and Anderson, *but not disclosing whether AP has additional responsive documents that it was withholding*.  If AP does, Dr. Choi states that those documents would be important for his damages analysis. [Choi Decl. ¶ 23]

> **FMT's 3rd RFP 14**:  **Documents relating to AP's efforts to mitigate any damages allegedly caused by any act or omission of any Defendants, including any planning documents identifying Plaintiff's strategy, approach, game plan, efforts, or thoughts for mitigating damages.**

This request, on its face, seeks critically relevant documents concerning AP's efforts to mitigate its alleged damages – including the planning documents identifying AP's strategy and approach for mitigating damages and the key communications among AP's top executives

14

concerning its alleged damages and mitigation efforts. [Choi Decl. ¶ 9] AP's steadfast refusal to produce these documents or propose any search parameters is baseless.

**FMT's 4th RFPs 2 - 6: Cost justification worksheets provided to Home Depot and Lowe's and the emails or other communication that accompanied the submission of the cost justification worksheets, as well as price quotes and other communications with AP's customers Home Depot stating or explaining price increases or decreases for products sold to Home Depot.**

AP claims in its Supplemental Disclosure that it was damaged by "cost concessions to retain other customers targeted by or on behalf of FMT." FMT's 4th RFPs 2 – 6 are all directed at these alleged cost/price concessions as well as AP's alleged lost profits from losing Home Depot's business since [REDACTED]

AP regularly circulated the requested cost-related worksheets, price quotes, and price-related communications with its customers. [Nichols Decl. ¶¶ 12-13] FMT maintains that the requested AP documents will show that AP's price concessions for its customers were unrelated to Defendants' alleged conduct but, instead, resulted from falling resin prices and increased competition from other competitors. In fact, AP's CFO admits that [REDACTED] [Baumgartner Dep. at 22-26] Dr. Choi also attests that these requested cost-related documents are important and necessary for his damages analysis. [Choi Decl. ¶ 26-31] But AP nevertheless refuses to produce them. [Pierson Decl. ¶ 17(i)]

In sum, FMT's 3rd and 4th RFPs are specifically tailored to seek documents that are not only materially relevant, but necessary to assess and test AP's claimed damages of $200 million and any mitigation of those purported damages.

**Hummel's 2nd RFPs 1, 2: All documents AP sent to, and/or received from, Hummel – via email account ehummel@amplastics.com or otherwise – from December 29, 2023, through April 12, 2024.**

15

In view of AP's claims of computer fraud and abuse and trade secret misappropriation against Hummel, these two document requests seek materially relevant information as to both liability and *AP's claimed damages* against Hummel.  The materials that AP willingly provided to Hummel are central to AP's claims and whether (and to what extent) AP was supposedly damaged by its voluntary disclosure of them to Hummel.

AP asserts two objections to Hummel's requests, and both are baseless.  First, AP asserts undue burden and says Request No. 1 would likely yield an "inordinate" amount of documents.  However, since AP cut off Hummel's email access on February 22, 2024, these Requests seek documents only for a short, 7½-week period.  That is not undue burden where AP seeks over $200 million in damages. And, AP has failed to identify the number of documents it refuses to produce.

AP's other objection is that the requested documents are in Hummel's possession and control.  However, that is simply false.  As AP is fully aware, Hummel no longer has access to AP's email system or the materials that AP sent to his AP email account.

Withholding this information from Hummel materially prejudices his ability to defend against AP's claims and the astronomic damages it seeks to recover.

**B.      Plaintiff's Objections Of Undue Burden And Disproportionality Are Unsupported And Lack Any Merit.**

Where, as here, the movant demonstrates the relevance of the requested discovery, "the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *White v. City of Cleveland*, 417 F.Supp.3d 896, 902 (N.D. Ohio 2019) (internal citations omitted).  "The mere statement by a party that . . . [a] request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection." *In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399, 410-11 (N.D. Ohio 2011). "The opposing party must … show that the burden is undue or disproportionate to the needs of the case.  Factors that

16

influence this balance include the importance of the issues at stake, the amount in controversy, the parties' access to relevant information, and the parties' resources." *Am. Consol. Indus., Inc. v. Blasingim*, 2021 WL 4204936, \*4 (N.D. Ohio Feb. 24, 2021). "At the very least, where a party claims burdensomeness, … [i]t should also propose alternatives, if such might be possible, that could enable some degree of production." *In re Heparin*, 273 F.R.D. at 410-11.

Here, despite the clear relevance of the documents sought by Defendants and the fact that AP is claiming damages of an astounding $200 million, AP nevertheless objects on grounds of overbreadth, undue burden and disproportionality. Yet, AP refuses to provide any factual support for those objections or even to propose any alternatives. When defense counsel asked AP to substantiate its claim of undue burden with information concerning document counts, proposed search terms and custodians, or cost estimates, AP's counsel revealed that AP had not even searched for the documents requested in FMT's 3rd and 4th RFPs at issue. As a result, AP's undue burden and disproportionality objections should be disregarded as a matter of law.

### C. Plaintiff's Consolidated Financial Statements And After-The-Fact Summaries Prepared For Litigation Are Insufficient To Assess And Test Its Claimed Damages.

AP's contention that it has produced sufficient documents to Defendants fails for two fundamental reasons.

First, AP has ***not*** produced the specific damages-related documents that FMT is seeking, such as the BCC Reports, the S&OP Reports, the facility-specific monthly financial reports, and the rest of the identified materials in this Motion. [Pierson Decl. ¶ 17(a) – (i)] [Choi Decl. ¶ 8] FMT would not have gone to the trouble of filing this Motion if AP had done so.

