**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| AMERICAN PLASTICS, LLC, | CASE NO. 3:24-cv-00660 |
| Plaintiff, | |
| vs. | Hon. James R. Knepp, II |
| ERIC HUMMEL, et al., | CIVIL ACTION |
| Defendants. | |

**PLAINTIFF AMERICAN PLASTICS, LLC'S OPPOSITION TO DEFENDANTS'
MOTION TO MODIFY AND CLARIFY THE PROTECTIVE ORDER**

Plaintiff American Plastics, LLC ("Plaintiff" or "AP") respectfully submits this Opposition to the Motion to Modify and Clarify the Protective Order (ECF 68, the "Motion" or "Mot.") filed by Defendants Findlay Machine & Tool, LLC ("FMT") and Eric Hummel ("Hummel," and together with FMT, "Defendants").

**TABLE OF CONTENTS**

**Page(s)**

SUMMARY OF ARGUMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 2

I.     Factual Background ................................................................................................ 2

II.    Procedural Background ........................................................................................... 4

III.   The Proposed Modifications Would Dismantle The Coordinated Framework, Impacting Not Only This Case, But Also The Related Actions ........................................ 5

ARGUMENT ........................................................................................................................ 6

I.     Defendants Cannot Meet Their Heavy Burden to Modify a Stipulated Order ................... 6

II.    Defendants Have Not Demonstrated Good Cause to Modify the Protective Order ........... 7

    A.  Competition Defeats—Rather Than Supports—Modification .......................................... 7

    B.  The Parties' Course of Conduct Confirms That They Routinely Shared Productions Across the Related Actions ........................................................................................... 9

III.   The Proposed Amendment Would Usurp the Authority of Other Tribunals .................... 11

IV.   Mr. Zucker Is Outside Litigation Counsel, Not a Competitive Decisionmaker .............. 13

CONCLUSION .................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Allergan, Inc. v. Revance Therapeutics, Inc.*,
   No. 3:23-cv-00431, 2024 WL 6465043 (M.D. Tenn. Sept. 20, 2024) ..................................... 14

*Allergan, Inc. v. Revance Therapeutics, Inc.*,
   No. 3:23-CV-00431, 2025 WL 2188842 (M.D. Tenn. Mar. 25, 2025) .............................. 6, 7, 8

*AT&T Corp. v. Sprint Corp.*,
   407 F.3d 560 (2d Cir. 2005)........................................................................................ 10

*Basic Research, LLC v. Bdirect*,
   2008 WL 11513365 (D. Utah Sept. 22, 2008)............................................................. 8

*Bertetto v. Eon Labs, Inc.*,
   2008 WL 2522571 (D.N.M. May 29, 2008) ............................................................... 10

*Best Process Sols., Inc. v. Blue Phoenix Inashco USA, Inc.*,
   No. 1:21-CV-0662, 2023 WL 7323327 (N.D. Ohio Nov. 7, 2023)........................... 7, 8

*Bisig v. Time Warner Cable, Inc.*,
   940 F.3d 205 (6th Cir. 2019) ..................................................................................... 13

*Browne v. Equifax Info. Servs. LLC*,
   2025 WL 750311 (N.D. Ind. Mar. 10, 2025)............................................................. 10

*Cheryl & Co. v. Krueger*,
   No. 2:18-CV-1485, 2019 WL 3334329 (S.D. Ohio July 25, 2019)........................... 13

*Children's Legal Services PLLC v. Kresch*,
   No. 07-CV-10255, 2007 WL 4098203 (E.D. Mich. Nov. 16, 2007)............................ 6, 8, 9, 11

*Datatrak Int'l, Inc. v. Medidata Sols., Inc.*,
   2011 WL 3652444 (N.D. Ohio Aug. 19, 2011)........................................................... 14

*Dodona I, LLC v. Goldman, Sachs & Co.*,
   119 F. Supp. 3d 152 (S.D.N.Y. 2015)......................................................................... 10

*Doe v. Byrd,*
   2019 WL 13546234 (M.D. Tenn. Dec. 17, 2019)....................................................... 10

*DSM Desotech, Inc. v. Momentive Specialty Chemicals, Inc.*,
   2016 WL 8193590 (S.D. Ohio May 31, 2016) ...................................................... 14, 15

**Cases**

*Ecolab Inc. v. IBA Inc.*,
    2024 WL 3650464 (D. Minn. May 19, 2024)........................................................................ 14

*Gray v. First Century Bank*,
    No. 3:04CV591, 2007 WL 3020511 (E.D. Tenn. Oct. 11, 2007)...................................... 7, 12

