IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| American Plastics, LLC, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:24-cv-00660 |
| vs. | : | |
| | : | Honorable James R. Knepp, II |
| Eric Hummel, et al., | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO
MODIFY AND CLARIFY THE PROTECTIVE ORDER [ECF 68]**

**I.**     **The Court Should Clarify That The Existing Protective Order Prohibits AP's
Professed Plan To Use FMT's Highly Confidential Documents In Other Actions**

**A.**     **AP Does Not Deny That It Intends To Violate The Plain Terms Of The Existing
Protective Order**

Plaintiff American Plastics, LLC's ("AP's") Opposition (ECF 69) is most telling for what

it does *not* contest than for what it actually says.

AP does *not deny* that it plans to take the Highly Confidential FMT financial documents

that AP's counsel obtains in the instant action and then use FMT's Highly Confidential materials

in other Related Actions in which FMT is not a party.  AP admitted that it intends to do so in its

May 29, 2026 letter to the Court and also during the May 20, 2026 discovery conference: "*If we

came across a financial document today, a new document, we could use it in any of the related

cases despite discovery being closed.*"  [ECF 68-3 at PageID #1492 (emphasis added).]

AP also does *not deny* that its threatened use of FMT's Highly Confidential documents in

the other Related Actions would violate the plain terms of the Court's existing Stipulated Protective

Order (ECF 42).  Paragraphs 6(a) and 7(a) of the Protective Order expressly limit use of discovery

1

in this action "to prepare for and to conduct discovery and trial *in this action*."  [ECF 42 at PageID # 590, 593 (emphasis added).]  And, Paragraph 5 of the Protective Order (and the Stipulation attached as Exhibit C to the Protective Order) expressly permit sharing only of "exhibits marked" during depositions across the Related Actions. [*Id.* at PageID # 590.]  Nothing else.  AP, itself, admits this – by saying that the Stipulation and Protective Order only "permit cross-case use of *deposition exhibits*." [ECF 69, AP's Opposition at PageID # 1623 (emphasis added).]  Thus, contrary to AP's contention, neither the Protective Order nor the Stipulation permits Confidential documents produced in this action that are *not* marked as deposition exhibits to be disclosed or used in any of the Related Actions.

AP's professed plan to violate the plain terms of the Protective Order is especially improper where, as AP acknowledges, "the parties stipulated to the Protective Order." [AP's Opposition at PageID # 1625, quoting *Obergefell v. Firelands Reg'l Med. Ctr.*, No. 3:20-cv-2579, 2023 WL 5893159, at *2 (N.D. Ohio Sept. 11, 2023).]  AP and its parent companies are the ones who chose to bring six separate actions arising from Home Depot's decision to terminate AP as a supplier. Thus, if AP sought to share Highly Confidential discovery from this action across the Related Actions, it could have raised that issue when the parties were negotiating the Protective Order. But AP never did.  Instead, AP stipulated to a Protective Order that expressly prohibits the use of Confidential discovery in the Related Actions, except for "marked" deposition exhibits.  *See Palmer v. Cognizant Tech. Sols. Corp.*, 2022 WL 22871443, *8-10 (C.D. Cal. July 21, 2022) (denying plaintiff's motion to amend protective order to allow "*any* documents produced in this action *and* produced in the FCA Litigation" to be shared across cases where plaintiff knew of the collateral "FCA Litigation" all along and did not negotiate a document sharing provision in either

2

case); *Mgmt. Registry Inc. v. A.W. Companies, Inc.*, 2019 WL 5388488, \*1, 3-7 (D. Minn. Oct. 22, 2019) (discovery in federal action should not permit an "end-run" around "already expired state court deadlines" where defendants "failed to diligently pursue" the same discovery in state court action); *Browne v. Equifax Info. Servs. LLC*, 2025 WL 750311, \*5 (N.D. Ind. Mar. 10, 2025) (motion to intervene to modify protective order denied where movant sought "discovery that she failed to seek in her own case" in state court in which discovery was now closed).

