**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| AMERICAN PLASTICS, LLC, | CASE NO. 3:24-cv-00660 |
| Plaintiff, | |
| | Hon. James R. Knepp, II |
| vs. | |
| ERIC HUMMEL, et al., | CIVIL ACTION |
| Defendants. | |

**PLAINTIFF AMERICAN PLASTICS, LLC'S
<u>MOTION TO COMPEL DOCUMENT PRODUCTION</u>**

Plaintiff American Plastics, LLC ("Plaintiff" or "AP") respectfully submits this Motion to compel Defendant Findlay Machine & Tool, LLC ("FMT") to produce documents responsive to Plaintiff's Third Set of Requests for Production of Documents ("3rd RFPs" and each a "Request"). Plaintiff also moves for an award of its fees and expenses.

Pursuant to Fed. R. Civ. P. 37(a)(1), Plaintiff's counsel certifies that they have conferred in good faith with Defendants' counsel on multiple occasions in an effort to resolve the issues raised in this Motion without Court intervention, but the parties are at an impasse.

In consultation with and at the direction of the Court, the parties have already submitted letter-briefs on these issues, on May 29, 2026 (Plaintiff) and on June 12, 2026 (Defendants).  On June 18, Plaintiff requested that the letter-briefs be deemed sufficient for the motion. On June 19, Defendant FMT opposed the request.  This Motion follows.

# TABLE OF CONTENTS

**Page(s)**

ISSUES PRESENTED ............................................................................................................ 1

SUMMARY OF ARGUMENT ............................................................................................. 1

BACKGROUND .................................................................................................................. 2

I.      Factual Background ................................................................................................. 2

II.     Procedural Background............................................................................................ 3

ARGUMENT ....................................................................................................................... 5

I.      Legal Standard........................................................................................................ 5

II.     AP's 3rd RFPs Are Relevant, Proportional, and Impose No Undue
Burden ................................................................................................................... 6

III.    FMT's Refusal to Produce Is Pretextual and Part of a Pattern of Discovery
Obstruction ........................................................................................................... 12

IV.   Plaintiff's Reasonable Attorneys' Fees and Expenses Should Be Awarded........................ 14

CONCLUSION.................................................................................................................... 14

**TABLE OF AUTHORITIES**

**Page(s)**

Cases

*Children's Legal Services PLLC v. Kresch*,
   No. 07-CV-10255, 2007 WL 4098203 (E.D. Mich. Nov. 16, 2007) ........................................ 13

*In re Heparin Prods. Liab. Litig.*,
   273 F.R.D. 399 (N.D. Ohio 2011) ................................................................................... 5, 6, 14

*James v. Cuyahoga Cnty.*,
   648 F. Supp. 3d 897 (N.D. Ohio 2022) ...................................................................................... 5

*MXR Imaging, Inc.*,
   No. 1:24-CV-01269, 2026 WL 1265432 (N.D. Ohio May 8, 2026) ........................................... 5

*Ohio Regional Council of Carpenters v. Archer Interiors, Inc.*,
   No. 5:08 CV 1996, 2009 WL 10740991 (N.D. Ohio Feb. 19, 2009) .................................... 6, 14

**Rules**

Fed. R. Civ. P. 26 .......................................................................................................................... 5

Fed. R. Civ. P. 34 .......................................................................................................................... 5

Fed. R. Civ. P. 37.1(a)(4) .............................................................................................................. 5

Fed. R. Evid. 401 .............................................................................................................. 4, 5, 6, 14

**Other Authorities**

L.R. 37 ........................................................................................................................................... 5

## ISSUES PRESENTED

(1)     Are the damages-related documents that Plaintiff seeks from FMT relevant and proportional to the needs of the case? Answer: Yes.

(2)     Is it unduly burdensome for FMT to produce the damages-related documents requested by Plaintiff? Answer: No.

(3)     Does FMT have substantial justification for refusing to produce these documents? Answer: No.

(4)     Should FMT be compelled to produce the documents requested by Plaintiff? Answer: Yes.

