**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| AMERICAN PLASTICS, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>ERIC HUMMEL, et al.,<br><br>Defendants. | CASE NO. 3:24-cv-00660<br><br>Hon. James R. Knepp, II<br><br>CIVIL ACTION |

**PLAINTIFF AMERICAN PLASTICS, LLC'S REPLY IN FURTHER**
**SUPPORT OF ITS MOTION TO COMPEL DOCUMENT PRODUCTION**

Plaintiff American Plastics, LLC ("AP") respectfully submits this Reply in further support of its Motion to Compel (ECF 71) Defendant Findlay Machine & Tool, LLC ("FMT") to produce documents responsive to AP's Third Set of Requests for Production of Documents ("3rd RFPs"). FMT's Opposition (ECF 76, the "Opposition" or "Opp.") does not show undue burden. It rather asks the Court to focus on the merits before FMT produces targeted financial data meant for the damages analysis. Rule 26 does not permit that shortcut.

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ....................................................................................................1

II. THE REQUESTED DATA IS DIRECTLY RELEVANT TO DAMAGES ON ALL OF PLAINTIFF'S CLAIMS ....................................................................................2

A. FMT's Financial Data Is Essential To The Contract And Tortious Interference Damages Analysis ....................................................................................2

B. FMT's Preemption Argument Is A Merits Defense Disguised As A Discovery Objection ....................................................................................4

C. The Trade Secrets Claims Are Particularly Well Suited For Damages Discovery ....................................................................................4

1. Disgorgement Is Statutorily Authorized By The Trade Secrets Act ........................4

2. The Trade Secrets Act Allows Punitive Damages, Which Makes FMT's Financial Condition Central ....................................................................................5

III. AP'S REQUESTS NARROWLY TRACK THE DIVERTED THD BUSINESS—NOT FMT'S ENTIRE ENTERPRISE ....................................................................................6

A. The Requests Are Confined To The THD Business, The Products, And The Relevant Costs ....................................................................................7

B. FMT's Eight-Trade-Secret Attack Is A Liability Argument That Cannot Defeat Damages Discovery ....................................................................................9

IV. FMT'S "NOTHING EXISTS" DEFENSE FAILS ON ITS OWN RECORD ....................9

V. FMT'S PRIOR PRODUCTIONS ARE MATERIALLY INCOMPLETE AND DO NOT MOOT THE REQUESTS ....................................................................................10

VI. A CONDITIONAL PROMISE TO PRODUCE FINANCIAL STATEMENTS IS NOT COMPLIANCE ....................................................................................12

VII. FMT'S SIX-MONTH DELAY WARRANTS FEES ....................................................13

VIII. CONCLUSION ....................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Allen v. Howmedica Leibinger, GmhH*,
190 F.R.D. 518 (W.D. Tenn. 1999) .......... 3

*American Consolidated Industries, Inc. v. Blasingim*,
Case No. 5:17-cv-02253, 2025 WL 4070732 (N.D. Ohio Nov. 17, 2025) .......... 4

*C.R.H. Industrial Water, LLC v. Eiermann*,
No. 1:23-Cv-01805, 2024 WL 4856109 (N.D. Ohio Nov. 21, 2024) .......... 4

*Damsi v. Tarpstop, LLC*,
2023 WL 9186657 (N.D. Ohio 2023) .......... 10

*Duracell Inc. v. SW Consultants, Inc.*,
126 F.R.D. 576 (N.D. Ga. 1989) .......... 7

*Evans v. Chambers-Smith*,
2021 WL 3271808 (N.D. Ohio 2021) .......... 10

*Hanneman Family Funeral Home & Crematorium v. Orians*,
174 Ohio St.3d 130 (2023) .......... 4

*Harris v. Advance Am. Cash Advance Ctrs., Inc.*,
288 F.R.D. 170 (S.D. Ohio 2012) .......... 10

*Howard v. Wilkes & McHugh, P.A.*,
No. 06–2833, 2008 WL 4415162 (W.D. Tenn. Sept. 24, 2008) .......... 5

*In re Heparin Prods. Liab. Litig.*,
273 F.R.D. 399 (N.D. Ohio 2011) .......... 5, 13