Second, as Dr. Choi attests i  his Declaration, the documents that AP has produced are not sufficient for a reliable calculation or assessment of AP's alleged damages: "[T]hey are largely aggregated, temporally limited or inconsistent, and frequently lack the level of detail required to

17

construct a reliable but-for business trajectory. As a result, they are ***insufficient*** to isolate the effects of the alleged misconduct from broader market factors, to establish causation, and to quantify the effects of mitigation efforts." [Choi Decl. ¶ 8 (emphasis added)]

AP merely has produced consolidated financial statements and mostly after-the-fact data summaries that AP's CFO admitted were prepared for purposes of litigation.[7] [Choi Decl. ¶¶ 8, 11, 17, 19, 22, 25, 27, 31] Such summaries cannot substitute for the actual contemporaneous business records and key communications that FMT is seeking. "[S]ummaries are generally inadmissible evidence unless access is provided to the underlying documents from which the summaries have been prepared." *Kehoe Component Sales, Inc.*, No. 2:08-CV-752, 2010 WL 596501, *4 (S.D. Ohio 2010). "If the evidence rules themselves reflect the lack of trustworthiness of summaries of undisclosed documents, it would seem unwarranted to prevent a party-opponent in litigation from discovering the same type of information in order to verify that the summaries are accurate." *Id.*

*Accord*: *Electric Furnace Co. v. Fire Ass'n of Philadelphia*, 10 F.R.D. 152, 153 (N.D. Ohio 1950) (ordering production of underlying reports for which defendant had provided summaries and explaining that "[s]ince the reports … do contain information relevant to plaintiff's claim, it would seem that plaintiff ought not to be made to rely on defendant's interpretation of the reports but should be given an opportunity to view the reports in their entirety"); *Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.,* No. 3:16-CV-00024-CHB, 2021 WL 1062553, *21 (W.D. Ky. Mar. 19, 2021) (ordering plaintiff that sought to recover lost profits for trade secret misappropriation to produce, in addition to its financial statements, the "source financial records" and information, not just "after the fact compilations made for the purpose of this lawsuit").

---

[7]     AP's CFO also conceded that [REDACTED]

Because AP has placed squarely at issue the documents that Defendants are seeking, AP should be compelled to produce the requested damages-related discovery. *Dominium Liquid Techs., LLC v. GT Beverage Co., LLC*, No. 1:11-CV-444, 2013 WL 2181710, \*3 (S.D. Ohio May 20, 2013) (compelling production of documents from party that "put its lost profits at issue and the documents requested by [movant] are within the scope of relevant discovery").

**D.      Defendants Should Be Awarded Their Fees And Expenses Incurred In Bringing This Motion.**

Under Fed. R. Civ. P. 37(a)(5), in the event the Court grants this motion to compel, "the court must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." *Farnhurst, LLC v. City of Macedonia*, No. 5:13-CV-668, 2015 WL 7185498, \*4 (N.D. Ohio Nov. 13, 2015) (internal quotation marks omitted). Accordingly, Defendants request an award of their fees and expenses incurred in bringing this motion as AP's refusal to produce the materially relevant discovery requested by Defendants was not substantially justified.  AP is seeking $200 million of damages and should not be rewarded for trying to hide the most critical documents that likely refute its alleged damages.

**IV.      Conclusion**

For these reasons, Defendants respectfully request the Court to compel Plaintiff American Plastics, LLC to produce the documents that are responsive to FMT's 3rd RFP Nos. 2 – 14, FMT's 4th RFP Nos. 1 – 6, and Hummel's 2nd RFP Nos. 1 and 2, and to award Defendants their reasonable fees and expenses.

Respectfully submitted,

/s/ Stuart G. Parsell
MARION H. LITTLE JR. (0042679)
STUART G. PARSELL (0063510)
ZEIGER, TIGGES, & LITTLE LLP
8000 Walton Parkway, Suite 260
New Albany, Ohio 43054
Phone: (614) 365-9900
Fax: (614) 365-7900
little@litohio.com
parsell@litohio.com

Attorneys for Defendants
Findlay Machine & Tool Inc. and
Kreate Extrusion LLC

GORDON REES SCULLY MANSUKHANI, LLP
Roland J. De Monte (0081129)
Sarah E. Katz (0096863)
Y. Timothy Chai (0092202)
Key Tower
127 Public Square, Suite 5130
Cleveland, OH 44114
Phone: (330) 283-5537
Fax: (216) 539-0026
rdemonte@grsm.com
skatz@grsm.com
tchai@grsm.com

EASTMAN & SMITH LTD.
Jared J. Lefevre (0085931)
Nicholas W. Bartlett (0100990)
One SeaGate, 27th Floor
P.O. Box 10032
Toledo, Ohio 43699-0032
Phone: (419) 241-6000
Fax: (419) 247-1777
jjlefevre@eastmansmith.com
nwbartlett@eastmansmith.com

POLSINELLI PC
Todd H. Bartels (MO #45677)*
Emma R. Schuering (MO #65169)*
Ross T. Weimer (MO #69421)*
900 W. 48th Place, Suite 900
Kansas City, MO  64112

20

Phone: (816) 753-1000
Fax: (816) 753-1536
tbartels@polsinelli.com
eschuering@polsinelli.com
rweimer@polsinelli.com

Attorneys for Defendants Eric Hummel,
Findlay Machine & Tool LLC. and
Kreate Extrusion LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a redacted copy of the foregoing Motion to Compel

was filed electronically with the Clerk of Court using the CM/ECF system this 30th day of January,

2026, which will send notification of such filing to all attorneys of record, and that an unredacted

copy of the foregoing Motion to Compel was served via electronic mail this 30th day of January,

2026, upon all counsel of record.

/s/ Stuart G. Parsell
Stuart G. Parsell  (0063510)

1422-001:1076250

21