*Home Fed. Bank of Tennessee v. Home Fed. Bank Corp.*,
    No. 3:18-CV-00379, 2020 WL 3568316 (E.D. Tenn. July 1, 2020) ...................................... 14

*Howe v. City of Akron*,
    801 F.3d 718 (6th Cir. 2015) ................................................................................................ 13

*In re Stewart Title Co.*,
    2009 WL 1708079 (S.D. Tex. June 17, 2009) ....................................................................... 13

*In re Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig.*,
    664 F.2d 114 (6th Cir. 1981) ............................................................................................... 6, 7

*In re Vitamins Antitrust Litig.*,
    267 F. Supp. 2d 738 (S.D. Ohio 2003) .................................................................................. 12

*Jansan v. Reinhart*,
    C.A. No. 2024-0334-LWW (Del. Ch.) .......................................................................... 3, 5, 11

*Mannington Mills, Inc. v. Armstrong World Indus., Inc.*,
    206 F.R.D. 525 (D. Del. 2002) .............................................................................................. 12

*Marinac v. Todd*,
    No. 1:20-CV-1571, 2021 WL 12320945 (N.D. Ohio Nov. 30, 2021).................................... 15

*Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*,
    294 F.R.D. 87 (S.D. Ohio 2013) .............................................................................................. 7

*Mikron Industries, Inc. v. Tomkins Industries, Inc.*,
    173 F.3d 1310 (Fed. Cir. 1998).............................................................................................. 8

*Mine Safety Appliances Co. v. North River Ins. Co.*,
    2016 WL 8221566 (W.D. Pa. Sept. 29, 2016)....................................................................... 10

*Natera, Inc. v. CareDx, Inc.*,
    2023 WL 3763808 (N.D. Cal. May 31, 2023) ....................................................................... 12

*Obergefell v. Firelands Reg'l Med. Ctr.*,
    No. 3:20-CV-2579, 2023 WL 5893159 (N.D. Ohio Sept. 11, 2023).................................. 6, 11

## Cases

*Terves, LLC v. Yueyang Aerospace New Materials Co.*,
  No. 1:19-CV-1611, 2023 WL 2024895 (N.D. Ohio Feb. 15, 2023)..................................... 6, 11

*U.S. Steel Corp. v. United States*,
  730 F.2d 1465 (Fed. Cir. 1984)........................................................................... 14, 15

*Worldwide Distribution, LLLP v. Everlotus Indus. Corp*,
  2017 WL 553305 (N.D. Ohio Feb. 10, 2017) (Mot. at 11 n.2).................................................... 9

*Xoran Holdings, LLC v. Luick*,
  No. 16-13703, 2019 WL 13029920 (E.D. Mich. May 19, 2019) ................................................ 9

## Rules

Fed. R. Civ. P. 26(b)(1)............................................................................................... 12

Fed. R. Civ. P. 26(e) ................................................................................................... 13

## ISSUES PRESENTED

1. Whether competition between the parties constitutes "good cause" to modify a stipulated Protective Order when the parties have operated under the existing Protective Order throughout discovery and Plaintiff has *already* produced *substantial* confidential financial information to its direct competitor FMT—and reproduced that information across all Related Actions at Defendants' demand.[1] Answer: No.

2. Whether the Court should adopt an amendment that would effectively usurp the authority of other tribunals by dictating the scope of discovery in proceedings this Court does not supervise. Answer: No.

3. Whether Mr. Zucker—AP's outside litigation counsel—should be excluded from receiving Defendants' Highly Confidential Information. Answer: No.

## SUMMARY OF ARGUMENT

Defendants' Motion is a transparent delay tactic, filed the moment their own discovery obligations came due. Having benefited from shared discovery for over a year—receiving AP's highly confidential financial records across multiple proceedings without complaint—Defendants now seek to rewrite the rules when it is their turn to produce. The timing is not coincidental; it is the strategy. Defendants have conditioned the production of their financial documents on this Court's adoption of their proposed modifications, effectively holding their discovery obligations hostage to a motion that asks the Court to do three things it should not do:

*First*, Defendants ask this Court to tear up a Protective Order the parties negotiated and operated under throughout discovery—on the theory that commercial competition, a fact known since the inception of the case (and common in litigation), suddenly constitutes "good cause." It does not. AP has already produced substantial confidential financial information to its direct competitor, FMT, under the existing Protective Order, and reproduced it across six Related Actions. The Protective Order need not be rewritten simply because Defendants' production obligations have come due.

---

[1] Capitalized terms not defined herein have the meanings assigned in Plaintiff's prior filings in this Action.