Finally, AP does *not deny* that FMT is *not* a party in any of the other Related Actions. And contrary to AP's statement to the Court, no one affiliated with FMT is a party in AP's Georgia action against Home Depot – in which AP admits that its acting General Counsel, Gregg Zucker, is AP's "lead counsel." Courts hold that it is particularly prejudicial for a competitor to have to produce documents that may be used in an action in which it is not a party and has no ability to protect the use and disclosure of its Highly Confidential financial documents, especially, where as here, it is an admitted competitor of FMT that is threatening to use FMT's Highly Confidential documents in the other actions. That is akin to allowing the fox to guard the henhouse. *See Natera, Inc. v. CareDx, Inc.*, 2023 WL 3763808, \*6 (N.D. Cal. May 31, 2023) ("If forced to produce the information requested by the Subpoena, [the nonparty] will have no control over whether that information is or is not ultimately publicly disclosed."); *In re Vitamins Antitrust Litigation*, 267 F.Supp.2d 738, 740–41 (S.D. Ohio 2003) (quashing subpoena seeking non-party's trade secret information for use in antitrust litigation despite there being a protective order in place where "certain of the defendants in the antitrust litigation are [non-party's] direct competitors" and "this Court has no enforcement power over the extant protective order, and thus would be unable to protect [non-party's] interests were its terms to be breached").

3

Requiring FMT to "entrust[] the confidentiality of its documents who do not represent its interest" and in fact have conflicting interests is a substantial risk to FMT and is ***not*** what it signed up for in the existing Protective Order.  *In re Stewart Title Co.*, 2009 WL 1708079, *2 (S.D. Tex. June 17, 2009).

**B.** **Contrary To AP's False Statement, The Parties Have Had *No* "Course Of Conduct" To Share Confidential Discovery Across The Related Actions**

AP's claimed justification for seeking to violate the Court's Protective Order – a supposed "course of conduct" by the parties to share confidential productions across Related Actions – is an outright falsehood by AP.  Defendants called out AP's deception in their motion, using AP's own documented words: ***"[T]he parties in the Related Actions generally have <u>not</u> shared document productions across the Related Actions."*** [ECF 68-5, AP's Oct. 14, 2025 email (emphasis added).]

Yet, AP doubles down on its deception by now claiming its October 14, 2025 email was a "*pre-coordination* email" and that the parties' so-called "course of conduct" to share productions across a Related Actions occurred "after" its October 14, 2025 email. [AP's Opposition, ECF 69 at PageID # 1628 (italics in original).]  But AP's newly fabricated post-10/14/2025 "course of conduct" is also untrue and cannot justify AP's threats to violate the Court's existing Protective Order.  Significantly, AP cannot identify a single instance after its October 14, 2025 email in which FMT or any other Defendant in this case shared any newly produced Confidential discovery in the other Related Action.

AP reproduced documents in two of the Related Actions only because it was compelled to do so by document requests or orders in ***each*** of those lawsuits.  For example, AP points to its most recent (and still deficient) production in two cases on May 15, 2026, but that too was because AP was required to do so in ***both*** actions: (1) the Delaware court ordered AP to make that production

4

in the Delaware action, and (2) AP made the strategic decision to produce those documents in the instant action in an attempt to moot Defendants' pending Motion to Compel AP to Produce Relevant Documents filed January 30, 2026 (an issue that is contested and awaiting this Court's ruling). AP and its parent companies did so because they seek to recover overlapping damages in both of their cases, not because of any "course of conduct" to share Confidential discovery across the Related Actions.

AP also points to a September 4, 2025 production by Reinhart and FMT (Ex. C to AP's Opposition, ECF 69-3, at PageID # 1651), but that production had nothing to do with any purported course of conduct to share productions across Related Actions. AP omits to tell the Court that FMT and Reinhart made that particular document production (during what AP now dubs the "pre-coordination" period) for the Delaware, Georgia, and Ohio actions because they were compelled to do so in *each* of those actions:

- In the Georgia action, AP had subpoenaed FMT for a document production and obtained a domesticated Order from the Court of Common Pleas of Hancock County, Ohio on June 6, 2025, compelling FMT to produce those requested documents. [6/6/25 Ohio Court Order and AP's subpoena to FMT (attached as Exs. 1, 2).] On August 25, 2025, the Ohio court extended FMT's deadline to September 4, 2025 to produce documents in the Georgia action. [8/25/25 Ohio Court Order (attached as Ex. 3).]

- In the Delaware action, AP's parent companies had served Reinhart with document requests that substantially overlapped the requested documents that AP sought from FMT in the Georgia and Ohio actions. [Plaintiffs' Third Requests for Documents to Reinhart, dated 5/16/25, in Delaware Action (attached as Ex. 4).]

- In the instant action, AP also had served FMT with a similar set of document requests. [Plaintiff AP's Requests for Production of Documents to FMT (attached as Ex. 5).]