## SUMMARY OF ARGUMENT

This case arises from a coordinated scheme of corporate espionage and serial restrictive-covenant violations. For months, while serving as AP's Director of Tooling, Defendant Eric Hummel ("Hummel") contemporaneously worked for AP's competitor, FMT, secretly helping FMT build all the tools it needed to take one of AP's largest customers and using know-how and relationships he developed while at AP and proprietary and confidential information to do it, thereby giving FMT an unfair competitive advantage and accelerating its production of lucrative storage totes. The scheme culminated in FMT's poaching of The Home Depot ("THD"), one of AP's largest customers. AP's damages expert needs FMT's financial records to properly quantify the harm—yet FMT has stonewalled production for over five months.

On January 30, 2026, AP served its 3rd RFPs on FMT, comprising eight narrowly tailored requests for financial and operational data necessary to calculate damages and disprove Defendants' defenses. To date, FMT has refused to produce. Instead, it conditioned (partial) compliance on an unnecessary amendment to the existing Protective Order—a transparent delay tactic used the moment FMT's own production obligations came due (and the subject of a pending motion by FMT to cause further delay). FMT's position is untenable: it has no valid objection to

the Requests, has no substantial justification for its refusal, has caused purposeful delay, and has no basis to hold discovery hostage. This Court should compel production and award fees to AP.

## **BACKGROUND**

### **I.     Factual Background**

This Action is one of six related actions ("Related Actions") arising from a coordinated scheme of serial restrictive-covenant violations. In 2018, Jansan Acquisition, LLC ("Jansan"), AP's parent company, acquired Nickolas Reinhart's 100% ownership interest in Creative Plastic Concepts, LLC for substantial cash consideration plus a minority equity stake, subject to restrictive covenants barring competition, misuse of confidential information, and solicitation of AP's customers and employees. In 2022, Reinhart sold his remaining minority equity for an additional substantial consideration under a Buyout Agreement imposing further covenants. Within one month of his departure in February 2023, Reinhart began breaching those covenants.

Acting directly and through FMT, Reinhart solicited Lowe's, Walmart, Sam's Club, and THD—all longstanding AP customers—and ultimately diverted the THD business entirely. He recruited twenty-six AP employees to service the same THD storage product business they had serviced at AP. Hummel, while still employed at AP as Director of Tooling, exploited his insider position to misappropriate proprietary information and channel it to FMT, saving FMT substantial research and development costs and dramatically accelerating its time-to-market.

Six Related Actions have been commenced across multiple forums: (1) Jansan sued Reinhart in the Delaware Court of Chancery for breach of restrictive covenants; (2) AP sued its former Chief Business Officer (now CEO of FMT's parent company) in JAMS arbitration; (3) AP sued FMT and Hummel in this Court for enabling covenant violations and exfiltrating trade secrets, tortiously interfering with business relations, and unjust enrichment (this Action); (4) AP initiated injunction litigation in the New York courts against Integrated Sales Solutions, II ("ISS"), AP's

former sales representative to THD, now affiliated with FMT; (5) AP commenced a AAA arbitration against ISS; and (6) AP sued THD in Georgia for breach of contract and fraud. Largely the same law firms represent parties on both sides across proceedings, and the same damages experts have served reports in multiple Related Actions.

## II.     Procedural Background

On January 30, 2026, AP served its 3rd RFPs on FMT, containing eight narrowly tailored requests for financial records necessary for AP's damages expert to calculate damages. On April 1, 2026, after AP consented to an extension of time (in anticipation of actual compliance), Defendant responded with boilerplate objections—virtually identical cut-and-paste language repeated across all eight requests. *See* **Exhibit A**. Starting April 14, 2026, Plaintiff's counsel engaged in two meet-and-confer sessions and had various correspondence with Defendants' counsel. On May 4, 2026, following the unproductive exchanges, Plaintiff asked Defendant to state, for each of the eight requests, whether it would produce responsive documents, object to production, or provide a substitute document if the original did not exist. *See* correspondence between counsel attached as **Exhibit B**. Defendant refused to provide a substantive response. *See id.* Over time, Plaintiff repeated the same questions in various forms, but aside from confirming that it would eventually produce the annual financial statements (corresponding to one of the eight Requests), Defendant's counsel continued to refuse to provide any information. *See* **Exhibit C** (reflecting correspondence between counsel showing pointed questions and explanations Plaintiff provided regarding the types of documents that would be sufficient for Defendant to meet its discovery obligations).