*Nalco Chem. Co. v. Hydro Techs., Inc.*,
149 F.R.D. 686 (E.D. Wis. 1993) .......... 8

*NexPay, Inc. v. Comdata Network, Inc.*,
2017 WL 4467476 (M.D. Tenn. Oct. 6, 2017) .......... 8

*Ohio Regional Council of Carpenters v. Archer Interiors, Inc.*,
2009 WL 10740991 (N.D. Ohio Feb. 19, 2009) .......... 13

*Riddick v. S&P Data Ohio, LLC*,
2021 WL 4713396 (N.D. Ohio 2021) .......... 10

*Stolle Mach. Co., LLC v. RAM Precision Industries*,
605 F. App 473 (6th Cir. 2015) .................... 4

**Statutes**

18 U.S.C. § 1836(b)(3)(B) .................... 4

Ohio Rev. Code § 1333.63(A) .................... 4

Ohio Rev. Code §§ 1333.61 *et seq*. .................... 4, 5

**Rules**

Ct. Ch. R. 26(b)(1) .................... 1

## I. <u>INTRODUCTION</u>

FMT's Opposition rests on a few premises, none of which withstands scrutiny. All of its arguments on relevance—that AP cannot recover disgorgement of FMT's profits as a matter of law, that various claims are preempted by statute, or that AP's trade secrets are not trade secrets at all—are merits defenses masquerading as discovery objections. Discovery motions test relevance and proportionality, not whether a claim will survive judgment. Most cases that FMT cites are dispositive motions, post-trial and appellate decisions, not discovery rulings. The question is not whether AP will ultimately prove liability or entitlement to disgorgement—it is whether the documents sought are "relevant to any party's claim or defense" under Rule 26(b)(1). Here, they plainly are.

FMT's overbreadth argument fares no better: each of AP's Requests is limited to a single customer (The Home Depot or THD), specific product lines (totes and toolboxes), a defined time period (January 2022 through December 2025),[1] and specific cost categories—the opposite of the enterprise-wide fishing expeditions in FMT's authorities.

FMT's defense that some of the requested documents do not exist collapses under the weight of its own record. FMT's corporate designee and owner, Nickolas Reinhart, testified under oath that FMT "can get that for you" when asked about separating tote and toolbox revenue. FMT cannot now disclaim the ability to produce data its own designee offered to provide. If FMT lacks such a breakdown, it should disclose what records it does have—which is exactly what FMT has been avoiding, in meet and confer sessions, follow up emails, letters to this Court and now its Opposition.

---

[1] Plaintiff compromised on the document production timeframe, narrowing the end date from "present" to December 31, 2025. (ECF 71, Exhibit C).

FMT's claim that its prior productions moot AP's requests ignores glaring deficiencies: temporal gaps extending over two years, the absence of product-level detail, and the substitution of management-level summaries for the transaction-level data AP's damages expert requires. *See* **Exhibit A**, Vranca Declaration. FMT's production (other than Exhibit 191, tab X) stops in 2023, yet it did not begin earning revenue from The Home Depot until 2024—rendering its existing production plainly insufficient.

For each of these reasons, AP's Motion to Compel should be granted.

## II. THE REQUESTED DATA IS DIRECTLY RELEVANT TO DAMAGES ON ALL OF PLAINTIFF'S CLAIMS

### A. FMT's Financial Data Is Essential To The Contract And Tortious Interference Damages Analysis

FMT argues that AP cannot obtain its financial records to calculate damages because (1) the contract claims are directed at Defendant Hummel, rather than FMT, and (2) disgorgement is not available since recovery under AP's contract and tortious interference claims is strictly limited to the loss suffered by Plaintiff, rather than the gain realized by Defendant. *See* Opp. 2. Both arguments are wrong.

*First*, although the breach of contract claims in Counts 3 and 4 are asserted against Hummel, FMT disregards that the present discovery is directed at *damages*. Most of the benefits of the individual actors' violations accrued to the entity, which appropriated one of Plaintiff's main clients and now derives profits from that relationship. As in the Delaware case against FMT's owner (Nickolas Reinhart), the profits analysis here will mainly focus on the entity's gain, rather than the individual actor.