*Second*, Defendants ask the Court to dictate the scope of discovery in proceedings pending before other courts and arbitrators—none of which has requested or endorsed such intervention. The Related Actions are governed by separate protective orders issued by separate tribunals, each retaining authority over its own discovery. This Court should not exercise dominion over proceedings it does not supervise, particularly as a precondition to Defendants' compliance with their own production obligations in *this* case.

*Third*, Defendants seek to strip AP's coordinating litigation counsel, Mr. Zucker, of access to Highly Confidential information based on nothing more than his title and his involvement in the Related Actions. In support, Defendants rely on cases that all involve in-house counsel embedded in competitive business operations – which Mr. Zucker is not. Mr. Zucker is outside litigation counsel. The distinction is dispositive.

The existing Protective Order already imposes robust, two-tier confidentiality protections. Defendants identify no breach, no improper or additional dissemination, and no deficiency—only an impending obligation to produce their own financial records and a desire to avoid or further delay it. The Court should deny the request to modify the stipulated Protective Order.

## BACKGROUND

### I.  Factual Background

This action is one of six Related Actions arising from a coordinated scheme of serial restrictive-covenant violations orchestrated by the same core group of defendants across multiple venues. In 2018, Jansan Acquisition, LLC ("**Jansan**"), AP's parent company, acquired Nick Reinhart's 100% ownership interest in Creative Plastic Concepts, LLC for approximately $49 million in cash plus a minority equity stake. In exchange, Reinhart agreed to refrain from (a) competing with AP and its subsidiaries (the "**AP Group**"), (b) using confidential information except as permitted, and (c) soliciting AP's customers and employees. In 2022, Reinhart sold his

remaining minority equity for an additional $39 million under a Buyout Agreement imposing additional restrictive covenants. Reinhart and AP parted ways in February 2023.

Within one month, Reinhart began breaching his covenants. Acting directly and through FMT employees, he solicited Lowe's, Walmart, Sam's Club, and The Home Depot ("**THD**")—all longstanding AP customers—and ultimately diverted the THD business entirely.[2] Reinhart hired twenty-six AP employees – to service the same THD storage product business they serviced at AP. In March 2024, Jansan sued Reinhart in the Delaware Court of Chancery for breach of restrictive covenants. *See Jansan v. Reinhart*, C.A. No. 2024-0334-LWW (Del. Ch.) (the "**Delaware Action**"). In addition, the following Related Actions were commenced:

- On April 3, 2024, AP sued its former Chief Business Officer who breached his noncompete – joining Reinhart three days before AP was terminated by THD in favor of FMT (the "**Nichols Arbitration**");

- On April 12, 2024, AP sued FMT for enabling the violation of Reinhart's restrictive covenants and Hummel for exfiltrating trade secrets and confidential information for Reinhart's and FMT's benefit (this Action);

- On June 6, 2024, AP initiated injunction litigation against Integrated Sales Solutions, II ("**ISS**")—AP's former sales agent to THD who switched sides shortly after FMT obtained the THD business in violation of ISS's non-compete obligations. On August 9, 2024, AP commenced an arbitration against ISS (the "**ISS Arbitration**");

- On August 23, 2024, AP sued THD for breach of contract and fraud in connection with its relationship with AP and FMT, respectively (the "**Georgia Action**").

---

[2] While Reinhart did not divert Lowe's, he quoted lower prices, ultimately forcing AP to extend price concessions to retain the account.

Mr. Zucker, AP Group's outside litigation counsel, has been involved in all Related Actions and serves as lead counsel in the Georgia Action. The same attorneys represent parties on both sides across proceedings: Polsinelli and GRSM represent defendants in the Delaware and Ohio Actions, and Nichols Arbitration; MMWR represents plaintiffs in the Delaware and Ohio Actions, and ISS and Nichols Arbitrations. The same damages expert (Vranca) and rebuttal expert (Choi) have served reports in the Georgia and Delaware Actions. Vranca also has served expert reports in the ISS and Nichols Arbitrations. In other words, the players in the Related Actions are substantially the same and, by stipulation, have shared discovery across the Related Actions. Consequently, there is no risk of further dissemination of FMT's information outside the law firms and experts already involved in the Related Actions.

## II.      Procedural Background

Discovery in the Related Actions initially proceeded on separate tracks, with independent document requests and productions in each proceeding. As the cases progressed, the central actors proved to be the same—the AP Group, Reinhart, FMT (including Hummel and Nichols), THD, and ISS—and discovery in any one case necessarily informed all others.

In March 2025, Mr. Zucker inquired about certain documents produced in Delaware but not in Georgia. Reinhart's Delaware counsel responded by filing a motion for contempt and sanctions in May, alleging the inquiry violated the Delaware protective order.