It is clear and undisputed that FMT and Reinhart made the September 4, 2025 document production in all three actions not because there was a course of conduct to produce discovery across the other Related Actions, but because they were compelled to do so in *each* of those respective actions. Yet, AP now attempts to revise history and mislead the Court about that production and a non-existent "course of conduct."

 In fact, AP does not dispute that its own steadfast refusal to share productions from the Related Actions with FMT and the other the Defendants in this action is the reason why FMT was forced to make a formal document request to AP on November 7, 2025 for production of "documents produced by all parties" in the other Related Actions. [ECF 68-6 at PageID #1512.] AP also does not deny that it still refuses to produce to Defendants the discovery productions that AP received from Home Depot and other parties in the Related Actions.

The Court also should be aware that AP's representation that "[c]ounsel for THD [The Home Depot] reproduced Georgia documents in the Related Actions" pursuant to a supposed course of conduct to do so is another falsehood. [AP's Opposition, ECF 69 at PageID # 1624.] Home Depot's counsel has *not* done so in this action. That is why FMT served AP with a formal document request in this action for production of the documents that Home Depot had produced to AP in the Georgia action. But to this day, AP still refuses to produce that discovery in this case. [ECF 68-6, at PageID #1513.]

Regardless of how desperate AP is to try to cure its failure to seek FMT's Highly Confidential documents in the Related Actions before discovery was closed there, that does not

6

and cannot justify the material misrepresentations that AP is making to this Court or AP's threat to violate the plain terms of the Court's Stipulated Protective Order.

**II. The Court Also Should Modify The Protective Order To Properly Restrict Disclosure And Use Of Future Confidential Discovery To This Action Only**

**A. AP Does Not Deny That Discovery Has Closed In The Related Actions**

Since this Court entered the Protective Order on August 5, 2025, circumstances have changed that provide good cause to modify the Protective Order as requested by Defendants.[1]

First and most significantly, AP does not deny that (1) two of the Related Actions have now been resolved, (2) discovery has now been closed in the Delaware and Georgia actions for several months, and (3) AP failed to request these FMT Highly Confidential documents in the Related Actions before the end of discovery in those cases. Thus, the underlying reason why the parties agreed to share coordinated deposition exhibits across the Related Actions in the first place – to avoid duplicative depositions and marked exhibits – has now ended. That is exactly why the parties inserted Section 13 in the Stipulated Protective Order to allow for future modifications in view of changed circumstances like these. If AP contends that it is entitled to obtain this Highly Confidential FMT discovery in the other Related Actions, AP remains free to approach those tribunals and seek leave to pursue FMT's discovery in those cases. It is telling that AP is not trying to do so.

Second, after this Court's Protective Order was entered, the Delaware Chancery Court found that AP violated that court's Confidentiality Order by wrongfully using FMT's and

---

[1] Contrary to AP's argument, Defendants do not seek to modify the Protective Order simply because the two sides are competitors, but that fact necessarily informs the Court's decision on whether to grant Defendants' requested modification and clarification of the Protective Order.

Reinhart's Confidential discovery in not one but two other Related Actions. AP tries to downplay this finding by noting that the Delaware court determined that AP's confidentiality breaches were "technical." But the Delaware court observed that the circumstances of AP's violations "aren't great facts for the AP Parties" for a reason. [Transcript of Delaware Ruling, ECF 68-8 at PageID #1538.] In the Georgia Action, an AP "attorney attached two documents produced in this case to highlight deficiencies in a document production in Georgia." Worse yet, in the New York Action, AP attached a confidential document "to a public filing in a New York lawsuit, which, again, is outside the use restriction." [*Id.* at PgID #1538.] The only reason the court let AP get away with the latter violation was because the publicly filed document "was immediately removed and remedied." [*Id.*] Yet, AP's violations show not only that AP will improperly use confidential discovery among the Related Actions, but that it has no qualms about exposing FMT's Confidential discovery publicly for the whole world to see.

Third, AP just recently revealed to the Court and Defendants that it intends to violate the express terms of the existing Protective Order by taking FMT's Highly Confidential financial documents from this action and using them in other lawsuits in which FMT is not a party. Thus, contrary to AP's suggestion, this is not an instance where Defendants simply "assume that [AP] will violate the Protective Order." Instead, AP already has openly announced it intends to do so – during the May 20, 2026 discovery hearing, in its May 29, 2026 letter to the Court, and now in its Opposition to Defendants' Motion. The best course of action is to tighten the confidentiality protections for the parties and preempt AP's threatened violation of the Protective Order before it happens, rather than allow AP to carry out its threatened confidentiality breaches and then require further motion practice to determine an appropriate sanction for AP's violations.