Eventually, FMT conditioned (partial) production on an amendment to the existing two-tier Protective Order (ECF 42)—an order that has governed discovery since August 2025 and

-3-

under which AP has already produced an abundance of highly sensitive financial data[1]. This strategic withholding frustrated the liberal discovery policy of Federal Rule of Civil Procedure 26(b) and stalled the progression of this litigation, particularly in light of the upcoming expert report deadline currently set for August 17, 2026.[2]

On May 11, 2026, Plaintiff requested a discovery conference to resolve both sides' discovery disputes. At the May 20, 2026 telephonic conference, the Court indicated that the disputes could be presented by formal motion or letter briefing. *See* Tr. of May 20, 2026 Telephonic Conf. at 27:22-25. On June 2, 2026, the Court directed Defendants to address *their* issues via letter. *See* June 2, 2026 Minute Order ("Defendants are to respond to Plaintiff's 5/29/2026 letter regarding Plaintiff's Requests for Production and the protective order issue **via letter emailed to the Court** and all parties by 6/12/2026.") (emphasis added).). Defendants did so, but simultaneously filed a separate Motion to Amend the Protective Order (ECF 68)— contradicting the Court's guidance and causing additional delay and expense.

Plaintiff sought to use the letter-briefing route to avoid further burdening the Court and costly motion practice, but because of Defendant's clear disregard for the Court's guidance, Plaintiff now brings this formal motion to ensure the dispute is properly before the Court.

---

[1] In a glaring double standard, FMT's own Third Requests for Production demanded that AP "produce all documents produced by all parties" from the very Related Actions that FMT now seeks to wall off. This pattern of delay and avoidance has persisted for more than five months since service of AP's 3rd RFPs.

[2] At the time this motion was drafted, given the schedule, Plaintiff's counsel had already requested from Defendants' counsel a one-month extension of the opening-report deadline. Defendant agreed – subject to various other scheduling conditions.  (See **Exhibit D**).

<u>**ARGUMENT**</u>

**I.      Legal Standard**

Motions to compel production of documents in the Northern District of Ohio are governed by Federal Rules of Civil Procedure 26, 34, and 37, and Local Rule 37.1. Rule 37(a) authorizes a motion to compel where a party fails to produce documents requested under Rule 34 or provides incomplete or evasive responses, Fed. R. Civ. P. 37.1(a)(4), provided the movant first demonstrates a good-faith effort to resolve the dispute without court intervention. L.R. 37.1(a)(1). AP has satisfied these prerequisites through two meet-and-confer sessions, an intervening conference with the Court, and extensive correspondence with Defendants' counsel.

Plaintiff may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Evidence is "relevant" if it "has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401(a), (b).  The movant "bears the initial burden of proving that the information they seek is relevant." *MXR Imaging, Inc.*, No. 1:24-CV-01269, 2026 WL 1265432, at *2-3 (N.D. Ohio May 8, 2026) (citing *James v. Cuyahoga Cnty.*, 648 F. Supp. 3d 897, 904 (N.D. Ohio 2022)). If the movant proves relevance, the burden shifts to the opposing party, "who must prove that the request is unduly burdensome." *See MXR Imaging,* 2026 WL 1265432, at *2-3 (citation omitted).  Generalized or boilerplate objections are inadequate. *See In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399, 406 (N.D. Ohio 2011). The responding party must specifically demonstrate the burden imposed, and "at the very least, where a party claims burdensomeness, it must explain why that is so.  It should also propose alternatives, if such might be possible, that could enable some degree of production.". *In re Heparin*, 273 F.R.D. at 410-11.

Where a motion to compel is granted or if the disclosure or requested discovery is provided after the motion was filed, Rule 37(a)(5) generally mandates fee shifting—requiring the party whose conduct necessitated the motion to pay the movant's reasonable expenses, including attorney's fees. *See* Fed R. Civ. P. 37(a)(5)(A); *see also In re Heparin*, 273 F.R.D. 399 at 411; *Ohio Regional Council of Carpenters v. Archer Interiors, Inc.*, No. 5:08 CV 1996, 2009 WL 10740991, at \*4 (N.D. Ohio Feb. 19, 2009) (fee shifting found appropriate even when responding party conceded after the motion was filed).