FMT's own pleadings make the THD business central. FMT's Answer and Affirmative Defenses to Plaintiff's Complaint and Counterclaim (ECF 28, the "Answer") asserts that it won

THD through "fair and open competition." *See* Answer, Affirmative Defense No. 20. FMT cannot simultaneously claim it has the THD business and resist producing records showing what it earned from that business. The requested discovery therefore bears directly on how FMT acquired the business, whether its account is credible, and what loss AP suffered.

*Second*, FMT treats "disgorgement" as a magic word. It is not. AP has not yet served its expert report, so FMT cannot dictate in advance which financial analyses AP's expert will employ. In the Delaware action, AP's expert used FMT's gains as an alternative measure of AP's compensatory loss—the analysis was not aimed at "disgorgement." The expert might choose to run a similar analysis here. Thus, the data would provide him the baseline for comparing the business AP lost with the business FMT gained. This is true both for the contract and for the tortious interference claims.

FMT's tortious-interference claim independently supports discovery, also without the need to resort to "disgorgement." *See Allen v. Howmedica Leibinger, GmhH*, 190 F.R.D. 518, 523 (W.D. Tenn. 1999) ("pecuniary harm is an essential element of a tortious interference claim under Ohio law."). AP alleges that FMT knew Hummel was bound to AP, yet FMT's owner induced him to work simultaneously for FMT on the same products and customer, using AP's confidential information to accelerate FMT's entry into the THD market. The defendants benefited from that scheme. FMT's revenue, recruiting costs, R&D costs, and product-level sales bear directly on that element. They show when THD revenue moved to FMT, what costs FMT avoided, and how AP can quantify the resulting loss. FMT cannot block the evidence needed to prove an element of the claim and then argue that AP lacks proof.

### B. <u>**FMT's Preemption Argument Is A Merits Defense Disguised As A Discovery Objection**</u>

Defendant's insistence that its financial records should be withheld based on a substantive preemption argument (Opp. at 2) conflates discovery with liability. Whether civil conspiracy and unjust enrichment as pled in the Complaint are preempted by OUTSA § 1333.67(A) is a merits question. Its answer may affect ultimate claim viability; it does not decide discovery. Whether these counts would survive under the authorities FMT cites (*see* Opp. at 2 and FMT's June 12, 2026 letter to the Court, citing to *Hanneman Family Funeral Home & Crematorium v. Orians*, 174 Ohio St.3d 130, 18-24 (2023); *Stolle Mach. Co., LLC v. RAM Precision Industries*, 605 F. App'x 473, 484-86 (6th Cir. 2015); *C.R.H. Industrial Water, LLC v. Eiermann*, No. 1:23-Cv-01805, 2024 WL 4856109 (N.D. Ohio Nov. 21, 2024); *American Consolidated Industries, Inc. v. Blasingim*, Case No. 5:17-cv-02253, 2025 WL 4070732, *30-32 (N.D. Ohio Nov. 17, 2025)) is again left for the merits. FMT is not briefing a motion to dismiss or a summary judgment motion here—it is opposing a discovery motion. Those counts were not challenged and remain in the operative complaint. And because the statutes separately permit recovery of actual loss and unjust enrichment caused by misappropriation, *see* Ohio Rev. Code § 1333.63(A), 18 U.S.C. § 1836(b)(3)(B), the same financial records are independently relevant to these claims.

### C. <u>**The Trade Secrets Claims Are Particularly Well Suited For Damages Discovery**</u>

#### 1. <u>**Disgorgement Is Statutorily Authorized By The Trade Secrets Act**</u>

Disgorgement is an express statutory remedy under both the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b)(3)(B), and Ohio's Uniform Trade Secrets Act ("OUTSA"), RC 1333.61 *et seq*. AP's trade secret claims (Counts 1 and 2) remain in this case. FMT's financial data—revenues, costs, and margins attributable to the misappropriated customer—is directly relevant to those claims. Defendants' assertion that AP has "no evidence" of misappropriation is

an argument for summary judgment, not a basis to withhold discovery. Discovery exists precisely to develop such evidence.