While that motion was pending, all twelve parties across the Related Actions recognized the need for coordination. In June 2025, they entered into a Stipulation Concerning Coordinated Discovery and Depositions Across Related Cases (**Exhibit A**, the "Coordinated Discovery Stipulation"), agreeing to coordinate depositions and permit cross-case use of deposition exhibits. The stipulation was adopted in each Related Action and converted into agreed protective orders— including in this Court (the "**Protective Order**" or "**PO**," ECF 42).

In September 2025, the Delaware Court of Chancery—contrary to Defendants' misleading assertions (*see* Mot. at 2-3)—*denied* the contempt motion, characterizing the cross-case inquiry as a merely "technical violation" that was not a "meaningful one." *Jansan v. Reinhart*, C.A. No. 2024-0334-LWW (Del. Ch.), Dkt. No. 277; Dkt. No. 281 at 26:22-24.

Discovery continued to proceed on a coordinated basis. AP reproduced its documents across the Related Actions on multiple occasions[3] (**Exhibit B**).[4] Counsel for THD reproduced Georgia documents in the Related Actions. Defendants adopted the same approach: for example, on September 4, 2025 GRSM counsel Michael Heyden (counsel in the Delaware Action) transmitted a 9,445-document production expressly for use in the Georgia, Delaware, and Ohio actions (**Exhibit C**).

### III.    The Proposed Modifications Would Dismantle The Coordinated Framework, Impacting Not Only This Case, But Also The Related Actions

The proposed amendment (redline attached as **Exhibit D**) would make five categories of substantive changes that unilaterally dismantle the coordinated discovery framework:

- Temporal bifurcation: Documents produced *before* the amendment remain under the original Protective Order; documents produced *after* fall under a new, more restrictive regime (**Exhibit D** ¶ 1).

- Use restriction: Post-amendment Confidential and Highly Confidential materials are restricted to "this action"—eliminating cross-case use and deleting all Coordinated Discovery Stipulation references (*id.* ¶¶ 5, 6(a), 7(a)).

---

[3]  AP did not reproduce documents *received* from other parties—those were not AP's documents. Instead, AP reproduced *all* of its own productions across the Related Actions – at the demand of Defendants, including FMT here.

[4]  Exhibit B contains representative examples of transmittal emails whereby AP and other parties shared discovery across the Related Actions. For brevity, Plaintiff is not including all such emails – but it can furnish additional support for this fundamental point should the Court require it.

- Exclusion of in-house/general counsel: The definition of "Counsel" is narrowed to "outside counsel" only, removing in-house counsel, agents, and any attorney not working exclusively on "this action"—thereby excluding Mr. Zucker (*id.* ¶¶ 6(b)(1), 7(b)(1)).

- Restriction of all recipients: Witnesses, experts, and mediators are confined to "this action" only, barring any post-amendment document sharing with anyone in the Related Actions (*id.* ¶¶ 6(b)(3), (5)-(6), 7(b)(3)-(4)).

- Nullification of Exhibit B: Exhibit B, which currently authorizes use of materials in the Related Actions, is recharacterized as a list of captions with no operative function – nullifying the entire paradigm under which the parties have been operating throughout discovery. (*Id.*, Ex. B).

## ARGUMENT

### I.    Defendants Cannot Meet Their Heavy Burden to Modify a Stipulated Order

Competition is not good cause to modify a protective order in a trade-secrets case between direct competitors. *See Allergan, Inc. v. Revance Therapeutics, Inc.*, No. 3:23-CV-00431, 2025 WL 2188842 (M.D. Tenn. Mar. 25, 2025). District courts modify protective orders only "when circumstances so dictate," *In re Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig.*, 664 F.2d 114, 118 (6th Cir. 1981), and the movant "bears the burden of establishing good cause." *Terves, LLC v. Yueyang Aerospace New Materials Co.*, No. 1:19-CV-1611, 2023 WL 2024895 (N.D. Ohio Feb. 15, 2023). That burden is "especially high where the parties stipulated to the protective order." *Obergefell v. Firelands Reg'l Med. Ctr.*, No. 3:20-CV-2579, 2023 WL 5893159, at *2 (N.D. Ohio Sept. 11, 2023); *Children's Legal Services PLLC v. Kresch*, No. 07-CV-10255, 2007 WL 4098203 (E.D. Mich. Nov. 16, 2007); *Terves,* 2023 WL 2024895, at *1 (courts consider "whether the parties agreed to the original order, and whether the issue triggering the request for modification was foreseeable at the time the original order was drafted and adopted").