8

These changed circumstances constitute more than sufficient good cause to modify (and clarify) the Protective Order and appropriately afford increased protection for FMT's and other parties' Highly Confidential discovery in this action. *See Xoran Holdings, LLC v. Luick*, 2019 WL 13029920, *3-4 (E.D. Mich. May 19, 2019), objections overruled, 2019 WL 4735497 (E.D. Mich. Sept. 27, 2019) (granting in part plaintiff's motion to modify protective order to rectify "the danger to [the plaintiff's] customer relationships and the potential for unconsented disclosure(s) to competitors in what appears to be a hotly contested market" even though the parties had already "engaged in extensive discovery" under existing order); *Ecolab Inc. v. IBA, Inc.*, 2024 WL 3650464, *2–4 (D. Minn. May 19, 2024) (granting defendant's motion to modify protective order to add "outside" attorneys only designation and emphasizing that defendant's "prior stipulation" to existing protective order "cannot be held against" defendant); *Lockheed Martin Corp. v. Boeing Co.*, 2005 WL 5278461, *2–4 (M.D. Fla. Jan. 26, 2005) (granting in part plaintiff's motion to modify existing protective order where parties were "direct competitors," even though parties had been operating under existing protective order for nearly a year); *Bertetto v. Eon Labs, Inc.*, 2008 WL 2522571, *2-3 (D.N.M. May 29, 2008) (modifying protective order to eliminate provision permitting the sharing of discovery materials with counsel for plaintiffs alleging similar claims against the same defendant filed in future actions).

### B.  Defendants' Requested Modification Does Not Affect Other Tribunals, Let Alone Usurp Their Authority

Throughout AP's Opposition, it makes the unwarranted, strawman argument that Defendants are seeking to "dictate to," "exercise dominion" over, and even "usurp the authority of," other tribunals in the Related Actions.  Nothing could be further from the truth.  None of

Defendants' proposed modifications to the Protective Order has any impact on permissible discovery in the Related Actions, let alone usurps the authority of those courts.

The reality is that the requested modified Protective Order, by its own terms, only binds the parties *to this action* and only concerns future Confidential discovery produced *in this action*. Under the proposed modified Protective Order, nothing would prevent AP and its parent companies from seeking whatever discovery that they believe they are entitled to in the Related Actions. The tribunals in those other cases would continue to have unfettered authority over questions about discovery and admissibility in their own respective cases. *See Cabotage v. Ohio Hosp. for Psychiatry, LLC.*, 2012 WL 3064116, *3 (S.D. Ohio July 27, 2012) (a court has inherent authority "to limit the use of documents obtained by means other than court's discovery process").

Prohibiting AP from taking FMT's Highly Confidential documents from this action and using them in the Related Actions where discovery is already closed does not "usurp" the authority of those courts. It would have just the opposite effect – abiding those tribunals' discovery closure orders. Thus, "[b]asic principles of comity and federalism" favor Defendants' position here, not AP's position. *See Browne v. Equifax Info. Servs. LLC*, 2025 WL 750311, *5 (N.D. Ind. Mar. 10, 2025) (denying motion to intervene to modify protective order where movant sought "discovery that she failed to seek in her own case" in state court in which discovery was now closed, and reasoning that "[a]llowing her to obtain discovery now would contravene the discovery schedule set by the state court"); *Ossur Americas Inc. v. Asgeirsson*, 2025 WL 2683991, *4 (C.D. Cal. Mar. 26, 2025) ("Plaintiff's sister company cannot obtain the confidential records produced by Defendants and third parties under the Protective Order in the Icelandic action.… [A]llow[ing] production of confidential materials in the Icelandic litigation would not advance judicial economy

10

by avoiding wasteful duplication of discovery; rather, it would subvert the limitations on discovery that currently exist in the Icelandic litigation."); *Gunson v. BMO Harris Bank, N.A.*, 300 F.R.D. 581, 584 (S.D. Fla. 2014) ("The Court will not permit the instant proceeding to be used as a back door to obtain discovery for use in other proceedings in which discovery has been stayed.").