## II. AP's 3rd RFPs Are Relevant, Proportional, and Impose No Undue Burden

The information sought in AP's 3rd RFPs is plainly relevant under Rule 26, proportional to the needs of the case, and imposes no undue burden on FMT. The requested information is relevant to Plaintiff's damages calculation because it may demonstrate FMT's ramp-up in storage tote production, FMT's research and development costs, and Plaintiff's corresponding lost sales following the diversion of AP's business with THD.

The Requests are also proportional and impose no undue burden. The first two Requests seek annual and monthly financial statements—approximately 50 documents, each prepared in the ordinary course of business and likely available to investors and auditors. Each of the remaining six requests is narrowly tailored to: (a) specific product lines (totes and toolboxes); (b) a defined time period (January 2022 through the present[3]); and (c) specific profit, revenue, and cost categories. Despite this narrow scope, FMT's financial production to date has been woefully inadequate. The only meaningful financial document FMT has produced is Deposition Exhibit 191, Tab X—a single table reflecting combined revenues for totes and toolboxes that does not

---

[3] In the interest of narrowing the dispute, Plaintiff is prepared to accept data ending December 31, 2025. *See* **Ex. C** (correspondence confirming Plaintiff's willingness to compromise on the time period).

separate product lines and contains no data after February 2024. The three additional documents FMT's counsel identified in its June 12 letter to the Court (REINHART-AP-THD-128146, REINHART-AP-THD-113148, and REINHART-AP-THD-114509) only confirm that FMT possesses the type of financial data AP has requested—yet none covers the critical period after February/March 2024, when FMT officially assumed the THD storage product business from AP.

**3rd RFP No. 1:** **FMT's audited financial statements (including all accompanying notes, schedules and auditors' reports) for fiscal years 2022 through 2025.**

Audited financial statements are the foundation of any damages analysis in a case of this nature. AP's expert needs these statements to determine the total revenue FMT earned from THD—the client that was diverted through Defendants' coordinated misappropriation scheme—and to analyze FMT's cost structure, overhead allocation, and year-over-year performance changes that coincide with the alleged scheme. Without these statements, AP's expert cannot isolate the revenue spikes attributable to the diverted THD business, compare FMT's pre- and post-misappropriation financial trajectory, or rule out alternative explanations for FMT's profits. FMT has indicated a willingness to produce its audited financials but has conditioned that production on the Court's entry of wholly unnecessary amendments to the Protective Order—a transparent attempt to delay compliance with its discovery obligations. The burden of producing the annual financial statements is negligible: audited financials are maintained in the ordinary course of business and routinely distributed to investors and auditors, and the accompanying notes, schedules, and auditors' reports are typically incorporated within the statements themselves.

**3rd RFP No. 2:** **FMT's detailed monthly income statements (including itemized costs and expenses) from January 2022 through December 2025.**

Annual financial statements, while necessary, could obscure the timing of the misappropriation and the precise trajectory of FMT's financial gains. Monthly income statements are essential to reveal exactly when revenues spiked, when margins shifted, and when the diverted

THD client began generating income for FMT—data points that are critical to AP's expert's damages model. Defendants' counsel represented in his June 12 letter to the Court that previously produced document REINHART-AP-THD-114509 contains monthly P&L statements for 2020 through 2023, and that REINHART-AP-THD-128146 covers early 2024. This is true, but those documents, by Defendants' own admission, contain no data after February/March 2024—the very period during which FMT officially assumed the THD storage product business and the period most directly relevant to AP's damages claims. The burden of production is minimal: monthly income statements are generated routinely by FMT's accounting team and are regularly shared with auditors and investors.