### 2. <u>**The Trade Secrets Act Allows Punitive Damages, Which Makes FMT's Financial Condition Central**</u>

Under OUTSA § 1333.67(B), "[i]f willful and malicious misappropriation exists, the court may award punitive or exemplary damages in an amount not exceeding three times any award made under division (A) of this section." "[T]he majority of courts have held that a plaintiff seeking punitive damages is entitled to discover information relating to the defendant's financial condition in advance of trial and without making a *prima facie* showing that he is entitled to recover such damages." *In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399, 408 (N.D. Ohio 2011) (citing *Howard v. Wilkes & McHugh, P.A.*, No. 06–2833, 2008 WL 4415162, *6 (W.D. Tenn. Sept. 24, 2008) (compelling discovery relating to the defendant's net worth, holding that "evidence of a defendant's net worth and financial condition is relevant for discovery purposes when a plaintiff seeks punitive damages, as plaintiffs have done.").

The evidence here shows that from at least August 2023 through December 31, 2023, Hummel simultaneously served as AP's Director of Tooling — overseeing all tooling and mold repairs for AP's THD tote business — while secretly building the very tooling program that would take that business away from AP and deliver it to FMT. *See* Hummel Dep. 46:11–24 (confirming he oversaw tool build for the parts necessary for AP's HDX, Husky tote, and Husky toolbox lines); Hummel Dep. 121:2–13, and 128:21-22 (confirming he started reviewing tool drawings for FMT in August 2023, while still employed by AP, at Reinhart's request); Hummel Dep. 124:1–21 (admitting he reviewed tool drawings for FMT for its HDX and Husky lines in 2023).

Hummel sent AP's proprietary mold specifications and RFQ templates to FMT personnel, merely replacing "American Plastics" with "FMT, LLC" on the documents. *See* Hummel Dep.

193:11–199:3 (stating that the injection mold RFQ and the specification sheet belonging to AP that he supplied to FMT personnel "looks similar" to the Injection Mold RFQ and Specification Sheet with an FMT logo on it); *see also* REINHART-AP-THD-075870; REINHART-AP-THD-076008; REINHART-AP-THD-102836-102885.

Hummel directed AP's own vendors—PETS and Cavalier Tools—to build competing tooling for FMT, communicating with those vendors from his eric@kreate.com email address while still on AP's payroll. *See, e.g.*, NDOhio_PET_005482-005484; NDOhio_PET_000523-000524; NDOhio_PET_005648-005649; NDOhio_PET_007720-007721. In October 2023, Hummel knew THD was moving its storage tote business from AP to FMT but still approved AP's Conair Capital expenditure investment of $122,322.00 for THD. *See* NDOhio_AmericanPlastics_0035774-0035778.

Armed with these and other facts, Plaintiff should be allowed to discover FMT's financial condition to permit the factfinder to assess an appropriate punitive damages award.

## III. <u>AP'S REQUESTS NARROWLY TRACK THE DIVERTED THD BUSINESS—NOT FMT'S ENTIRE ENTERPRISE</u>

FMT's main objection is that AP did not tie the Requests to a particular alleged trade secret. Opp. 3–10. The objection ignores what AP actually requested and, to the extent necessary, how those requests connect to the trade secrets claims. AP seeks the financial consequences of the misuse, which led to FMT diverting the THD storage business. It does not seek FMT's entire business, unrelated customers, or unrestricted communications. The requests are limited to the data needed to test revenue, costs, and savings.

### A. <u>The Requests Are Confined To The THD Business, The Products, And The Relevant Costs</u>

The requests are narrow. RFPs 3, 4, 6, and 7 seek THD sales and revenue for two products: totes and toolboxes. RFP 5 seeks only recruiting and R&D transaction data. RFP 8 seeks R&D tracking records for those products. RFPs 1 and 2 seek four years of routine audited and monthly financial statements to place the THD data in context. AP narrowed the end date to December 31, 2025. *See* ECF 71, Exhibit C. AP did not seek communications or documents that merely refer to the requested data. This is targeted damages discovery, not enterprise-wide fishing.