That caution is heightened where modification would affect proceedings in another

jurisdiction. *See Upjohn*, 664 F.2d at 117–18 (recognizing "comity" principles and affirming order that left protection of discovery materials to courts presiding over related actions); *Gray v. First Century Bank*, No. 3:04CV591, 2007 WL 3020511, at *1 (E.D. Tenn. Oct. 11, 2007) (declining to rule on admissibility of evidence pending before another court and permitting parties to retain discovery rather than waste resources re-discovering the same materials).

## II.      Defendants Have Not Demonstrated Good Cause to Modify the Protective Order

The existing PO already serves its purpose: robust two-tier confidentiality protections restricting disclosure to enumerated recipients. Defendants identify no deficiency and no risk of further or improper dissemination. A protective order need not be rewritten simply because a party's own production obligations have come due. *See Allergan,* 2025 WL 2188842, at *8 (emphasizing importance of reciprocal discovery in trade-secrets case between direct competitors).

Defendants' claimed urgency rests on speculation that AP will violate the existing PO. Speculation is not good cause. Courts in this District have rejected requests to tighten a protective order where the movant "assume[d] that the parties will violate the Protective Order" because "there is no basis to presume such a violation will occur" when the existing order "provides the necessary safeguards." *Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, 294 F.R.D. 87, 97 (S.D. Ohio 2013). If Defendants believe AP will violate the Order, they can seek a remedy— not a preemptive rewrite of a stipulated order that has governed the parties throughout discovery. *See Best Process Sols., Inc. v. Blue Phoenix Inashco USA, Inc.*, No. 1:21-CV-0662, 2023 WL 7323327, at *4 (N.D. Ohio Nov. 7, 2023).

Defendants advance two bases for modification: (1) competition (Mot. at 10), and (2) closure of discovery in the Related Actions (Mot. at 11). Neither withstands scrutiny.

### A.      Competition Defeats—Rather Than Supports—Modification

The parties are competitors—but that was equally true when AP produced documents

under the same PO. AP disclosed Highly Confidential financial records to Defendants – despite credibly alleging they took its largest customer and many of its employees. Defendants—the alleged wrongdoers—now claim their information requires extra protection. The Court should not rewrite a stipulated order mid-stream to impose an asymmetric regime protecting only one side's competitive interests. *See Allergan,* 2025 WL 2188842, at *8 ("[w]hat is good for the goose is good for the gander"); *Children's Legal* Services, 2007 WL 4098203, at *2 (the parties "fairly agreed to the protective order, apparently through negotiations by their sophisticated and well informed counsel…. The court refuses to endorse [the] tactic of inducing broad disclosure under a set of ground rules and of then avoiding any limitations on itself by asking the court to come in and change those rules.").

Defendants conveniently overlook that *their* motion to compel Plaintiff's current, Highly Confidential financial records is pending (ECF 51), even as they contend competitor status warrants heightened protection for their own information. The cases cited by Defendants do not hold that mere competition meets the good cause standard. In *Basic Research, LLC v. Bdirect*, 2008 WL 11513365, at *3 (D. Utah Sept. 22, 2008) (Mot. at 11), three *third parties* objected to sharing information with a competitor's in-house counsel. Here, no third parties have objected. Plus, the records requested are intended to be provided to and used by litigation counsel and experts uninvolved in competitive business decisions. *See infra*, Section IV. Also distinguishable is *Best Process,* 2023 WL 7323327, at *5-6 (Mot. at 11). That case involved a contempt motion against a party that used confidential discovery to prosecute a patent application—a use entirely outside litigation. *Mikron Industries, Inc. v. Tomkins Industries, Inc.*, 173 F.3d 1310 (Fed. Cir. 1998) (Mot. at 11), involved a party refusing to return confidential materials after settlement – not at issue here.

Defendants' remaining cases involve courts adding Highly Confidential designations to

existing protective orders. *See*, *e.g.*, *Worldwide Distribution, LLLP v. Everlotus Indus. Corp*, 2017 WL 553305, *2–3 (N.D. Ohio Feb. 10, 2017) (Mot. at 11 n.2); *Xoran Holdings, LLC v. Luick*, No. 16-13703, 2019 WL 13029920, at *4–5 (E.D. Mich. May 19, 2019)[5] (Mot. at 10-11). The PO already includes an equivalent Highly Confidential designation.

All of this is insufficient to amend the PO. *See Children's Legal Services*, 2007 WL 4098203 (denying amendment because "Defendants made no showing of any alleged injury that would result from disclosure except to make broad allegations of competitive harm").