**C.    AP Offers No Rebuttal Evidence Concerning Attorney Zucker's Admitted Substantive Role As AP's Acting General Counsel**

Defendants' motion presented *evidence* (Gregg Zucker's Affidavit admissions) that Zucker is more than just AP's "outside litigation counsel," as AP would now have this Court believe, and that he was involved in the confidentiality violations found by the Delaware court.  Zucker's Affidavit admits that he is effectively AP's acting General Counsel by "providing advice akin to what many in-house general counsels provide their respective companies" – including personal involvement and knowledge about "factual matters on the challenged transactions." [Zucker Affidavit ¶ 4, ECF 68-15 at PageID #1596.]  That necessarily means that Zucker fulfills a more substantive role than merely as AP's outside litigation counsel.

It is telling that, in response to the evidence submitted in Defendants' motion concerning Zucker's admitted acting-General Counsel role, AP fails to submit *any evidence to rebut* this in its Opposition.  Zucker is conspicuously silent and, instead, relies on the unsubstantiated arguments (not evidence) of AP's outside counsel in this case.[2]

FMT should not be forced to risk putting its Highly Confidential financial documents from this action into the hands of its competitor's acting General Counsel who admittedly provides

---

[2]    If the Court has any doubt about the substantive general-counsel-like advisory role that Zucker fulfills for AP and its parent companies, Defendants request an appropriate judicial inquiry of Zucker on the topic.

substantive advice to AP on more than just litigation matters.  This is particularly true in connection with the Georgia action, in which AP admits that Zucker is AP's "lead counsel" and in which neither FMT nor any affiliate is a party.  Thus, FMT has no ability to protect what happens in Georgia with FMT's Ohio-produced Highly Confidential financial documents in the hands of its competitor's acting General Counsel there. Courts have properly excluded counsel's access to a competitor's sensitive information under analogous circumstances. *See, e.g.*, *ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC*, 2008 WL 5634214, *5 (E.D. Tex. Mar. 14, 2008) (access limited where attorney holding outside counsel and general counsel titles appeared on behalf of entities owned or controlled by the same individual); *Ecolab*, 2024 WL 3650464, *1-3 (restricting the access of in-house counsel who "oversee[s] intellectual property litigation and patent prosecution matters and advising select divisions, including the Animal Health division, about potential lawsuits").

As in these cases, FMT's Highly Confidential financial documents produced solely in this action should be restricted to disclosure and use by outside counsel of record in this action, as proposed in Defendants' modified Protective Order.  AP will not be prejudiced by such an appropriate restriction because it has an entire team of multiple outside attorneys who have entered appearances in this case (which Zucker has avoided doing presumably because of his admitted involvement with "factual matters on the challenged transactions").

**III.    Conclusion**

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Modify and Clarify the Protective Order.

Respectfully submitted,

/s/ *Stuart G. Parsell*
Marion H. Little Jr. (0042679)
Stuart G. Parsell (0063510)
ZEIGER, TIGGES, & LITTLE LLP
8000 Walton Parkway, Suite 260
New Albany, Ohio 43054
Phone: (614) 365-9900
Fax: (614) 365-7900
little@litohio.com
parsell@litohio.com

Attorneys for Defendants
Findlay Machine & Tool Inc. and
Kreate Extrusion LLC

GORDON REES SCULLY MANSUKHANI, LLP
Roland J. De Monte (0081129)
Sarah E. Katz (0096863)
Y. Timothy Chai (0092202)
127 Public Square, Suite 5130
Cleveland, OH 44114
Phone: (330) 283-5537
rdemonte@grsm.com
skatz@grsm.com
tchai@grsm.com

ASTMAN & SMITH LTD.
Jared J. Lefevre (0085931)
Nicholas W. Bartlett (0100990)
One SeaGate, 27th Floor
Toledo, Ohio 43699-0032
Phone: (419) 241-6000
jjlefevre@eastmansmith.com
nwbartlett@eastmansmith.com

POLSINELLI PC
Todd H. Bartels (MO #45677)*
Emma R. Schuering (MO #65169)*
Ross T. Weimer (MO #69421)*
900 W. 48th Place, Suite 900
Kansas City, MO  64112
Phone: (816) 753-1000

13

tbartels@polsinelli.com
eschuering@polsinelli.com
rweimer@polsinelli.com

Attorneys for Defendants Eric Hummel,
Findlay Machine & Tool Inc., and
Kreate Extrusion LLC

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was filed electronically with

the Clerk of Court using the CM/ECF system this 6th day of July 2026, which constitutes service

on all attorneys of record.

/s/ *Stuart G. Parsell*
Stuart G. Parsell  (0063510)

1422-001:1089693

14