**3rd RFP No. 3:       FMT's general ledger data for totes sold to The Home Depot, from January 2022 through the present.**

General ledger data is the transactional backbone of any financial analysis. For totes sold to THD, this data will show every payment received and every expense allocated, enabling AP's expert to trace revenue directly to the misappropriation and to allocate revenues and costs on a conservative, transaction-by-transaction basis. This data may also reveal whether FMT altered entries after litigation commenced, reclassified revenue, or shifted expenses to obscure the financial impact of the diverted business. Defendants contend in their June 12 letter that FMT's general ledgers are not itemized by individual product such as totes or toolboxes. That representation is squarely contradicted by the record. During his Rule 30(b)(6) deposition, FMT's owner and corporate designee, Nickolas Reinhart, was asked whether FMT could separate tote and toolbox revenue and responded unequivocally: "We can get that for you." Reinhart Tr. 510:5–21. FMT cannot disclaim the ability to produce data its own designee offered to provide under oath. Moreover, the previously requested general ledger data is contained in REINHART-AP-THD-

128146 for the period January 2023 through February 2024.  The data exists—it simply needs to be updated to cover the period after FMT assumed the THD business.

The burden of production is minimal. General ledger data is readily exportable from any standard accounting software (e.g., QuickBooks), and FMT could produce the data responsive to RFPs 3, 4, and 5 in a single export.

**3rd RFP No. 4:  FMT's general ledger data for toolboxes sold to The Home Depot, from January 2022 through the present.**

The same analysis applies with equal force to toolbox sales. AP's expert requires product-level general ledger data for toolboxes sold to THD to disaggregate the revenue streams attributable to each misappropriated product line and to conduct the granular, transaction-level damages analysis that the Court and the parties' experts will require. Reinhart's deposition testimony that FMT can provide a breakdown between totes and toolboxes applies directly to this request, and the previously produced documents confirm that such data exists for the pre-2024 period. The burden is identical to RFP No. 3—a single export from FMT's accounting software would suffice.

**3rd RFP No. 5:  FMT's general ledger transaction details, limited to recruiting expenses and research and development expenses, from January 2022 through the present.**

FMT's recruiting and R&D expenses bear directly on the damages analysis. AP's expert needs this data to compare FMT's recruiting expenditures—which reflect the cost savings FMT realized by poaching twenty-six experienced AP employees rather than developing its workforce independently—against AP's comparable costs. Similarly, FMT's R&D spending relative to its revenues will illuminate whether FMT leveraged misappropriated trade secrets and proprietary information to compress its development timeline and reduce the costs ordinarily required to enter the storage tote market. To the extent FMT books these costs by customer, the data would also permit customer-level analysis isolating the financial benefit FMT derived from the diverted THD

-9-

relationship. Defendants contend that FMT's general ledgers are not itemized by recruiting and R&D categories, but the previously produced documents contain period-level summaries for R&D-related accounts—including "Engineering/Product Dev. Labor," "Prototype Samples," and "Product Development"—demonstrating that FMT tracks precisely this type of information. The burden is the same as for RFPs 3 and 4: a single general ledger export.

**3rd RFP No. 6:** **FMT's monthly sales by tote product sold to The Home Depot, from January 2022 through the present.**

Monthly tote sales data is critical to establishing the timeline of the misappropriation's financial impact. This data will show precisely whether and when revenue from totes sold to THD began flowing to FMT, enabling AP's expert to pinpoint the inflection point at which the diverted business translated into FMT revenue and to apportion revenues and costs to the misappropriation with precision. It will also reveal whether FMT attempted to obscure this revenue by spreading it across product lines, reclassifying it, or shifting it to a related entity—tactics that would be visible only through product-level monthly sales data. The previously produced document REINHART-AP-THD-114509 includes monthly sales data by customer and product for 2022 and 2023, confirming that FMT maintains this information—but again, the production stops before the critical post-February 2024 period. Reinhart's deposition testimony that FMT can provide a tote-versus-toolbox breakdown further confirms the data's availability. The burden of production is minimal, consistent with RFPs 3 through 5.

**3rd RFP No. 7:** **FMT's monthly sales by toolbox product sold to The Home Depot, from January 2022 through the present.**

The same reasoning applies to monthly toolbox sales. AP's expert needs product-level monthly sales data for toolboxes to complete the disaggregated damages analysis and to ensure that no revenue attributable to the diverted THD relationship is obscured through product-line reclassification. This data, combined with the tote sales data sought in RFP No. 6, will provide the

complete picture of FMT's THD-related revenues by product and by month—a picture that Exhibit 191, Tab X, with its aggregated tote-and-toolbox figures, cannot provide. The burden of production is identical to the preceding requests.