*Duracell Inc. v. SW Consultants, Inc.*, 126 F.R.D. 576 (N.D. Ga. 1989) (Opp. at 4), does not help FMT. There, a large battery manufacturer with roughly 45% of the domestic market sought an emerging competitor's entire financial and marketing operation: R&D, organization, marketing, capital equipment, financial statements, bank records, and net profits. 126 F.R.D. at 578–80. The court emphasized that the plaintiff had "not shown any evidence linking defendants to any wrongdoing" and that "so little discovery [was] aimed at uncovering what trade secrets or confidential information was stolen by whom, how and when." *Id.* at 579. AP's requests are different in both proof and scope.

First, AP's requests do not target FMT's "life blood." *Duracell*, 126 F.R.D. at 577. The data sought is now stale, ending in December 2025, and concerns profits from a single customer. Then, AP already has the nexus *Duracell* lacked. The court in *Duracell* denied access to an emerging competitor's financial strategy on a fact discovery motion—here, AP is looking at damages discovery. Hummel's deposition testimony documents the transfer of AP tooling and product information while he was working for FMT. FMT's own admission establishes that the THD storage business is now with FMT. The product and sales requests are confined to one customer, two product lines, and one defined period. The cost requests are confined to recruiting

and R&D. RFPs 1 and 2 seek only four years of routine financial statements to put that THD data in context. AP therefore seeks financial data to measure the financial consequences of identified conduct—not to discover whether any scheme existed.

*Nalco Chem. Co. v. Hydro Techs., Inc.*, 149 F.R.D. 686 (E.D. Wis. 1993) (Opp. at 5), is no better. The court denied requests for defendants' net worth, assets, liabilities, owner's equity, profits and losses (aimed at both liability and damages) because they were overbroad as drafted, targeting all of defendant's financial information instead of just the alleged trade secrets. 149 F.R.D. at 698. Here, AP is not attempting to use the requested information to show liability with regard to a particular trade secret that was misappropriated. AP already has evidence linking the data to the THD products and business diverted through the misconduct. The requests are simply aimed at evaluating its loss—and are narrowly targeted at the customer and product lines that caused the loss.

*NexPay, Inc. v. Comdata Network, Inc.*, 2017 WL 4467476 (M.D. Tenn. Oct. 6, 2017) (Opp. at 5 n.3), supports AP's position. Plaintiff there requested discovery of gross profits that resulted from using an allegedly misappropriated funding-at-authorization model. The discovery was therefore appropriately limited to defendant's gross profits obtained from processing virtual payments using the funding-at-authorization model. The court held that "[t]he proper measure of unjust enrichment here is the 'work [defendant] obtained by virtue of the trade secret information [it] misappropriated.'" *Id.* at *4. AP seeks the same evidence: revenue and costs from THD products made possible by Hummel's dual employment and information diversion, who conspired with FMT's owner and employees to divert THD from AP.

### B. FMT's Eight-Trade-Secret Attack Is A Liability Argument That Cannot Defeat Damages Discovery

FMT spends pages disputing eight documents, which it alleges are the "only" trade secrets that AP identified.[2] Opp. at 5-9. AP disputes those characterizations and their legal effect. Whether the items are protected, whether FMT obtained or used them, and whether they reduced FMT's development costs or accelerated its THD entry are merits questions. But what is clear is that if AP proves misappropriation of any or all of these items, the resulting harm—the diversion of the THD business to FMT—must be quantified.

FMT ignores that this phase of discovery is directed not at establishing liability for misuse of trade secrets, nor at proving their trade-secret status—that part of discovery is complete. The present requests seek only the financial information necessary to calculate resulting damages.

## IV. FMT'S "NOTHING EXISTS" DEFENSE FAILS ON ITS OWN RECORD

FMT says it has no documents responsive to various requests. Opp. 9–12. The record shows a narrower issue: FMT says some records are not maintained in AP's preferred format. That is not the same as nonexistence. FMT's prior productions include product-level sales, general-ledger files, and R&D-related accounts. Reinhart himself testified that FMT can separate tote and toolbox revenue. His testimony was direct: when asked whether FMT could separate tote and toolbox revenue, he answered, "We can get that for you." Reinhart Tr. 510:5–21. FMT cannot disavow that sworn answer by recasting the request as a demand for a preformatted general ledger.