**B.      The Parties' Course of Conduct Confirms That They Routinely Shared Productions Across the Related Actions**

The parties' course of conduct throughout discovery further defeats Defendants' position. Defendants cite a *pre-coordination* email (dated October 14, 2025) in which AP noted that the parties "generally have not shared document productions across the Related Actions" (Mot. at 5). But after parties across the Related Actions formalized their cooperation, all parties—including FMT—routinely shared productions. AP produced highly confidential financial records across the Related Actions at Defendants' demand as recently as May 15, 2026. Counsel for Reinhart in the Delaware Action transmitted FMT's 9,445-document production expressly for simultaneous use in Georgia, Delaware, and Ohio (**Exh. C**). Defendants cannot credibly claim prejudice from a practice they themselves championed.

Defendants argue that sharing confidential information should be denied where it circumvents closed discovery in another case (Mot. at 12). But their authorities only involve *nonparty intervenors* seeking access to discovery in cases to which they were strangers. *AT&T*

---

[5] The *Xoran* court modified the protective order *to add an AEO designation* (already existent here) based on actual litigation misconduct not present in this case. The modification was narrowly tailored to address an internal inconsistency and to require AEO designation for a defined subset of documents, not the entire production.

*Corp. v. Sprint Corp.*, 407 F.3d 560 (2d Cir. 2005) (consumer plaintiff sought intervention to access confidential information from unrelated case). *Mine Safety Appliances Co. v. North River Ins. Co.*, 2016 WL 8221566 (W.D. Pa. Sept. 29, 2016) (nonparty sought to use summary judgment submissions to circumvent closed discovery in case involving unrelated transactions). *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152 (S.D.N.Y. 2015) (thirty-four tort plaintiffs, strangers to insurance coverage dispute, sought access to two million pages of "largely irrelevant" documents). *Browne v. Equifax Info. Servs. LLC*, 2025 WL 750311 (N.D. Ind. Mar. 10, 2025) (nonparty sought discovery after it closed in both cases). None involved an existing party and signatory to a stipulated protective order opposing modification of terms it negotiated and under which it had operated throughout discovery.

*Doe v. Byrd,* 2019 WL 13546234, at *1 (M.D. Tenn. Dec. 17, 2019) (Mot. at 11), did not involve a protective order governing confidential business information—the court vacated an anonymity order permitting plaintiff to proceed as "John Doe." *Bertetto v. Eon Labs, Inc.*, 2008 WL 2522571 (D.N.M. May 29, 2008), is equally inapposite: the court struck a provision permitting sharing discovery with unidentified future litigants' counsel without court oversight. *Id.* at *2. Here, the recipients are the parties in the Related Actions who negotiated the Coordinated Discovery Stipulation, each governed by its own protective order and under ongoing judicial supervision. Moreover, FMT's documents would be produced in this Action anyway. Use in a Related Action of documents produced in this action – by the same attorneys and same experts – does not increase dissemination.

Defendants' reliance on the Delaware court's September 2025 ruling as evidence of a "pattern" of noncompliance (Mot. at 6–7) is misplaced. The conduct at issue—a cross-case inquiry by Mr. Zucker—predated the Coordinated Discovery Stipulation, which was negotiated by all

-10-

parties to resolve precisely the question of cross-case use. The Delaware court denied the motion, characterizing the matter as merely "technical" and "not meaningful." Since the Coordinated Discovery Stipulation was adopted, the issues presented in that motion have not materialized – because the Coordinated Discovery Stipulation promoted cooperation and efficiency. These are not "changed circumstances" warranting modification of the stipulated Protective Order here. *See Obergefell*, 2023 WL 5893159, at \*2.

FMT knew when it signed the PO that it is AP's competitor and that the Related Actions would proceed on different discovery tracks. None of this is new or unforeseeable. *See Terves*, 2023 WL 2024895, at \*1; *Children's Legal Services*, 2007 WL 4098203, at \*2.

The request to "clarify" the PO (Mot. at 3, 15) is unnecessary. When the Delaware Court denied sanctions for the use of documents across the Related Actions, it recognized a fundamental fact: "[i]n complex litigation like this, it is quite common for multiple law firms to contribute to a case without every attorney or every firm formally appearing." *See Jansan*, C.A. No. 2024-0334-LWW, Dkt. No. 281 at 25:9-16.[6]

## III.    The Proposed Amendment Would Usurp the Authority of Other Tribunals

Defendants argue that because discovery has closed in the Related Actions, there is no justification for sharing FMT's Highly Confidential Information outside this case (Mot. at 11).