**3rd RFP No. 8:** **FMT's monthly research and development cost tracking schedules which inform capitalized research and development accounts, from January 2022 through present, which can be reconciled to the following information:**

1. Roll-forward of capitalized research and development costs, including impact on profit & loss statements and balance sheets;

2. Allocation of labor costs by project and/or by product and/or by customer, specific to totes;

3. Allocation of labor costs by project and/or by product and/or by customer, specific to toolboxes;

4. To the extent such information is not integrated into the research and development tracking schedules, provide the requisite schedules.

FMT's R&D cost tracking schedules go to the heart of AP's misappropriation claims. Lower-than-expected R&D spending would suggest that FMT leveraged misappropriated trade secrets—including the proprietary tooling information that Hummel exfiltrated while still employed at AP—to reduce development costs and compress its time-to-market for the very products it sold to THD. AP's expert needs these schedules to determine FMT's R&D expenditures at the customer and product level and to assess whether FMT's margins reflect the unfair competitive advantage conferred by the misappropriation. Defendants claim that FMT does not maintain "research and development cost tracking schedules" in the form described by this request. But FMT is not required to produce documents in AP's preferred nomenclature—it is required to produce records that track R&D costs, however they are denominated internally. The previously produced general ledger files contain accounts labeled "Engineering/Product Dev. Labor,"

-11-

"Prototype Samples," and "Product Development," confirming that FMT does, in fact, track R&D-related expenditures. To the extent FMT claims that it maintains these records in a different format or under different account names, it is obligated under Rule 34 to produce them in whatever form they exist.

The request is narrowly tailored to specific products and the relevant time period, and any burden it imposes does not approach the substantial production burden that AP has shouldered throughout this litigation—having produced vast quantities of its own confidential financial records under the existing Protective Order, to its direct competitor, without delay.

## III.   FMT's Refusal to Produce Is Pretextual and Part of a Pattern of Discovery Obstruction

FMT's purported concern regarding the Protective Order is pretext. It has conditioned production on an amendment to the two-tier Protective Order—an order the parties negotiated, that the Court ordered, that has governed discovery for both parties since August 2025, and under which FMT demanded and AP already produced extensive confidential financial records to its direct competitor. Defendants' Motion to Amend the Protective Order was filed the moment their own production obligations came due. As the Court is aware, Plaintiff has separately opposed FMT's Motion to Amend the Protective Order – and reasserts and reaffirms its opposition here. (ECF 69).

Three points from that opposition bear directly on FMT's credibility here. *First*, the timing is dispositive: Defendants filed their Motion to Amend the Protective Order at the precise moment their own production obligations arose—having benefited from shared discovery across the Related Actions for over a year and having demanded and received AP's highly confidential financial records. *See id*. *Second*, FMT's own discovery requests expose the double standard. In FMT's 3rd RFPs, FMT demanded that AP "produce all documents produced by all parties" from the Related Actions—the very cases FMT now seeks to wall off. A party that demands cross-case

-12-

discovery from its opponent should not be allowed refuse to provide its own. *See Children's Legal Services PLLC v. Kresch*, No. 07-CV-10255, 2007 WL 4098203 (E.D. Mich. Nov. 16, 2007). *Third*, FMT's "non-existence" claims regarding RFPs 3–5 and 8 are contradicted by the record: during his Rule 30(b)(6) deposition, FMT's owner and corporate designee, Nickolas Reinhart, was asked whether FMT could separate tote and toolbox revenue and responded: "We can get that for you." Reinhart Tr. 510:5–21.  Regrettably, Mr. Reinhart did not get that information to us – and now is obstructing.  FMT cannot disclaim the ability to produce data its own designee offered under oath to provide.

On June 12, 2026, Defendants submitted a response letter to the Court opposing AP's requests on three principal grounds: (1) that FMT's financial documents are purportedly irrelevant because AP cannot recover disgorgement of FMT's profits as a matter of law; (2) that FMT does not possess certain of the requested documents; and (3) that FMT has already produced "most" of the requested financial information. Each of contentions is meritless. The irrelevance argument misapprehends the scope of discoverable information under Rule 26(b)(1) and conflates the merits of AP's damages theories with the threshold question of discoverability. The non-existence claims are squarely contradicted by FMT's own corporate designee's sworn testimony that FMT can produce the requested data, and by the documents FMT already produced. And the assertion that prior productions moot AP's requests ignores that every financial document FMT has produced predates February 2024—before FMT officially assumed the THD storage product business and began generating the very revenues at issue in this litigation.[4]

---

[4] Plaintiff addresses these contentions only summarily here and reserves the right to respond in full in its Reply should Defendant reassert them in its opposition.