Rule 34 requires production of documents "as they are kept in the usual course of business" or organized to correspond to the request. If FMT maintains accounting software (as any operating

[2] This is incorrect. AP identified a long list of trade secrets in its complaint and interrogatory responses (which FMT insists on ignoring), and provided at least 12 examples of documents containing trade secrets at FMT's request to identify Bates numbers in preparation for depositions. *See* **Exhibit B**, letter from T. Pastore providing select examples of trade secret documents.

company does), the data is exportable. A party cannot avoid production by asserting that its records are not pre-formatted to match a discovery request's specifications. Defendants cite to *Damsi v. Tarpstop, LLC*, 2023 WL 9186657 (N.D. Ohio 2023); *Evans v. Chambers-Smith*, 2021 WL 3271808 (N.D. Ohio 2021); *Riddick v. S&P Data Ohio, LLC*, 2021 WL 4713396 (N.D. Ohio 2021); *Harris v. Advance Am. Cash Advance Ctrs., Inc.*, 288 F.R.D. 170 (S.D. Ohio 2012). These cases all stand for the unremarkable proposition that a party need not produce what does not exist. Here, the data does exist—FMT's own designee said so. The issue is not existence; it is format.

FMT's objection to the words "general ledger" misses the request. AP seeks the underlying revenue, sales, and cost data. AP does not ask FMT to create a damages schedule. It asks FMT to produce the accounting and sales records it keeps, including a standard export where the data is maintained electronically. If FMT lacks a particular field, it should produce the closest existing records and say what a reasonable search located.

FMT's obligation to determine, with its client, whether substitute documents exist did not evaporate simply because AP sought the Court's intervention. That obligation remains ongoing. At a minimum, FMT should be able to represent to the Court—if not to Plaintiff—what substitute documents it actually has.

## V. FMT'S PRIOR PRODUCTIONS ARE MATERIALLY INCOMPLETE AND DO NOT MOOT THE REQUESTS

FMT says it produced most of the requested financial information. Opp. 13–14. Its own list shows why that is not so. Prior productions provide pieces of the analysis. They do not provide the complete, current, product-level and cost-level records requested.

REINHART-AP-THD-114509 includes monthly P&L and sales-and-margin-by-product data for 2022 and 2023. REINHART-AP-THD-128146 includes early 2024 P&L and general-ledger data through February 2024. REINHART-AP-THD-113148 includes period-level account

data. Two points emerge from these productions. *First*, the data stops in February 2024. FMT took over the THD business in March 2024. So the documents do not help AP's expert to determine Defendants' ill-gotten gain. *Second*, they show that FMT *has* at least some of the type of data that AP requested. AP confirmed this much to FMT: "Defendants should produce at the very least the same type of data contained in the three documents that you identified. . . " (ECF 71, Exhibit C). The documents are plainly relevant to AP's damages determination, and should be produced.

Exhibit 191, Tab X extends THD sales information into 2024 and 2025. But Tab X combines totes and toolboxes and reports revenue only. It does not provide product-level costs, margins, recruiting expenses, R&D transaction detail, or the requested R&D tracking schedules. FMT admits this exhibit is not itemized by tote or toolbox. That is a defect. AP seeks the product-level breakdown Reinhart said FMT could obtain. Partial, non-product-specific data cannot replace the requested information.

FMT's accusation of factual misrepresentation is not well taken. Opp. at 13 n.5. AP accepts (and has previously stated) that Deposition Exhibit 191, Tab X contains combined THD revenue from February 1, 2024 through June 30, 2025. AP's earlier reference to February 2024 addressed the end of the P&L and general-ledger data in REINHART-AP-THD-128146—not Exhibit 191. The correction does not resolve the dispute. Tab X still does not separate totes from toolboxes or show costs, margins, recruiting, R&D, or transaction-level detail.

FMT's own description of its prior productions—catalogued in the Pierson Declaration—confirms they are materially incomplete:

- **Temporal gap.** FMT's prior productions (except the defective Exhibit 191, tab X) cover through end of February 2024 at best. AP's requests extend through December 31, 2025. Over two years of data is missing.