As a threshold matter, this is not a proper basis to refuse to produce the documents in this action – as FMT has done. Defendants' characterization of AP's discovery requests as a "backdoor" attempt to obtain discovery that it "failed to request" in the Related Actions (Mot. at 7–8) misapprehends reality. AP's Third Set of RFPs seeks FMT's financial information because it

---

[6] Defendants' theory that cross-use is restricted to marked exhibits cannot be squared with how these cases have actually proceeded. If that were the rule, parties could—and likely would—mark every document to preserve their ability to use it. The only reason that has not occurred is because all parties have, until now, exchanged information across matters freely.

is directly relevant to damages in *this Action*. That such information may also be relevant elsewhere does not render the requests pretextual—it merely confirms that the data may have application to the damages analysis undertaken by the same expert in the Related Actions. Courts do not deny proper discovery because responsive documents may be useful in other proceedings. *See* Fed. R. Civ. P. 26(b)(1). None of this changes the fact that an amendment to the existing PO would require this Court to dictate the scope of permissible discovery in proceedings over which it has no supervisory authority. Defendants' proposed amendment would bind twelve parties across six proceedings and strip those tribunals of their authority to determine what evidence is admissible or discoverable. This Court should not exercise such dominion, *Gray*, 2007 WL 3020511, at *1, particularly as a precondition to Defendants' compliance with their own production obligations.

Defendants' assertion that FMT is "not a party" in the Related Actions and therefore cannot police its confidential information (Mot. at 13) is unavailing. Each Related Action is governed by its own protective order with similar Highly Confidential protections; FMT's counsel—Polsinelli and GRSM—represent FMT-affiliated parties in those proceedings and can enforce compliance on FMT's behalf. The cases Defendants cite each involved true nonparty strangers whose documents were subpoenaed into litigation in which they had no representation. *See Natera, Inc. v. CareDx, Inc.*, 2023 WL 3763808, at *6 (N.D. Cal. May 31, 2023) (quashing subpoena served on unrepresented stranger in patent case); *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 530–31 (D. Del. 2002) (quashing subpoena to nonparty competitor where court found it "divorced from reality" to expect either party to champion its competitor's confidentiality); *In re Vitamins Antitrust Litig.*, 267 F. Supp. 2d 738, 741–42 (S.D. Ohio 2003) (quashing subpoena to nonparty supplier where defendants were direct competitors and court had "no enforcement power" over the protective order); *In re Stewart Title Co.*, 2009 WL 1708079, at

-12-

*2 (S.D. Tex. June 17, 2009) (quashing subpoena, noting concern of "entrusting the confidentiality of [nonparty] documents to parties who do not represent its interests"). But FMT is not a stranger to the Related Actions – it was subpoenaed in at least the Delaware and Georgia Actions. FMT's counsel of record in this Action are the same counsel representing defendants in the Delaware Action and Nichols Arbitration, ensuring FMT's confidentiality interests are actively monitored in every forum.

Nor is it for this Court to determine whether other fora will permit post-cutoff evidence. That determination belongs to each presiding court. Post-cutoff evidence is admissible in this Circuit under appropriate circumstances: FRCP 26(e) imposes a continuing supplementation obligation that does not expire at the close of discovery. *See Howe v. City of Akron*, 801 F.3d 718, 748–49 (6th Cir. 2015) (reversing exclusion of late-disclosed evidence as "an overreaction and an abuse of discretion"); *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 221–22 (6th Cir. 2019) (reversing exclusion of documents discovered after close of discovery). Defendants' premise that post-cutoff evidence is categorically inadmissible is wrong as a matter of law.

## IV.    Mr. Zucker Is Outside Litigation Counsel, Not a Competitive Decisionmaker

Defendants' demand that Mr. Zucker be excluded from receiving Highly Confidential Information fails at every step. The "competitive decisionmaking" doctrine (Mot. at 14-15) addresses the risk of inadvertent disclosure by individuals embedded in a client's day-to-day business operations—not outside litigation counsel.

Courts apply a two-pronged test: (1) whether the individual is a "competitive decision maker," and (2) whether the risk of disclosure outweighs the opposing party's need for access. *Cheryl & Co. v. Krueger*, No. 2:18-CV-1485, 2019 WL 3334329, at *2–3 (S.D. Ohio July 25, 2019). "Competitive decisionmaking" is "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or

-13-

all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984). The inquiry proceeds "on a counsel-by-counsel basis" and "cannot be determined solely by giving controlling weight to the classification of counsel." *Id.* at 1468.

Defendants cannot satisfy either prong. Mr. Zucker is outside litigation counsel—and has been involved in the Related Actions since the inception. His role is to give litigation advice and litigation coordination across the Related Actions, which courts consistently hold does not constitute competitive decisionmaking. *Allergan, Inc. v. Revance Therapeutics, Inc.*, No. 3:23-cv-00431, 2024 WL 6465043, at *3 (M.D. Tenn. Sept. 20, 2024) ("simply managing litigation is not competitive decision-making"); *Home Fed. Bank of Tennessee v. Home Fed. Bank Corp.*, No. 3:18-CV-00379, 2020 WL 3568316, at *2-3 (E.D. Tenn. July 1, 2020) (denying motion to amend protective order where movant provided no facts demonstrating competitive-decision involvement). Defendants offer nothing beyond Mr. Zucker's name, and that his involvement in the Related Actions "led [them] to believe" he advises and participates in business decisions (Mot. at 14)—precisely the "general assumption" *U.S. Steel* rejected. 730 F.2d at 1468.