**IV.  Plaintiff's Reasonable Attorneys' Fees and Expenses Should Be Awarded**

Pursuant to Fed. R. Civ. P. 37(a)(5), Plaintiff seeks an award of reasonable expenses, including attorney's fees, incurred in bringing this Motion. FMT's ongoing pattern of delay, its disregard for Court-ordered instructions, and its improper conditioning of production on an unnecessary Protective Order amendment are not substantially justified and directly necessitated this Motion. Fee shifting is appropriate. *See Ohio Regional Council of Carpenters*, 2009 WL 10740991, at *4 (fee shifting warranted even when responding party conceded only after motion was filed); *In re Heparin*, 273 F.R.D. at 411.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court (1) compel Defendant FMT to produce all documents responsive to AP's 3rd RFPs within fourteen (14) days; and (2) award Plaintiff its reasonable attorneys' fees and expenses incurred in connection with this Motion.

*/s/ Jonathan H. Krol*
Jonathan H. Krol, Esq. (0088102)
REMINGER CO., L.P.A.
200 Public Square, Suite 1200
Cleveland, OH 44114
P: (216) 687-1311 | F: (216)-687-1841
*jkrol@reminger.com*

Timothy J. Pastore, Esq.*
MONTGOMERY McCRACKEN
WALKER & RHOADS LLP
437 Madison Avenue, 24th Floor
New York, NY 10022
Tel: (212) 551-7707
*tpastore@mmwr.com*

-15-

R. Montgomery Donaldson, Esq. *
Stefania A. Rosca, Esq. *
MONTGOMERY McCRACKEN
WALKER & RHOADS LLP
1101 North Market Street, Suite 15
Wilmington, DE 19018
Tel: (302) 504-7840
*rdonaldson@mmwr.com*
*srosca@mmwr.com*

Jacqualyn Gillen, Esq. *
MONTGOMERY McCRACKEN
WALKER & RHOADS LLP
1735 Market Street, 21st Floor
Philadelphia, PA 19103
Tel: (215) 772-7502
*jgillen@mmwr.com*

* Admitted *Pro Hac Vice*

*Attorneys for Plaintiff American Plastics*, *LLC*

Dated: July 24, 2026

**CERTIFICATE OF SERVICE**

The foregoing Plaintiff American Plastics, LLC's Motion to Compel Document Production

and Exhibits A-D were sent on this 24th day of July, 2026 via email to the following:

Jared J. Lefevre, Esq.
Nicholas W. Bartlett, Esq.
Eastman & Smith Ltd.
One SeaGate, 27th Floor
P.O. Box 10032
Toledo, OH 43699-0032
*jjlefevre@eastmansmith.com*
*nwbartlett@eastmansmith.com*

Roland J. Demonte, Esq.
Sarah Katz, Esq.
Y. Timothy Chai, Esq.
Gordon Rees Scully Mansukhani, LLP
600 Superior Avenue East
Cleveland, OH 44114
*rdemonte@grsm.com*
*skatz@grsm.com*
*tchai@grsm.com*

Todd H. Bartels, Esq.*
Emma R. Schuering, Esq.*
Ross T. Weimer, Esq.*
Polsinelli PC
900 W. 48th Place, Suite 900
Kansas City, MO 64112
*tbartels@polsinelli.com*
*eschuering@polsinelli.com*
*rweimer@polsinelli.com*

Marion H. Little, Jr., Esq.
Stuart G. Parsell, Esq.
Zieger, Tigges, & Little LLP
8000 Walton Parkway
Suite 260
New Albany, OH 43054
*little@litohio.com*
*parsell@litohio.com*

*Attorneys for Defendants Eric Hummel,
Kreate Extrusion, LLC and
Findlay Machine & Tool, LLC.*

*/s/ Jonathan H. Krol*
Jonathan H. Krol, Esq. (0088102)

-16-