- **Lack of product-level detail.** FMT itself admits its data is not itemized by each particular product such as for totes or toolboxes. That is precisely the data AP requires and that Mr. Reinhart testified FMT could provide.
- **Summary vs. transaction-level data.** P&L statements and period-level account summaries are not substitutes for transaction-level detail. AP's damages expert requires the underlying transactional data to perform the analysis necessary for trial—not management-level summaries.
- **Incomplete R&D data.** Period-level summaries for accounts labeled "Engineering/Product Dev. Labor" and "Prototype Samples" are not the transaction-level R&D cost detail AP has requested. A beginning balance, total debits, and ending balance tell the expert nothing about how those costs were allocated by project, product, or customer.

In short, what FMT has produced is a small fraction of what AP has requested, and addresses none of the THD-related profits. FMT's argument amounts to: "we gave you some data, so you should not need the rest." That is not how discovery works.

## VI. A CONDITIONAL PROMISE TO PRODUCE FINANCIAL STATEMENTS IS NOT COMPLIANCE

FMT says RFP No. 1 is moot because it will produce audited financial statements if the Court modifies the Protective Order. Opp. 9. That is not production. It is a conditional promise with no production date. The existing two-tier order already protects confidential information. FMT cannot condition Rule 34 compliance on its separate motion to modify that order—especially after AP produced extensive confidential financial records under the same order. FMT's competitor argument is asymmetric: AP produced; FMT withheld. The Court should order production under the existing protections.

FMT also says AP moved too soon. Opp. at 10 (AP's new motion to compel production of FMT's financial statements was completely unnecessary and a waste of judicial resources."). The requests were served January 30, 2026. More than six months later, FMT still has not produced a single document in response. FMT conditioned production on a Protective Order amendment, even though the existing two-tier order already governs confidential discovery and AP has produced under it. AP met and conferred, asked FMT to identify what it would produce or what substitutes existed, requested a discovery hearing, participated in a telephonic conference with the Court, wrote letters, wrote emails compromising on time frame for this discovery, and waited. FMT stalled. The motion was necessary.

## VII. FMT'S SIX-MONTH DELAY WARRANTS FEES

Rule 37(a)(5) generally requires fee shifting when a motion is granted or discovery is produced only after the motion. AP incurred costs with the letter briefing, this Motion and Reply because FMT delayed for more than six months, conditioned production on an unnecessary Protective Order amendment, and offered no documents in response to the Requests. FMT's defenses are not substantially justified. AP should recover its reasonable fees and expenses. *Ohio Regional Council of Carpenters v. Archer Interiors, Inc.*, 2009 WL 10740991, at *4 (N.D. Ohio Feb. 19, 2009); *In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399, 411 (N.D. Ohio 2011).

## VIII. CONCLUSION

FMT has not shown undue burden, disproportionate expense, or a valid basis to withhold relevant records. AP respectfully asks the Court to (1) compel FMT to produce documents responsive to the 3rd RFPs within fourteen days under the existing Protective Order; and (2) award AP its reasonable attorneys' fees and expenses under Rule 37(a)(5).

**[SIGNATURE BLOCK ON FOLLOWING PAGE]**

*/s/ Stefania A. Rosca*
Stefania A. Rosca, Esq. *
Jacqualyn Gillen, Esq. *
MONTGOMERY McCRACKEN
WALKER & RHOADS LLP
1735 Market Street, 20th Floor
Philadelphia, PA 19103
Tel: (215) 772-7502
srosca@mmwr.com
jgillen@mmwr.com

Jonathan H. Krol, Esq. (0088102)
REMINGER CO., L.P.A.
200 Public Square, Suite 1200
Cleveland, OH 44114
P: (216) 687-1311 | F: (216)-687-1841
jkrol@reminger.com

Timothy J. Pastore, Esq.*
MONTGOMERY McCRACKEN
WALKER & RHOADS LLP
437 Madison Avenue, 24th Floor
New York, NY 10022
Tel: (212) 551-7707
tpastore@mmwr.com

R. Montgomery Donaldson, Esq. *
MONTGOMERY McCRACKEN
WALKER & RHOADS LLP
1105 North Market Street, Suite 15
Wilmington, DE 19018
Tel: (302) 504-7840
rdonaldson@mmwr.com

* Admitted *Pro Hac Vice*

*Attorneys for Plaintiff American Plastics, LLC*

Dated: August 14, 2026