Every case Defendants cite involved in-house counsel (which Mr. Zucker is not) directly involved in competitive business operations. In *Ecolab Inc. v. IBA Inc.*, 2024 WL 3650464, at *1 (D. Minn. May 19, 2024) (Mot. at 14), the restricted counsel was in-house. Her knowledge of competitor financials "could influence her when advising [her employer] about whether, when, and who to sue." In *DSM Desotech, Inc. v. Momentive Specialty Chemicals, Inc.*, 2016 WL 8193590, at *7 (S.D. Ohio May 31, 2016) (Mot. at 15), in-house counsel prepared strategic recommendations to business units. In *Datatrak Int'l, Inc. v. Medidata Sols., Inc.*, 2011 WL 3652444, at *2 (N.D. Ohio Aug. 19, 2011) (Mot. at 15), in-house counsel directly advised the CEO

-14-

on corporate development. Mr. Zucker is outside litigation counsel, involved in existing litigation. The distinction is dispositive. And Defendants' reference to the Delaware contempt motion adds nothing—the Delaware court *denied* the motion.

Also, excluding Mr. Zucker would inflict substantial prejudice on AP. He has coordinated the AP Group's litigation strategy across all Related Actions from inception, possesses institutional knowledge spanning six proceedings and dozens of depositions, and serves as lead counsel in the Georgia Action. His ability to serve his client will be prejudiced by treating him differently from all other counsel across the Related Actions – who have access and use the documents produced. Treating one of AP's outside lawyers differently at this stage would create the "extreme and unnecessary hardship" *U.S. Steel* cautioned against. 730 F.2d at 1468.

Excluding Mr. Zucker might also prejudice Defendants. An AEO designation (available under the current PO) "is the most restrictive possible protective order," and its overuse can make it "difficult, and perhaps impossible for an attorney to counsel a client to compromise or even abandon a case on the basis of information kept secret from the client." *Marinac v. Todd*, No. 1:20-CV-1571, 2021 WL 12320945, at *2 (N.D. Ohio Nov. 30, 2021). If both client and lead counsel are excluded from seeing financial information, settlement discussions would halt.[7]

## CONCLUSION

For the foregoing reasons, AP respectfully requests that Defendants' Motion be denied.

**[SIGNATURE PAGE TO FOLLOW]**

---

[7] Defendants' reliance on *DSM Desotech, Inc. v. Momentive Specialty Chemicals, Inc.*, 2016 WL 8193590, at *5 (S.D. Ohio May 31, 2016)—noting that "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so"—is heartening. Plaintiff trusts Defendants will remember this point when we address why Messrs. Reinhart, Nichols, and Hummel could not have walled off the AP trade secrets they misappropriated and inevitably used them for FMT's benefit.

Respectfully submitted,

*/s/ Jonathan H. Krol*

Jonathan H. Krol, Esq. (0088102)
Reminger Co., L.P.A.
200 Public Square, Suite 1200
Cleveland, OH 44114
P: (216) 687-1311; F: (216) 687-1841
*jkrol@reminger.com*

Timothy J. Pastore, Esq.  *
MONTGOMERY McCRACKEN
WALKER & RHOADS LLP
437 Madison Avenue, 24th Floor
New York, NY 10022
Tel: (212) 551-7707
*tpastore@mmwr.com*

R. Montgomery Donaldson, Esq. *
Stefania Rosca, Esq. *
MONTGOMERY McCRACKEN
WALKER & RHOADS LLP
1101 North Market Street, Suite 15
Wilmington, DE 19018
Tel: (302) 504-7840
*rdonaldson@mmwr.com*
*srosca@mmwr.com*

Jacqualyn Gillen, Esq. *
MONTGOMERY McCRACKEN
WALKER & RHOADS LLP
1735 Market Street, 21st Floor
Philadelphia, PA 19103
Tel: (215) 772-7502
*jgillen@mmwr.com*

* Admitted *Pro Hac Vice*

*Attorneys for Plaintiff and Counterclaim*
*Defendant American Plastics*, *LLC*

-16-

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system this 26th day of June 2026, which will send notification of such filing to all attorneys of record.

/s/ *Jonathan H. Krol*
Jonathan H. Krol, Esq.  (0088102)